United States District Court

District of Connecticut

| | |
|---|---|
| Wasley Products, Incorporated and | ) Case No.: 3:03 CV 0383 (DJS) |
| Precision Molding Company, Inc., | ) |
| Plaintiff, | ) |
| vs. | ) |
| Barry Leonard Bulakites, James Albert | ) |
| Winslow, Joshua Adams Corporation, | ) |
| Defendant | ) |

**OBJECTION TO MOTION FOR LEAVE TO WITHDRAW APPEARANCE**

Defendants request that court deny the motion filed by Attorney Fitzmaurice to withdraw from the above case and order Reid and Riege to continue to act as counsel on behalf of defendants. Further Defendants request that court order Reid & Riege to hold discussion with Defendants to resolve outstanding questions regarding billings and defense strategy.

**Background**

Defendants Bulakites and Winslow engaged Reid & Riege after numerous phone calls with Attorney Fitzmaurice. Bulakites and Winslow felt that Reid & Riege and specifically Attorney Fitzmaurice were best suited to represent them in this matter. That belief was based on statements that Attorney Fitzmaurice made regarding his firms knowledge of the pension arena and ERISA

-1-

specifically. Defendants felt comfortable with Attorney Fitzmaurice and his experience and knowledge of this type of litigation as well as his apparent interest in representing us. Defendants also believed that Fitzmaurice would be active in pursuing a vigorous defense and counterclaim. Attorney Fitzmaurice explained what their hourly rates were and that junior associates would be used to control cost, where and when appropriate. Immediately Attorney Fitzmaurice began using Attorney Peter Rydel as the point person on the case. Almost all communications and interactions with defendants were exclusively through Attorney Rydel. It was explained that Attorney Rydel would hold down cost since his billing rate was less than Attorney Fitzmaurice. After receipt of the first bill on May 21, 2003 it became clear that the utilization of Attorney Rydel was resulting in the opposite. Since Attorney Rydel was far less experienced, and self admittedly had no experience in this type of litigation, he actually had to spend significantly greater hours than a more experienced, albeit higher hourly charging attorney, could have handled the matter in. Additionally, Attorney Rydel consistently had trouble locating documents that were sent to him by defendants, and asked numerous times that documents be resent to "avoid the cost of him searching for them." Those statements however were not reflected in the billings. In fact, hundreds of hours were billed for "document review." Additionally, due to Rydel's inexperience, Fitzmaurice also billed large amounts of hours to review Rydel's work and do his own research. Defendants noticed a pattern of double billing for the same work. Our concern regarding the billable hours and the way in which the case was being managed was expressed multiple times to Attorney Rydel. The statement for services rendered May 21, 2003 did not make sense in light of the representations that

Attorney Rydel was making both verbally and in emails to Mr. Bulakites regarding the amount of time being spent on the case. This is evidenced by Attorney Fitzmaurice's letter dated September 26, 2003 whereby he agrees that the handling of the case was inefficient and makes an adjustment to the billable hours.

Bulakites and Winslow attempted numerous times to obtain answers to their concerns regarding the billings and their appropriateness. Defendants incorrectly understood that the $20,000 retainer was to be used to offset current legal fees and therefore failed to understand Attorney Fitzmaurice claim that "no legal fees had been paid." Notwithstanding this error, defendants sought multiple times to understand the magnitude of the billings and apparent excessive billings as well as the strategy that was being pursued by Attorney Fitzmaurice. Concern was mounting that request being made by the Special Master were not being answered satisfactorily by Reid & Riege. Defendants spent substantial hours preparing spreadsheets and answers to The Special Masters request. These were prepared at the request of Reid & Riege and defendants felt these documents would have aided the Special Masters understanding of the case and provided the answers that he was seeking in a more concise manner. Defendants became concerned that based on continued repetitive questions from the Special Master that these documents were not making their way to the Special Master, yet sizable billable hours were being charged to review these documents and supposedly send them to the Special Master. One billing entry on October 24th logs 4.40 hours to review an updated spreadsheet by Attorney Rydel for reviewing a spreadsheet that had a simple entry updated.

Attorney Rydel numerous times stated verbally and in writing that there was little happening and that the case was with the Special Master. Until then there would be little to do on the case. Attorney Fitzmaurice in his Affidavit of January 23, 2004 claims that the case is in its early stages, yet during meetings and phone conversations with both Winslow and Bulakites he has stated numerous times that the high cost of the litigation was due to the fact that the case " was front-loaded" and that " we are almost at the end." When defendants pressed for an estimate of total cost for the case and asked if this could get to $250,000 - $300,000, Attorney Fitzmaurice responed by saying that the majority of the cost of the case were behind us. On December 24th Defendants proposed to Reid & Riege that they meet to review the billings and expenses as well as get explanations as to decisions that were made and the progress of the case. Defendants offered to make an immediate payment and to meet with Attorney Rydel to review the billings from inception. Once complete the balance would be paid in full. Furthermore, Defendants requested that questions related to the management of the case that they had been asking all along be provided. Defendants on numerous occasions related to Attorney Fitzmaurice their desire to resolve these issues and have him remain as counsel.

In #24 of Attorney Fitzmaurice's affidavit he states that questions the defendants were raising regarding the defense strategy, communications, and Attorney Rydel's expertise caused him to conclude in December that the relationship was damaged irreparably. Unfortunately, Attorney Fitzmaurice never communicated that to the defendants until filing his motion to withdraw on January 23rd.

**Argument**

A. Defendants believe that Reid & Riege are best positioned to continue at this time due to their knowledge of the background, circumstances, individuals, and facts of the case.

B. Defendants believe that allowing Reid & Riege to withdraw prejudices their ability to achieve a favorable outcome and to mount an effective defense.

C. Reid & Riege have not made a good faith attempt to address defendants questions and concerns regarding billable hours, expenses, case management, strategy, and progress of the case. Therefore, defendants do not believe that they have failed substantially fulfill their obligation to Reid & Riege for their services. Rather it is Reid & Riege that has failed to fulfill its obligations to defendants to provide reasonable information and explanations as to their hours billed, expenses incurred, and information relating to the conducting of the defense.

D. Defendants believe that Reid & Riege have in fact agreed to represent us on the second case (Docket No. Civil No.3:03CV1790(DJS)) regardless of their claims to the contrary. Reid & Riege proposed to defendants that we allow service upon them from the plaintiffs and discussed the case on numerous occasions with defendants and plaintiffs, thereby expressly implying that they were serving as defendants counsel on that case as well. Additionally, Reid & Riege filed motions on our behalf regarding this case and discussed the case with the Special Master. Reid & Riege did nothing to inform defendants that they had not filed an appearance until December when they were attempting to collect on their fees. Reid & Riege's actions could have exposed clients to significant consequences for failure to respond to the

complaint. Reid & Riege knew that defendants could not reasonably secure new counsel on the second case while they were counsel of record on the first case.

E. Defendants believe that Reid & Riege implied that they had filed a motion to withdraw from the case as leverage to collect their fees when in fact they had not filed any motion. Reid & Riege did not file a motion until Bulakites sent a letter to the court and the managing partner at Reid & Riege objecting to the motion that Reid and Riege lead them to believe had been filed. Only then did Reid & Riege actually file the threatened motion.

F. Defendants do not believe that they can obtain reasonable counsel in Connecticut due to Ried & Riege's motion to withdraw. Defendants have interviewed alternate counsel who subsequently spoke to Attorney Fitzmaurice. After talking to Attorney Fitzmaurice, the demands for retainers was extreme and in excess of $100,000.00. Reid and Riege's Motion to withdraw may make it impossible to obtain satisfactory counsel to defend against these actions.

G. Allowing Reid and Riege to withdraw at this point in the case subjects defendants to excessive and unreasonable legal fees and financial burdens.

H. Defendants have turned over voluminous files and materials to Reid and Riege that they no longer have access to. Without these files defendants are not in a position to neither defend themselves nor assist new counsel understand the facts of the case. This alone will cause excessive delays and expenses to be incurred to obtain copies of documents form others sources.

I. Allowing Ried & Riege's motion to withdraw will unduly subject defendants to additional burdens to mount a proper defense in a timely manner.

J. Defendants reputation has and will continue to be damaged by further prolonging this litigation. Having to essentially start anew with a new set of attorney's serves no ones best interest.

K. Defendants do not believe that the relationship with Ried & Riege is damaged beyond repair and desire to work out the differences with Reid and Riege regarding billable hours. Defendants have never desired to avoid paying attorney fees and have tried to reach and understanding with Reid and Riege on several occasions, having made numerous calls, sending emails and letters, and going to their offices in person to discuss their concerns with Attorney Fitzmaurice. Defendants have asked for explanations regarding hours billed, efficiency of case management, and explanations of expenses charged. Defendants believe that their requests have been reasonable and their offers to resolve the dispute have been made in good faith.

Dated this 8th day of March, 2004

*/s/ James A. Winscow*

*/s/ Barry L. Bulakiks*