**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GREGORY PRENTISS, JOHN RIZZI, RICHARD SEICH, and DOROTHY BROWN, individually and on behalf of the Wasley Products Inc. 401(k) Profit Sharing Plan, | : : : : | **MASTER CONSOLIDATED CASE CIVIL NO. 3:03 CV 383 (DJS)** |
| Plaintiffs, | : : | THIS PLEADING PERTAINS TO: CIVIL NO. 3:03 CV 1790 (DJS) |
| V. | : : | |
| WASLEY PRODUCTS, INC., ALAN A. WASLEY, ANDREW BRADY, SANDI DUMAS-LAFERRIERE, BARRY CONNELL | : : : : | |
| Defendants and Third Party Plaintiffs, | : : | |
| V. | : : | |
| PROVIDENT MUTUAL LIFE INSURANCE COMPANY; LINCOLN NATIONAL LIFE INSURANCE COMPANY | : : : : | |
| Third Party Defendants. | : | JUNE  9, 2004 |

**THIRD-PARTY PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO THIRD-PARTY DEFENDANTS' MOTION TO DISMISS**

**I.    INTRODUCTION**

Defendants/third-party plaintiffs Wasley Products, Inc. ("Wasley Products"), Alan

Wasley, Andrew Brady, Sandi Dumas-Laferriere and Barry Connell (collectively referred to

herein as the "Wasley Plaintiffs") hereby respond to the motions to dismiss filed by third-party

defendants Nationwide Life Insurance Company of America f/k/a Provident Mutual Life

Insurance Company ("Provident Mutual") and Lincoln National Life Insurance Company

("Lincoln National") (collectively, "Third-Party Defendants").[1]  For the reasons set forth herein,

---

[1] On or about April 19, 2004, Provident Mutual filed a Motion to Dismiss and accompanying Memorandum of Law. On April 23, 2004, Lincoln National filed a similar Motion to Dismiss, adopting by reference the arguments made

the factual and legal claims set forth in the Third-Party Complaint are sufficient as a matter of law to state cognizable claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for fiduciary liability as well as viable claims, in the alternative, under state and common law theories. The motions to dismiss therefore should be denied in their entirety.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In March 2003, Wasley Products and a related company, Precision Molding Co., (collectively, the "Companies") filed suit against Provident Mutual and Lincoln National, as well as Barry Bulakites, James Winslow, and Joshua Adams Corporation ("JAC"). That case is captioned <u>Wasley Products, Inc., et al. v. Bulakites, et al.</u>, Civil No. 3:03 CV 0383 (DJS) (hereinafter is referred to as "<u>Wasley I</u>.") <u>Wasley I</u> involves claims under ERISA arising out of misconduct by Bulakites, Winslow, JAC, Provident Mutual, and Lincoln National in their administration and investment management of the Wasley Products, Inc. 401(k) and Profit Sharing Plan (the "Wasley 401(k) Plan" or "Plan") and other pension plans of the Companies. The case was referred to Special Master Alan R. Mandell, CPA, CFE, DABFA, to perform an accounting with respect to the various pension plans at issue.

In October 2003, certain participants in the Wasley 401(k) Plan brought suit against the Wasley Plaintiffs, Bulakites, Winslow and JAC, alleging various claims under ERISA pertaining to the administration and investment management of the Wasley 401(k) Plan. That case is captioned <u>Prentiss et al. v. Wasley Products, et al.</u>, Civil No. 3:03 CV 1790 (DJS) (hereinafter referred to as "<u>Wasley II</u>") In January 2004, the court ordered the two cases consolidated.

---

by Provident Mutual. The memorandum submitted by Provident Mutual and adopted by Lincoln National will hereinafter be referenced as "TP Def. Mem.". This brief is submitted by Wasley Plaintiffs in opposition to both of the Motions to Dismiss.

The Wasley Plaintiffs answered the complaint in <u>Wasley II</u> and asserted various cross-claims against Bulakites, Winslow, and JAC.[2]   On March 3, 2004, the Wasley Plaintiffs filed a Third-Party Complaint in <u>Wasley II</u> against Provident Mutual and Lincoln National.   The Wasley Plaintiffs allege that Provident Mutual and Lincoln National, through their employees and agents, performed third party administration and investment services on behalf of Wasley Products and the Wasley 401(k) Plan and rendered investment advice with respect to the assets of the Wasley 401(k) Plan.  Moreover, through regular and ongoing contact and actions by their employees and agents (including but not limited to Bulakites, Winslow and JAC), the Third-Party Defendants held themselves out as having the necessary skill, experience, resources and expertise to properly administer and manage the Wasley Products pension plans, to provide advice concerning the restructuring of the plans, and to manage and invest plan assets.  (*See, e.g.,* Third-Party Complaint, ¶¶13-18; 27-33; *see also* First through Fourth Counts, ¶ 42).

Subsequent to November 2002, Wasley Products and the trustees of the Wasley pension plans discovered extensive misconduct by Bulakites, Winslow, and JAC concerning the administration and management of the Wasley Products pension plans, including the Wasley 401(k) Plan.  The factual basis for the misconduct of Bulakites, Winslow and JAC as agents or employees of Provident Mutual and Lincoln National is set forth in detail in the Third-Party Complaint.  Such misconduct includes undue delay in establishing the Wasley 401(k) Plan and misrepresentations or failure to communicate properly the status of the Plan and preparation of Plan documents; misrepresentations concerning compliance with ERISA reporting requirements and failure to comply with various reporting requirements; misrepresentations or failures to communicate the accurate value of Plan assets and investments; misrepresentations concerning

---

[2] Bulakites, Winslow, and JAC have also answered the complaint in <u>Wasley II</u>.  To date, no answers been filed to the complaint in <u>Wasley I</u>.

the establishment of and failure to establish a certain investment option under the Wasley 401(k) Plan; misrepresentations concerning and failure to properly allocate contributions to the Plan; failure to promptly forward Plan contributions and failure to deposit Plan assets into proper accounts; diversion of Plan contributions into one or more bank accounts that were not disclosed to the Wasley Plaintiffs; and otherwise mismanaging or converting assets of the Wasley 401(k) Plan for their own interest or in their own account. (Third-Party Complaint, ¶¶ 36-38)  The Wasley Plaintiffs seek relief from Provident Mutual and/or Lincoln National because they are liable to the Wasley Plaintiffs for the improper acts or omissions of their employees or agents, including Bulakites, Winslow and JAC, relating to the administration, management and investments for the Wasley 401(k) Plan. (Id.).

The Wasley Plaintiffs specifically allege that Provident Mutual and Lincoln National were fiduciaries, as defined by ERISA, of the Wasley 401(k) Plan. (*See, e.g.,* Third-Party Complaint, First through Fourth Counts, ¶¶ 39-42).  The First through Fourth Counts of the Third-Party Complaint allege claims under ERISA for breach of fiduciary duty against Provident Mutual and Lincoln National, including claims for indemnification and contribution for the wrongdoing and breaches of fiduciary duty committed through their employees and agents.  The remaining counts of the Third-Party Complaint allege claims against Provident Mutual and Lincoln National under various common law and state law theories, including common law breach of fiduciary duty, professional negligence/malpractice, intentional and negligent misrepresentation, unfair trade practices, and breach of contract.  (Third-Party Complaint, Fifth through Thirteenth Counts.)

In their motions to dismiss, Third-Party Defendants argue that the ERISA claims should be dismissed because they are not fiduciaries, but that the remaining non-ERISA claims

nevertheless should be dismissed as preempted by ERISA.  For the reasons set forth herein, the

allegations of the Third-Party Complaint are sufficient as a matter of law to state cognizable

claims under ERISA for fiduciary liability as well as viable non-ERISA claims under state and

common law theories.   In addition, the attack on the Wasley Plaintiffs' state and common law

claims fails because courts have consistently allowed alternative pleading and have declined to

dismiss either ERISA or state-law claims where, as here, a party's fiduciary status is in dispute.

The motions to dismiss therefore must be denied in their entirety.

## III.    STANDARD OF REVIEW

The high standard that the Third-Party Defendants must overcome is well known.  In

evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure,

"the court must consider all allegations in the complaint as true, and construe all facts in the

light most favorable to the plaintiff." Altieri v. CIGNA Dental Health, Inc., 753 F. Supp. 61,

63 (D. Conn. 1990).  All reasonable inferences must be drawn in favor of the non-moving

party.  Ericson v. Meriden, 113 F. Supp. 2d 276 (D. Conn. 2000); see also World

Championship Wrestling v. Titan Sports, Inc., 46 F. Supp. 2d 118, 122 (D. Conn. 1999) (all

facts in the complaint are presumed to be true and are considered in the light most favorable to

the non-movant; Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) (pursuant to a Rule 12(b)(6)

analysis, the Court takes "[a]ll well-plead factual allegations as true, and all reasonable

inferences are drawn and viewed in a light most favorable to the plaintiff.").  The issue on a

motion to dismiss is not whether the plaintiff will prevail but whether he is entitled to offer

evidence to support his claims.  A motion to dismiss should not be granted unless it appears

beyond a doubt that plaintiff can prove no set of facts which would entitle the plaintiff to

relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); National Union Fire Ins. Co v. Mastroni,

754 F. Supp. 269, 272 (D. Conn. 1990); Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 58 (2d Cir. 1985) (A motion to dismiss is properly granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.")

The Third-Party Defendants' attack on the Third-Party Complaint falls far short of this stringent standard, and the motions to dismiss must be denied.

## IV.    LEGAL ARGUMENT

### A.    The Wasley Plaintiffs Have Properly Alleged that Provident Mutual and Lincoln National Are Fiduciaries and Have Breached Their Fiduciary Duties under ERISA.

The First through Fourth Counts of the Third-Party Complaint allege breach of fiduciary duty claims under ERISA against Provident Mutual and Lincoln National.[3]  ERISA defines "fiduciary" as follows:

> A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control over the management of such plan or exercises any authority or control respecting management or disposition of its assets; (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  "Person" is defined broadly to include not only individuals but also various entities such as corporations, partnerships, and mutual companies.  29 U.S.C. § 1002(9).  As this court has noted, "Congress intended the term fiduciary to be broadly construed."  Ellzey v. Carter, 920 F. Supp. 26, 28 (D. Conn. 1995) (quoting Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir. 1987)).

The Wasley Plaintiffs' claim of fiduciary status is based on extensive factual allegations that Provident Mutual and Lincoln National performed third-party administration

---

[3] The First and Third Counts involve claims for breach of fiduciary duty as against Provident Mutual, while the Second and Fourth Counts involve claims for breach of fiduciary duty as against Lincoln National.

and investment services on behalf of Wasley Products and the Wasley 401(k) Plan and were

compensated for such services.  (*See, e.g.,* Third-Party Complaint, First through Fourth

Counts, ¶¶ 39-42).  Through their employees and/or agents, they exercised discretionary

control and authority over Wasley 401(k) Plan assets and the administration of the Plan.

Moreover, through the wrongful acts or omissions of their employees and agents, Third-Party

Defendants breached their fiduciary duties in violation of ERISA. (Third-Party Complaint,

First through Fourth Counts).  ERISA expressly authorizes plan fiduciaries such as the Wasley

Plaintiffs to bring suit against other fiduciaries for appropriate relief for liability stemming

from a breach of fiduciary duties.  29 U.S.C. §1132(a)(2); 29 U.S.C. §1109.  ERISA also

permits fiduciaries to bring suit to enjoin any act or practice that violates Title I of ERISA or

the terms of the plan or to obtain appropriate equitable relief to redress such violations or to

enforce the provisions.  29 U.S.C. §1132(a)(3).  There is no question that the first four counts

of the Third-Party Complaint state viable claims for breach of fiduciary duty under ERISA.

It is also beyond dispute that the Second Circuit Court of Appeals has expressly

recognized claims for contribution and indemnity among fiduciaries of an ERISA plan.  In

Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12, 15-18 (2d Cir. 1991), the

Court of Appeals noted that the federal courts were "authorized [by Congress] to develop a

federal common law under ERISA" and that such development should "be guided by the

principles of traditional trust law."  Id. at 16.  Because the traditional law of trusts permits

claims for contribution and indemnification among defaulting fiduciaries, the court held that a

cause of action for contribution and indemnification among fiduciaries must be recognized

under ERISA.  Id.  Further, the court observed that the "right of action" for contribution is no

more than a procedural device for equitably distributing responsibility for a plaintiff's losses

proportionately among those responsible for the losses, without regard to which particular persons the plaintiff chose to sue in the first instance.  Id. at 15-16.  That is the precise purpose of the Third-Party Complaint filed in this case.  Moreover, the Second Circuit and its district courts have consistently reaffirmed the principles of the Chemung Canal decision.  See Smith v. Local 819 IBT Pension Plan, 291 F.3d 236, 241 (2d Cir. 2002) (holding that Congress intended the common law of trusts to apply to ERISA fiduciaries and that "courts have implied federal common law rights between defaulting fiduciaries"); Sunderlin v. First Reliance Std. Life Ins. Co., 235 F. Supp. 2d 222, 237 (W.D.N.Y. 2002) (same, citing Smith);[4] Ulico Casualty Co. v. Clover Capital Mgmt., 146 F. Supp. 2d 163, 168 (N.D.N.Y. 2001); Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 122 F. Supp. 2d 444, 464 (S.D.N.Y. 2000);  Petrilli v. Gow, 957 F. Supp. 366, 372 (D. Conn. 1997); see also Gerosa v. Savasta, 329 F.3d 317, 323 n. 6 (2d Cir. 2003), cert. denied, 124 S. Ct. 435 and 929 (U.S. 2003) (noting that the Second Circuit continues to carry out Congress's intent that the courts develop a federal common law of ERISA based on principles developed in evolution of the law of trusts, and that common law principles also can be relevant to questions involving equitable remedies under ERISA.)[5]

The court must consider all allegations in the Third-Party Complaint as true and construe all facts in the light most favorable to the Wasley Plaintiffs.  When the Rule 12(b)(6) standard is applied, it is impossible for the court to conclude that Provident Mutual and

---

[4] Interestingly, Third-Party Defendants cite the Sunderlin case in their brief as support for their argument that the indemnification and contribution claims should be dismissed (TP Def. Mem., p. 11), yet completely fail to mention that the Sunderlin court recognized that claims for contribution and indemnification under ERISA are expressly allowed in the Second Circuit.

[5] Courts in other jurisdictions have also recognized contribution and indemnification claims in ERISA cases.  See, e.g., Duncan v. Santaniello, 900 F. Supp. 547, 550-51 (D. Mass. 1995) (court found right to contribution among fiduciaries based on principles of trust law and the promotion of strict fiduciary standards of care) (collecting cases); Cohen v. Baker, 845 F. Supp. 289, 291 (E.D. Pa. 1994) (right to contribution among fiduciaries exists under ERISA's federal common law).

Lincoln National are not fiduciaries as a matter of law. *See, e.g.,* Petrilli, 957 F. Supp. at 372

(court declined to dismiss third-party ERISA claims for breach of fiduciary duty against a plan

accountant, noting that it could not be concluded as a matter of law that the accountant was

not a fiduciary when all factual inferences were properly drawn in third-party plaintiffs'

favor). To the contrary, the allegations in Counts One through Four of the Third-Party

Complaint are sufficient to establish that Provident Mutual and Lincoln National are

fiduciaries within the applicable definitions and thus are subject to claims under ERISA for

fiduciary liability. As explained below, Third-Party Defendants' attempts to explain away

their fiduciary status and distance themselves from the improper acts of their employees and

agents are insufficient to avoid ERISA liability.

> **1.    Fiduciary status is determined by function, not by title or by a contractual disclaimer.**

Third-Party Defendants imply that they cannot be plan fiduciaries because they are not

alleged to be the Plan Administrator or Plan Trustees of the Wasley 401(k) Plan. They also

cite to a provision of the Group Annuity Contract (GAC) between Provident Mutual and

Wasley Products, purportedly disclaiming fiduciary status, as further affirmation of this point.

(TP Def. Mem., p. 8). These arguments are beside the point. A Plan Administrator and

trustees of an employee benefit plan generally are considered fiduciaries of the plan (at least

for certain purposes), but that does not mean they are the only fiduciaries of a plan. ERISA

defines "fiduciary" much more broadly and certainly does not limit fiduciary status to these

limited positions suggested by Provident Mutual and Lincoln National. The United States

Supreme Court has made this point clear, stating that ERISA "defines 'fiduciary' not in terms

of formal trusteeship, but in *functional* terms of control and authority over the plan," thereby

expanding the universe of persons subject to fiduciary duties and to damages under the

fiduciary provisions of ERISA.  Mertens v. Hewitt Assoc., 508 U.S. 248, 262, 113 S. Ct. 2063, 2071, 124 L. Ed. 2d 161 (1993); see also Petrilli, 957 F. Supp. at 372  ("[w]hether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held.") (citations omitted); see also Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co., 869 F. Supp. 278, 287 (D. N.J. 1994) (noting that "Congress intended that the courts look to the totality of the relationship to determine whether an outside professional advisor is a fiduciary to an ERISA plan.")

Courts routinely determine that persons or entities who carry out the basic fiduciary functions relating to asset management, plan administration, and provision of investment advice for a fee—as Provident Mutual and Lincoln National are alleged to have done through their employees and/or agents—are routinely determined to be plan fiduciaries.  See, e.g., Ellzey, 920 F. Supp. at 28-30 (financial services firms and their employees and officers who provided investment advice to plans held to be fiduciaries); Meyer v. Berkshire Life Ins. Co., 250 F. Supp. 2d 544 (D. Md. 2003) (insurance company that administered plan and provided investment advice through an employee/agent found to be an ERISA fiduciary under the functional approach).  The very nature of the fiduciary status inquiry, which turns on a factual inquiry regarding functions carried out, makes the Third-Party Defendants' motions to dismiss ill-conceived on their face.  Reich v. McManus, 883 F. Supp. 1144, 1149 (N.D. Ill. 1995) (court noted that "[t]he question of whether a person has demonstrated actual authority over a plan is highly factual in nature," declining summary judgment for insurance brokers and their related company); IT Corp. v. General American Life Ins. Co., 107 F.3d 1415 (9th Cir. 1997) (refusing to dismiss ERISA fiduciary claims against insurance company where there were questions concerning the insurance company's discretionary authority and control of plan

money); <u>Schiffli Embroidery Workers Pension Fund</u>, 869 F. Supp. at 287-88 (denying

summary judgment to investment advisors where there were questions of fact concerning the

advisors' relationship with the plan); *see also* <u>Petrilli</u>, 957 F. Supp. at 371-72 (declining to

dismiss fiduciary claims against accounting firm, noting that the accounting firm was not as a

matter of law outside of the ERISA definition of fiduciary).

      Moreover, just because a person or entity says it is not a fiduciary does not make it so.

A disclaimer of fiduciary status, such as the provision in the GAC cited by Provident Mutual,

is not dispositive of fiduciary status.[6]   The functional approach to determining fiduciary status

governs, and numerous courts have held persons or entities to be fiduciaries even in the face

of express contractual language disclaiming the role.  *See, e.g.,* <u>IT Corp.</u>, 107 F.3d at 1418-19

(administrator who interpreted plan, controlled money in plan's bank account, and who had

authority to disallow benefits found to be a fiduciary despite disclaimer language in services

agreement; the court also noted that a contract provision exonerating an ERISA fiduciary from

fiduciary responsibility is void as a matter of law); *cert. denied,* 522 U.S. 1068 (1998); <u>Harold</u>

<u>Ives Trucking Co. v. Spradley & Coker, Inc.</u>, 178 F.3d 523 (8th Cir. 1999) (third-party

administrator that assumed discretionary authority found to be a fiduciary notwithstanding

contract language to the contrary); *see also* <u>Ellzey</u>, 920 F. Supp. at 28 (fiduciary status is

determined by an objective standard; a person's subjective belief that he is not a fiduciary is

irrelevant as long as ERISA's requirements are met.)

      Even if the court chose to give any weight to the contract disclaimer, Provident Mutual

conveniently ignores the fact that many of the fiduciary breaches set forth in the Third-Party

---

[6] The Wasley Plaintiffs note that the GAC cannot have any bearing on the fiduciary status of Lincoln National, as Lincoln National was not a party to the GAC.

Complaint occurred well before the GAC came into existence.[7]  Provident Mutual's involvement with the Wasley pension plans went far beyond simply selling an annuity contract, and its fiduciary role with respect to the Wasley pension plans was established much earlier through its communications and course of conduct with the Wasley Plaintiffs.  As just one example, in initial consultations and correspondence with Wasley Products in the early 1990s, Bulakites and Winslow, acting as employees or agents of Provident Mutual, actively sought to assume the role of administrator and investment advisor for the Wasley Products pension plans and made numerous representations about the training, skills, experience, resources and expertise of the Provident Mutual team to handle all of Wasley's pension needs.  (Third-Party Complaint, ¶¶ 11-16).   Notably, in correspondence to Wasley Products, Inc. on Provident Mutual stationery, Winslow stated that he and his "Pension Team" would endeavor to "identify the profile and direction of the Wasley Products Pension fund" and further promised that the Provident Mutual "Pension Team" would "deal with alternatives to how [Wasley Products'] pension [was] presently structured." (Third-Party Complaint, ¶ 14; see also 9/20/90 and 10/24/90 letters attached hereto as Exs. A and B[8]).  Similarly, Bulakites, writing to Wasley Products on Provident

---

[7] There also are questions concerning the execution and implementation of the GAC as there is a significant gap between the date it was purportedly signed by Wasley Products and the date it was purportedly accepted by Provident Mutual.  Further, the Wasley Plaintiffs had been led to believe by Provident Mutual employees that the 401(k) Plan had been established well before the dates on the GAC.  Questions such as these necessitate further discovery and cannot be resolved in the context of a motion to dismiss, but they serve all the more to underscore why Provident Mutual's reliance on the GAC is misplaced and why the motions to dismiss should not be granted.

[8] The Wasley Plaintiffs note that consideration of matters outside of the complaint generally is improper in the context of a motion to dismiss.  Only those documents specifically attached to the complaint or in some way integral to it are to be considered by the court on a motion to dismiss.  See National Union Fire Ins. Co. v. Mastroni, 754 F. Supp. 269, 272 (D. Conn. 1990) ("a motion to dismiss under Rule 12(b)(6) must be decided solely on the facts alleged"); Harvey M. Jasper Retirement Trust v. Ivax Corp., 920 F. Supp. 1260 (S.D. Fla. 1995); Interboro Inst. Inc. v. Maurer, 956 F. Supp. 188 (N.D.N.Y. 1997).  The correspondence and other documents attached as exhibits hereto are referenced in the Third-Party Complaint and are examples of the representations and course of conduct of the Third-Party Defendants, and are submitted as further support of the Wasley Plaintiffs' factual allegations.  However, the Wasley Plaintiffs do not intend to convert the Motions to Dismiss to motions for summary judgment; indeed, it is apparent that there are significant issues of fact at this stage of the litigation that would preclude summary judgment.

Mutual stationery, made numerous representations as to the expertise of Provident Mutual in the administration and management of pension plans and provided detailed recommendations concerning the structure of the plans and establishment of a 401(k) plan. (Third-Party Complaint, ¶¶ 15-16; 11/20/90 letter, Ex. C).

Other examples of the fiduciary status of Provident Mutual abound. Wasley Products authorized <u>Provident Mutual</u> to begin performing various administration and investment services for the Wasley Products pension plans, including the restructuring of the plans to establish the 401(k) Plan. (Third-Party Complaint, ¶ 17; 11/30/90 letter from Alan Wasley to Provident Mutual, Ex. D). In 1991, Wasley Products received a welcoming letter from the Vice President of Provident Mutual's Group Pension Division, touting the distinctive service that Provident Mutual would provide and expressly referencing the efforts of its employees Winslow and Bulakites. (Third-Party Complaint, ¶ 17; 3/29/91 letter, Ex. E). Similar representations and communications continued to be made to the Wasley Plaintiffs over the next several years regarding Provident Mutual's establishment of the Wasley 401(k) Plan and its administration and management of the Plan. (*See, e.g.,* Third-Party Complaint, ¶¶ 19-28; 33; *see also* 5/23/91 letter from Provident Mutual to participants, attached as Ex. F, stating that Provident is the "new pension plan administrator;" 11/5/92 letter from Provident to IRS, attached as Ex. G, in which Provident acknowledges that it is the new third party administrator for the Wasley plans and would be filing the 5500 forms; 2/10/93 letter from Bulakites on Provident Mutual stationery, attached as Ex. H, enclosing Form 5500 for the 401(k) Plan for signature so that he could file it.) The motion to dismiss fails because the Third-Party Complaint explicitly details that Provident Mutual's fiduciary role with respect to the Wasley pension plans was established well before the purported execution of the GAC. *See generally*

<u>Ellzey</u>, 920 F. Supp. at 29-30 (investment advisors found to be fiduciaries of plan based on course of conduct, notwithstanding lack of express written agreement).[9]

### 2. As Fiduciaries, Provident Mutual and Lincoln National can be liable under ERISA for the acts of their employees/agents.

Third-Party Defendants argue that the ERISA claims are "predicated upon an alleged principal-agent relationship" between the companies and Bulakites, Winslow, and JAC (TP Def. Mem., p. 8) and that they cannot be held liable for the actions of Bulakites, Winslow and JAC. In the same breath, Third-Party Defendants acknowledge that a "person" who may be a fiduciary is defined to include not only individuals but also various legal entities such as corporations, mutual companies, and joint-stock companies. (TP Def. Mem., p. 9, *citing* 29 U.S.C. § 1002(9)). Third-Party Defendants then strain to avoid the sweeping scope of the ERISA fiduciary definition by arguing that because it does not include a reference to agent/principal or employee/employer relationships, ERISA does not authorize claims premised on such relationships. Third-Party Defendants then follow with the somewhat disjointed observation that some courts have declined to expand liability under ERISA through incorporation of common or state law doctrines. Their arguments are incorrect in several respects.

---

[9] Lincoln National's motion to dismiss fails for the same reason. Although Lincoln National has not bothered to identify any basis on which to question its fiduciary status, the Wasley Plaintiffs note that there was a similar course of conduct with respect to Lincoln National once Bulakites and Winslow became employed by Lincoln National. For example, the facts set forth in the Third-Party Complaint show that Bulakites, Winslow and JAC announced their employment by and affiliation with Lincoln National and stated that the alliance with Lincoln created a greater depth of service, research and knowledge to serve the investment and pension needs of the Wasley Plaintiffs, and that the relationship with JAC would not be affected other than through expanded and improved ability to service Wasley Products and its pension plans. (Third-Party Complaint, ¶ 30; 5/8/95 letter, Ex. I). They also provided Wasley Products with written promotional materials and introduced Wasley Products to "[y]our benefit analysis team members," which team included Bulakites as well as several other Lincoln employees and/or agents, and corresponded with Wasley Products concerning the 401(k) Plan and its other benefit plans on Lincoln National letterhead. (Third-Party Complaint, ¶ 31-33; *see, e.g.,* 8/23/95 Fringe Benefit Analysis Project, Ex. J; correspondence, Ex. K). They also met with Wasley employees to conduct 401(k) plan enrollment and provide advice regarding pension and retirement planning. (Exhibit L).

14

First, as noted above, the Third-Party Complaint includes specific allegations that Provident Mutual and Lincoln National as corporate entities were fiduciaries of the Wasley 401(k) Plan. (Third-Party Complaint, First through Fourth Counts, ¶¶ 39-42.)  The fact that corporations act through their employees or agents is too basic a proposition of fact and law to require any citation to authority.  Further, Bulakites and Winslow were not merely agents of Provident Mutual and Lincoln National but were—at least for several years during the time period at issue—employees of these companies acting within the course and scope of their employment.  Provident Mutual and Lincoln National provided Bulakites and Winslow with high-ranking titles, office space, letterhead, telephone and facsimile lines, all of which were necessary to carry out administration and investment services on their behalf for the Wasley pension plans.  The letters attached hereto as exhibits from Bulakites, Winslow, and other employees and representatives of Third-Party Defendants (most of which are written on letterhead of Third-Party Defendants) demonstrate that Provident Mutual and Lincoln National cannot divorce themselves from the acts of their employees or agents.

Second, contrary to Third-Party Defendants' legal assertions, numerous courts have recognized that an insurer providing pension services is liable as a fiduciary by virtue of the acts of its employees or agents, whether under an agency theory or otherwise.  The recent case of Meyer v. Berkshire Life Ins. Co., 250 F. Supp. 2d 544 (D. Md. 2003) involves facts closely similar to the present case and is particularly instructive.  In Meyer, the trustees of two pension funds brought suit against Berkshire Life Insurance Company, alleging that Berkshire had mismanaged their funds.  The trustees had retained Berkshire to manage their pension plan funds based on the representations of Berkshire's employee/agent, Meszaros, who had actively solicited the trustees' business and who had represented to the trustees that Berkshire

would handle everything pertaining to the pension plans.  Over a period of approximately 14 years, Meszaros provided investment advice to the plans and managed the plans' investments, representing himself as a financial advisor and as a representative of Berkshire.  Id. at 548-549.   The trustees ultimately became suspicious of Meszaros' investment practices and subsequently discovered he was no longer employed by Berkshire, that Berkshire would no longer service the plans, and that tax returns had not been filed for the plans. Id. at 557.  The trustees then sued Berkshire.

The trustees in Meyer alleged that Berkshire was an ERISA fiduciary and liable under ERISA for breach of fiduciary duties and also pled state-law claims in the alternative. Seeking to avoid state law liability, Berkshire conceded its ERISA fiduciary status.  The court was not influenced by Berkshire's concessions about fiduciary status because it found Berkshire to be an ERISA fiduciary in any event under the functional approach espoused by the U. S. Supreme Court.  Id. at 560-61.  The court noted that Berkshire, through Meszaros, had made countless recommendations to the plans regarding the advisability of various investments, upon which the trustees relied.  The court also noted that Berkshire had purported to render individualized investment advice to the plans and was compensated for its services through various fees and commissions incurred by the plans.  Id.  The court also stated that Berkshire quite likely exercised the requisite discretionary authority and control over the plans' assets to be considered a fiduciary. Id.   The court had no trouble concluding that Berkshire was a fiduciary with direct liability for the alleged mismanagement of the plans, but also that Berkshire could face derivative liability for the actions of Meszaros, citing precedent under ERISA for such vicarious liability. Id. at 563-64.

16

This result is not surprising.  It is also consistent with U. S. Supreme Court precedent stating that it was Congress' intent to develop a federal common law of ERISA based on principles developed in the law of trusts.  Contrary to Third-Party Defendants' arguments, the Court has not abandoned this approach.  *See, e.g.,* Harris Trust & Savings Bank v. Salomon Smith Barney, 530 U.S. 238, 250-51, 120 S. Ct. 2180 (2000) (reiterating its view that the common law of trusts offers a starting point for analysis of ERISA unless it is inconsistent with the language of the statute, its structure, or its purposes); *see also* Gerosa, 329 F.2d at 323 n. 6 (the Second Circuit Court of Appeals, citing Harris Trust, noted that common-law principles are relevant to questions involving remedies under ERISA).  Many courts have recognized that federal common law principles of agency and respondeat superior apply to ERISA.  For example, in Steinberg v. Mikkelsen, 901 F. Supp. 1433, 1438 (E.D. Wis. 1995), the court determined that "[a]dopting a federal common law of agency imputing the knowledge of an agent to its principal is consistent with ERISA policy".   Similarly, in Bannistor v. Ullman, 287 F.3d 394, 408 (5th Cir. 2002), the Fifth Circuit Court of Appeals recognized that liability may attach under a respondeat superior theory where a principal, by virtue of its de facto control over its agent, had control over the disposition of plan assets.  *See also* Hamilton v. Carell, 243 F.3d 992, 1002 (6th Cir. 2001) (noting that respondeat superior liability applies under ERISA where an agent has breached his or her fiduciary duties while acting in the course and scope of employment.)  The court in this case should not allow Third-Party Defendants to disavow all responsibility for the improper acts of individuals they put in the marketplace as part of their respective "pension benefits teams" to service the needs of the Wasley 401(k) Plan trustees and participants.

Third-Party Defendants discuss at length an inapposite case, Tool v. National Employee Benefit Services, Inc., 957 F. Supp. 1114 (N.D. Cal. 1996), in an effort to avoid direct and vicarious fiduciary liability. (TP Def. Mem., pp. 10-11).  The case warrants little response because the agent who sold the prototype plans at issue in Tool was not even alleged to be an employee of Mass Mutual, the insurer in that case.  In the present case, by contrast, Bulakites and Winslow were employees of Third-Party Defendants for several years when the improper conduct alleged the Third-Party Complaint took place.  Further, it does not appear that the agent or the insurer in Tool was significantly involved in the ongoing administration and management of the plans as alleged in the present case.[10]  Finally, the court in Tool made it clear that it was following Ninth Circuit precedent, which is contrary to many other jurisdictions that have adopted agency and/or respondeat superior theories in ERISA cases.

The Third-Party Defendants' reliance upon Gerosa v. Savasta, 329 F.3d 317 (2d Cir. 2003), has nothing to do with the instant case. (TP Def. Mem., p. 10).  Gerosa involved a suit by pension plan trustees against the plan's actuary, who was allegedly negligent in the preparation of actuarial statements for the plan, resulting in the plan becoming dangerously underfunded.  The trustees sought relief under one particular provision of ERISA, 29 U.S.C. § 1132(a)(3), permitting a fiduciary to sue to enjoin any act or practice which violates ERISA or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce ERISA.  The trustees also brought various state-law claims against the actuary. The court in Gerosa did nothing other than dismiss the ERISA claim on the narrow ground that 29 U.S.C. § 1132(a)(3) did not provide the specific form of relief requested (reimbursing

---

[10] The other case cited by Third-Party Defendants, National Management Ass'n, Inc. v. Transamerica Financial Resources, Inc., 179 F. Supp. 2d 1016 (S.D. Ohio) can be similarly distinguished, as the agent in that case was not an employee of the financial services company, TFR.  Also, while the court in National Management Ass'n declined to find that TFR was an ERISA fiduciary, it did note that because there was no ERISA remedy, TFR might be liable under other theories.  Id. at 1025 n. 7.

the plan for the shortfall that the plan would experience as a result of the actuary's violation of its duties). Ironically, the Third-Party Defendants fail to point out that the court found that the state law claims against the actuary, such as malpractice or negligence claims, would <u>not</u> be preempted by ERISA and declined to dismiss those claims. <u>Id.</u> at 328-29.

Closer examination of <u>Gerosa</u> shows why it supports the Wasley Plaintiffs' position. As the <u>Gerosa</u> court clearly explained, ERISA authorizes fiduciaries to sue other fiduciaries, but there was no allegation in <u>Gerosa</u> that the actuary had acted as a fiduciary. 329 F.2d at 320 n. 3. The contrast in the instant case is clear. The Wasley Plaintiffs specifically allege that Provident Mutual and Lincoln National were fiduciaries of the Wasley 401(k) Plan and that they breached their fiduciary duties. (*See, e.g.,* Third-Party Complaint, First and Second Counts, ¶¶ 39-48; *see also* Third-Party Complaint, Third and Fourth Counts.)[11]  Further, as set forth in section A, the Second Circuit Court of Appeals has expressly recognized a right of contribution and indemnification from co-fiduciaries under ERISA. In sum, because the various claims asserted by the Wasley Plaintiffs are cognizable under ERISA, the Motions to Dismiss these counts must be denied.

---

[11] <u>Gerosa</u> is also distinguishable in that the court based its decision on the fact that the actuary in that case had never unjustly received a benefit, such as a payment, or held funds or property that should in good conscience have belonged to the pension plan, so that the equitable remedy of restitution was not available. 329 F.3d at 321-22. By contrast, in the present case, Bulakites, Winslow, and JAC, acting as the employees or agents of Provident Mutual and/or Lincoln National, failed to properly allocate and/or forward contributions to the 401(k) Plan and diverted or converted plan assets for their own interest or in their own account, and Wasley Plaintiffs specifically seek restitution from Provident Mutual and Lincoln National. (Third-Party Complaint, ¶ 36 and also Prayer for Relief).

B.    **The State Law Claims are Properly Pled as an Alternative Theory of Liability and Cannot Be Dismissed.**

In addition to the first four counts of the Third-Party Complaint, which state claims under ERISA, the Wasley Plaintiffs also plead several claims against Provident Mutual and Lincoln National under various common law and state law theories, including common law breach of fiduciary duty, professional negligence/malpractice, intentional and negligent misrepresentation, unfair trade practices, and breach of contract.  Third-Party Defendants contend that the state law claims are preempted by ERISA and therefore must be dismissed.  Third-Party Defendants misunderstand the application of ERISA preemption, however, and their arguments are legally incorrect.

ERISA contains a broad preemption provision, but "the extent to which ERISA's remedial provisions preempt state law is not necessarily absolute," and must be considered in light of Congress's purposes in enacting ERISA.  Gerosa, 329 F.2d at 325.   In reaching its decision in Gerosa, the Second Circuit Court of Appeals engaged in a comprehensive review of recent ERISA preemption cases, noting that the prevailing U.S. Supreme Court precedent on ERISA preemption is less expansive than it once was.  The Second Circuit indicated that courts generally find ERISA preemption only under the following scenarios: (1) either where a state law affects the relationship between core ERISA entities (such as participants, trustees, and other fiduciaries) or (2) where the state law would tend to control or supersede central ERISA functions, such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits. Gerosa, 329 F.2d at 323-324.

Virtually all of the cases cited by Third-Party Defendants on pages 12-13 of their memorandum involve participant challenges to benefit claims decisions, an area for which ERISA provides exclusive and comprehensive remedies such that state-law claims are

preempted.  *See, e.g.*, LeBlanc v. Cahill, 153 F.3d 134, 147 (4th Cir. 1998) (noting that "Congress intended to preempt state laws providing alternative enforcement mechanisms for employees to obtain ERISA plan benefits"); Gerosa, 329 F.2d at 324 (citing LeBlanc, Cicio v. Does, 321 F.3d 83, 95 (2d Cir. 2003), and similar cases).   The facts in this case bear no relation to benefits claims or determinations of eligibility for benefits under the Wasley 401(k) Plan and the Third-Party Defendants' entire discussion on this subject misses the mark.

The applicable precedent demonstrates that courts have routinely held that ERISA does not preempt state law claims against non-fiduciaries, even where the claims pertain to services or advice provided to an ERISA plan.  The Second Circuit Court of Appeals—joining "a chorus of the Courts of Appeal"—recently ruled in the Gerosa case that ERISA does not preempt state-law professional negligence or malpractice claims against non-fiduciaries. Gerosa, 329 F.3d at 323-24 (2d. Cir. 2003) (collecting cases).[12]  Indeed, the court noted that Congress did not intend to displace state law in traditional areas of state control such as regulation of the professions, and that ERISA's preemption provision was not intended to provide immunity to negligent plan service providers.  Id. at 328-29.

Numerous other courts have concluded that state-law claims similar to those in the present case are not preempted by ERISA, particularly where—as here—a defendant contends that it is not a fiduciary and therefore is not subject to liability under ERISA.  In the Petrilli case, for example, this court determined that a state law breach of contract claim against plan accountant was not ERISA preempted the accountant was not an ERISA fiduciary.  Petrilli,

---

[12] Although Third-Party Defendants cite Gerosa at length in the first portion of their brief, they completely ignore the fact that the Gerosa court held that state-law malpractice claims against a plan service provider such as those alleged in the present case are not preempted by ERISA.  Instead, in arguing for preemption of the state law malpractice claim, Third-Party Defendants grasp at a single district court case—Brandon v. Aetna Services, Inc., 46 F. Supp. 2d 110 (D. Conn. 1999).  Brandon is of no help because even though the claim was cast as one for medical malpractice, the court determined that the claim was, in essence, not a professional malpractice claim but a claim concerning payment of benefits under the plan, which clearly was preempted by ERISA.

957 F. Supp. at 373.  For other examples of cases with similar holdings, see, e.g., LeBlanc,

153 F.3d at 147 (common-law fraud claim by plan trustees against the plan's investment

advisor allowed to proceed because such claims would not undermine any of ERISA's

objectives); Morstein v. Nat'l Ins. Servs., Inc., 93 F.3d 715, 723 (11th Cir. 1996) (rejecting

ERISA preemption of state fraud and negligence claims where it would undermine an

employer's ability to rely on the representations of an agent regarding the terms of the plan).

  More to the point, where an entity's status as a fiduciary has been placed in question, a

court should not dismiss state law claims pled in conjunction with, and as an alternative to,

ERISA fiduciary claims.  It is a basic tenet of civil procedure that a plaintiff may advance

alternative theories of liability against a defendant in a single complaint, and the Federal Rules

of Civil Procedure expressly permit inconsistent alternative pleadings. Fed. R. Civ. P. 8(e)(2);

*see also* Petrilli, 957 F. Supp. at 373 n. 4.  The Petrilli case is instructive in that it involved a

third-party complaint against a plan advisor, alleging both ERISA and state law causes of

action.  This court declined to dismiss either the ERISA claims or the state-law claims where

the advisor's fiduciary status had not been determined. Id. at 373; *see also* Meyer, 250 F.

Supp. at 558-559 (plan trustees pled both ERISA and non-ERISA claims against insurer

arising out of mismanagement of plan; court dismissed the state law claims as preempted only

after the insurer conceded that it was an ERISA fiduciary and rejected subsequent attempts by

insurer to disavow its concession); Ulico Casualty Co. v. Clover Capital Mgmt., 146 F. Supp.

2d 163, 169-70 (N.D.N.Y. 2001) (same); *see also* Schiffli Embroidery Workers Pension Fund

v. Ryan, Beck & Co., 869 F. Supp. 278, 287-88 (D. N.J. 1994) (court rejected strategy

whereby defendants wanted to concede ERISA fiduciary status only for purposes of motion

for summary judgment because it would have the unreasonable and unfair result of allowing

defendants to argue at trial that they were not fiduciaries after the state law claims had already

been struck; court instead allowed ERISA and state-law claims to be pled in the alternative).

Third-Party Defendants cannot argue on the one hand that they are not ERISA fiduciaries but

then argue on the other hand that the common-law and state-law claims are preempted by

ERISA.   For obvious reasons, this position is without merit.

## V.    CONCLUSION

The allegations of the first four counts of the Third-Party Complaint, when construed in a

light most favorable to the Wasley Plaintiffs, state viable breach of fiduciary duty claims under

ERISA against Provident Mutual and Lincoln National.  The Third-Party Defendants may

dispute that they are fiduciaries of the Wasley 401(k) Plan, but a determination of their fiduciary

status involves questions of fact that cannot be resolved through a motion to dismiss.  If Third-

Party Defendants can later prove that they are not fiduciaries, they are still subject to liability

under state and common law theories as alleged in the remaining counts in the Third-Party

Complaint.  Because alternative pleading is expressly permitted in the federal courts, these

alternative theories of liability must remain in the case.  Therefore, for all of the reasons set forth

herein, Third-Party Defendants' Motions to Dismiss must be denied in their entirety.

DEFENDANTS and THIRD-PARTY PLAINTIFFS

WASLEY PRODUCTS, INC., ALAN A. WASLEY, ANDREW BRADY, SANDI DUMAS-LAFERRIERE, AND BARRY CONNELL

By: _____

    Theodore J. Tucci (ct05249)
    ttucci@rc.com
    Jean E. Tomasco (ct09635)
    jtomasco@rc.com
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT 06103-3597
    Tel. No.: (860) 275-8200
    Fax: (860) 275-8299

**CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, first class postage prepaid on

the 9th day of June, 2004 to the following:

Deborah S. Freeman, Esq.
Bryan D. Short, Esq.
Bingham McCutchen
One State Street
Hartford, CT  06103-3178

Albert Zakarian, Esq.
Victoria Woodin Chavey, Esq.
Eric L. Sussman, Esq.
Day, Berry & Howard
CityPlace
Hartford, CT  06103-3499

Thomas G. Moukawsher, Esq.
Ian O. Smith, Esq.
Moukawsher & Walsh
21 Oak Street, Suite 209
Hartford, CT  06106

Maurice T. Fitzmaurice, Esq.
Peter K. Rydel, Esq.
Reid & Riege, P.C.
One Financial Plaza
Hartford, CT  06103-3185

Thomas W. Witherington, Esq.
Mary E.R. Bartholic, Esq.
Cohn, Birnbaum & Shea
100 Pearl Street
Hartford, CT  06103-4500

_____
Jean E. Tomasco