UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------ x
WASLEY PRODUCTS, INC., ET AL.,  :
                                :  MASTER CONSOLIDATED CASE CIVIL
            Plaintiff,          :  NO. 3:03 CV 383 (MRK)
                                :
   v.                           :  THIS PERTAINS TO:
                                :  3:03 CV 1790 (MRK)
BARRY BULAKITES, ET AL.,        :  Prentiss, et al. v. Wasley Products, Inc., et al.
                                :
            Defendant.          :  October 21, 2005
                                :
                                :
------------------------------ x

### LINCOLN NATIONAL LIFE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT

Defendant Lincoln National Life Insurance Company ("Lincoln National"), by and through its undersigned counsel, hereby submits this Memorandum in Opposition to Plan Participants' Motion for Permission to Join Additional Parties, to Amend Complaint, and Certification of Derivative Action Under Rule 23.1 ("Motion to Amend").[1] The Plan Participants' proposed amended complaint ("Amended Complaint") seeks to assert claims that are time-barred. In addition, the Amended Complaint seeks to assert claims that cannot succeed. Therefore, the Motion to Amend should be denied as futile.

On or about October 16, 2003, the Plan Participants brought the Original Complaint against Wasley Products, Inc. ("Wasley"), Alan Wasley, Andrew Brady, Sandi Dumas-

---

[1] Defendant Nationwide Life Insurance Company f/k/a Provident Mutual ("Nationwide" or "Provident Mutual" as the context may require) has also filed an opposition to the Plan Participants' Motion to Amend, arguing, in relevant part, that Plan Participants have unduly delayed adding Nationwide as a defendant, that the proposed amendment would cause Nationwide an undue burden, and that the Amended Complaint would be futile on statute of limitations grounds. To the extent Nationwide's arguments are applicable to Lincoln National's circumstances, Lincoln National hereby incorporates Nationwide's arguments and authority into this brief as if they were set forth in their entirety.

**ORAL ARGUMENT REQUESTED**

LaFerriere, Barry Connell (collectively, the "Trustees"), and Barry L. Bulakites ("Bulakites"), James A. Winslow ("Winslow") and Joshua Adams Corporation ("JAC,"), (collectively the "Individual Defendants").[2] The Plan Participants made no claims whatsoever against Lincoln National.

On September 16, 2005, almost two years after filing the Original Complaint, the Plan Participants filed their Motion to Amend to assert claims against Lincoln National. Because granting the Plan Participants leave to amend the Original Complaint would be futile, the Court should deny the Motion to Amend.

## ARGUMENT

A court should deny a motion to amend where the amendment would be a futile act. See Tocker v. Philip Morris Cos., 346 F. Supp. 2d 460, 467 (S.D.N.Y. 2004) (leave to amend "may be denied when the amendment would be futile."). An amendment is futile if it fails to state a claim or would be subject to a motion to dismiss. See Nichols v. Metro. Life Ins. Co., 180 F. Supp. 2d 413, 418 (W.D.N.Y. 2001) ("The plaintiff's proposed amendment would be futile because the factual foundations of the plaintiff's new allegations are insufficient, as a matter of law, to withstand defendants' motion for summary judgment.") (citation and internal punctuation omitted). See also, Foman v. Davis, 371 U.S. 178 (1962). (Holding that district courts may deny a plaintiff's motion to amend its complaint when it finds the amendment would be futile).

Here, the Amended Complaint would be futile because 1) Plan Participants' claims against Lincoln National are barred by the applicable statutes of limitations; 2) Plan Participants' claims against Lincoln National are not cognizable under ERISA because Lincoln National is not a fiduciary as defined therein; 3) the Amended Complaint fails to state a claim for vicarious

---

[2] The Plan Participants did not assert any claims against Lincoln National in the Original Complaint. Nor did the Plan Participants assert that any defendant was liable to them or the 401(k) Plan for any party's failure to convert accrued benefits properly when switching from a Defined Benefit Plan to the 401(k) Plan.

liability against Lincoln National under Connecticut's law of agency; and 4) John Wiblyi ("Wiblyi") cannot maintain an individual ERISA § 502(a)(2) claim.

1.  **Statute of Limitations**

Courts in this Circuit have recognized the futility of amending a complaint to bring an ERISA claim which is barred by the applicable statute of limitations. See Leonelli v. Pennwalt Corp., 1988 U.S. Dist. LEXIS 11455 (N.D.N.Y. 1988) ("Leave to amend this [ERISA § 502] cause of action would also be futile in that it is barred by the statute of limitations.") *affirmed by* 887 F.2d 1195 (2d Cir. 1989)[3]; Harless v. Research Inst. of Am., 1 F. Supp. 2d 235 (S.D.N.Y. 1998) ("In the instant case, the proposed amendments would be futile. The Court has determined [] that plaintiff's claim under § 1132(c) is untimely, rendering futile the proposed addition of the plan administrators."). See also, Carey v. IBEW Local 363 Pension Plan, 201 F.3d 44, 47 (2d Cir. 1999) ("[S]tatutes of limitation are not to be disregarded by courts out of a vague sympathy for particular litigants. Indeed, strict adherence to limitation periods is the best guarantee of evenhanded administration of the law.").

ERISA requires claims to be filed "the earlier of" three years after claimant discovers a breach of fiduciary duty, or six years after the last act of breach. See ERISA § 413 (29 U.S.C. § 1113).[4] The analogous state limitation statute is used on claims other than fiduciary duty

---

[3] All cited unpublished cases are attached hereto under Exhibit 2.
[4] ERISA § 413 (29 U.S.C. § 1113) states:

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part [29 USCS §§ 1101 et seq.], or with respect to a violation of this part [29 USCS §§ 1101 et seq.], after the earlier of--
>   (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>   (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

claims. See Miele v. Pension Plan of N.Y.State Teamsters Conf. Pension & Retirement Fund, 72 F. Supp. 2d 88 (E.D.N.Y. 1999) ("Since ERISA does not provide a limitations period for non-fiduciary § 1132 claims, the controlling limitations period is that specified in the most nearly analogous state limitations statute.").[5]

Even if it were assumed, *arguendo*, that the longer, six year period in ERISA § 413 (29 U.S.C. § 1113), and the longer six year Connecticut contract limitations period would apply, the Plan Participants' claims are still time-barred. Bulakites ended his association with Lincoln National on April 18, 1996, and Winslow's relationship with Lincoln National ended on December 16, 1997.[6] Accordingly, the "last action" that could have supported any claim accrued more than six years before the Motion to Amend.

Even if Lincoln National were found to be a fiduciary (which it is not), Plan Participants' Amended Complaint is too late. Under ERISA, "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." ERISA § 409(b), 29 U.S.C § 1109(b).[7] The Plan Participants claim that Lincoln National is liable due to acts of Bulakites, Winslow and JAC. See Amended Complaint at ¶¶ 23 and 54. While Lincoln National disputes any suggestion of vicarious liability (see discussion, *below*), Lincoln National could only be liable for breaches of fiduciary duty which occurred during its respective associations with Bulakites and Winslow,

---

[5] The Court should apply Connecticut's applicable state statute of limitations. See Harless v. Research Inst. of Am., 1 F. Supp. 2d 235, 239 (S.D.N.Y. 1998) ("In the instant case, the parties agree that Connecticut is the most appropriate choice; several of the plans' choice-of-forum clauses designate Connecticut, many of the plans were administered in Connecticut, the plan administrators were located there, and Thomson is located in Connecticut. Accordingly, the Court looks to Connecticut state law for the relevant limitations period.").
[6] See Affidavit of Carolyn P. Brody ("Brody Aff." attached hereto as Exhibit 1) at ¶11 ("Barry L. Bulakites resigned from Lincoln National by letter dated April 18, 1996. His resignation was accepted and effective as of that day."); Brody Aff. at ¶14 ("James A. Winslow's 1185 Agent Contract was terminated on December 16, 1997."). See also, Resignation Letter of Barry L. Bulakites, dated April 18, 1996 (attached to Brody Aff. as Exhibit C); Termination Letter of James Winslow, dated December 16, 1997 (attached to Brody Aff. as Exhibit D).
[7] Although the Plan Participants seek equitable remedies under ERISA § 502 (29 U.S.C. §1132), liability under each Count of the Amended Complaint is premised on a breach of fiduciary duty. Consequently, the limitation on breach of fiduciary duty claims articulated in ERISA § 409(b), 29 U.S.C § 1109(b) applies equally to all Counts.

i.e., until April 18, 1996 for Bulakites, and until December 16, 1997 for Winslow. Six years after the latest date is December 16, 2003. Plan Participants' Motion to Amend is dated September 16, 2005—almost two years after the expiration of the six year limitations period.

2.  **Lincoln National is Not a Fiduciary**

While the Court previously denied Lincoln National's Motion to Dismiss the Third-Party claims against Lincoln National because "the Trustees have expressly alleged that Provident Mutual and Lincoln . . . acted as fiduciaries," (March 9, 2005 Memorandum of Decision at p. 7), the Plan Participants' Amended Complaint does not allege that Lincoln National acted as a fiduciary.[8] Instead, the Amended Complaint asserts an agency theory of liability. See Amended Complaint at ¶ 38 ("Provident Mutual and Lincoln are liable to the 401(k) Plan and the Plaintiffs for the misconduct of Bulakites, Winslow, and JAC because Bulakites, Winslow, and JAC were employees or agents of Provident Mutual and Lincoln."); see also, Amended Complaint at ¶ 54 (similar). On this basis, even if the Plan Participants' claims were not time-barred—which they are—the Plan Participants cannot prevail against Lincoln National, a non-fiduciary.

   a.  **Adding Lincoln National as a Non-Fiduciary Defendant Would be Futile**

Non-fiduciaries cannot be held liable for breach of fiduciary duty under ERISA. See Pegram v. Herdrich, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."); Geller v. County Line Auto Sales, 86 F.3d 18, 21 (2d Cir. 1996) ("[T]he plaintiffs are foreclosed

---

[8] ERISA defines a "fiduciary" in 29 USCS § 1002(21) (A): "Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B) [29 USCS § 1105(c)(1)(B)]." Plan Participants' Amended Complaint does not allege facts sufficient to establish that Lincoln National meets this definition.

from recovering under [ERISA] § 1132(a)(2) unless they can demonstrate that [the defendants] are fiduciaries."). See also Mertens v. Hewitt Assocs., 508 U.S. 248 (1993) (ERISA does not authorize suit by pension plan participants against nonfiduciary actuary who allegedly participated knowingly in plan fiduciaries' breach of fiduciary duty); Gerosa v. Savasta & Co., 329 F.3d 317, 323 (2d Cir. 2003) ("In short, our conclusion that the Plaintiffs have no claim [against a non-fiduciary] for restitution means that there is no remedy available under ERISA to redress the grievance alleged in their Complaint."). Nor can Lincoln National be held vicariously liable for a fiduciary duty breach by Bulakites, Winslow or JAC. See discussion in Section 3 *below*. Therefore, as a matter of law, it would be futile to permit Plan Participants to add Lincoln National as a defendant in this matter. See Leonelli v. Pennwalt Corp., 887 F.2d 1195 (2d Cir. 1989):

> Plaintiff also proposes to allege that individual defendants Caddy and Young breached their fiduciary duty under ERISA's § 1104. Yet, because neither of these two defendants have any discretionary authority regarding the Pension Plan, they are not fiduciaries of the plan as defined by § 1002(21)(A). Thus, allowing a claim under § 1104 would also be futile.

Id. at 1199 (affirming refusal to grant leave to amend complaint to add ERISA claims against non-fiduciaries); Walsh v. Eastman Kodak Co., 53 F. Supp. 2d 569, 574 (W.D.N.Y. 1999) ("In this circuit, however, in a recovery of benefits claim under 29 U.S.C. § 1132(a)(1)(B), only the plan and the administrators and trustees of the plan in their capacity as such may be held liable. . . . Allowing plaintiff to amend his complaint to, for example, add other defendants would be futile."); Nichols v. Metro. Life Ins. Co., 180 F. Supp. 2d 413, 418 (W.D.N.Y. 2001) ("[I]t would be futile to permit plaintiff to amend the complaint to add [a non-fiducuiary] as a defendant, since his [ERISA] claim would fail in any event."); Tocker v. Philip Morris Cos., 346 F. Supp. 2d 460, 467 (S.D.N.Y. 2004) (denying leave to amend ERISA complaint because amended complaint would not survive summary judgment by non-fiduciaries); see also, Yoran v. Bronx-

Lebanon Hosp. Ctr., 23 Employee Benefits Cas. (BNA) 1938, 1999 U.S. Dist. LEXIS 8679 (S.D.N.Y. 1999) ("It is well settled in this Circuit that ERISA permits suits to recover benefits only against the Plan as an entity. Thus, summary judgment is granted to defendants Gold and the Hospital on any such claim.") (citations omitted).

    b.    **The Equitable Claims Are Not Cognizable Against Lincoln National**

Similarly, it would be futile to allow Plan Participants to add Lincoln National as a defendant to their equitable claims:

> With regard to non-fiduciary defendants [in an ERISA case] . . . the only conceivable equitable claim for cash money lies under the antique equitable remedy of restitution. In order to make out a claim for restitution, a plaintiff must show that the defendant has unjustly received from the plaintiff a benefit, such as a payment, or that the defendant holds funds or property that in good conscience should belong to the plaintiff.

Gerosa v. Savasta & Co., 329 F.3d 317, 321 (2d Cir. 2003). Here, as in Gerosa, "the Plaintiffs have not alleged sufficient facts to make out a claim for restitution." Id. at 321. The Plan Participants' Amended Complaint does not allege that Lincoln National received any funds or property from them, nor that Lincoln National was in any way unjustly enriched thereby. In fact, Lincoln National never received any funds or property from the Plans or the Plan Participants. See Brody Aff. at ¶ 23 ("Lincoln National received no funds, payments, commissions or compensation from Wasley Products 401(k) Profit Sharing Plan, or Wasley Products, Inc. Retirement Plan."). After spending many weeks tracking the disposition of funds, the Special Master assigned to this matter issued a report showing that he found no evidence that any money from the Plans or the Plan Participants was ever received by Lincoln National. See Special Master's Report. Thus, Plan Participants' equitable claims against Lincoln National must also fail as a matter of law. Id. at 322. Allowing the Plan Participants' leave to amend their Complaint to add Lincoln National as defendant to those claims would be futile.

3.  **Lincoln National is Not Vicariously Liable for the Conduct of Fiduciaries**

Claims of breach of fiduciary duty cognizable under ERISA against Bulakites, Winslow and JAC cannot be attributed to Lincoln National under an agency theory.

   a.  **Application of State Law**

Federal district courts apply state law of agency when deciding vicarious liability claims under ERISA. See Kral, Inc. v. Southwestern Life Ins. Co., 999 F.2d 101 (5th Cir. 1993) (applying Texas law to facts similar to those at bar) (citing, Wells Fargo Business Credit v. Ben Kozloff, Inc., 695 F.2d 940, 945, *reh'g denied*, 699 F.2d 1163 (5th Cir.), *cert. denied*, 464 U.S. 818, 78 L. Ed. 2d 89, 104 S. Ct. 77 (1983))[9]; Kling v. Fid. Mgmt. Trust Co., 323 F. Supp. 2d 132, 147 (D. Mass. 2004) (finding that plaintiff must prove required elements of vicarious liability under state law to impose respondeat superior liability on principal via an ERISA violation claim.); Mason Tenders Dist. Council Welfare Fund v. JNG Constr. LTD., 32 Employee Benefits Cas. (BNA) 2458, 2003 U.S. Dist. LEXIS 23025 (S.D. N.Y. 2003) (applying New York law of apparent authority in action for equitable relief under ERISA.). As such, the federal district court for the District of Connecticut would apply Connecticut's law of agency to determine if Lincoln National is vicariously liable for the acts of its employee and agent under an agency theory.

---

[9] Although Kral, Inc. v. Southwestern Life Ins. Co., 999 F.2d 101 (5th Cir. 1993) applies Texas law, its remarkably similar fact pattern makes it instructive. In Kral, Inc., the president (Zeigler) of a pension administration company (APS) defrauded a pension plan using Southwestern Life Ins. Co. (SWL) forms acquired during the short time he worked at SWL as sub-agent to solicit insurance applications. SWL never authorized Zeigler to administer pension plans. Prior to Zeigler's employment with SWL, the pension plan had been sending its checks to APS. After SWL engaged Zeigler, the pension plan continued sending checks to APS, intending Zeigler to purchase SWL investments. "[E]ach time that plaintiffs sought to purchase GIC's from SWL, Zeigler had plaintiff fill out an SWL application form. All check were made payable to APS at Zeigler's request." Id. at 103. Instead of buying the SWL investments, Zeigler pocketed the money. Finding SWL did nothing to make the pension plans reasonably believe Zeigler had SWL's authority to manage pension plans, and finding no showing that SWL actively and knowingly participated in Zeigler's fraud, the court affirmed summary judgment for SWL.

b.  **Amended Complaint Fails to State a Claim for Vicarious Liability Under Connecticut's Law of Agency**

Breach of fiduciary duty under ERISA is a tort. See Kling v. Fid. Mgmt. Trust Co., 323 F. Supp. 2d 132, 146 (D. Mass. 2004) ("When Congress creates a tort action [like ERISA], it legislates against a background of ordinary tort-related vicarious liability rules . . . ."); see also, Restatement 2d of Torts, § 874 Violation of Fiduciary Duty ("A fiduciary who commits a breach of his duty as a fiduciary is guilty of tortious conduct to the person for whom he should act.").

Under Connecticut law, a principal may not be held vicariously liable for the torts of its agents under an apparent authority theory. Davies v. General Tours, Inc., 63 Conn. App. 17, 31 (2001) (The theory of apparent authority "is not a viable ground on which to premise liability against a defendant sued for the torts of an alleged agent."). This exclusion protects employers from vicarious liability for the torts of their employees and agents:

> In other states, the doctrine of apparent authority has been used to hold a principal, who represents that another is his servant or agent and thereby causes a third person to rely justifiably on the care or skill of such agent, vicariously liable for harm caused to the third person by the lack of care or skill of his servant or agent. In Connecticut, however, the doctrine of apparent authority has never been used in such a manner. Thus, because we are bound by Connecticut precedent, we conclude that the doctrine of apparent authority is inapplicable to this case.

Mullen v. Horton, 46 Conn. App. 759, 772-73 (1997).

Because apparent authority cannot be the basis for vicarious tort liability under Connecticut law, the Amended Complaint fails to state a claim against Lincoln National for breaches of fiduciary duty allegedly committed by its employees and/or agents. Thus, the Court should deny leave to amend the Complaint to add vicarious tort claims against Lincoln National, since any such amendment would be futile. See Beach v. Jean, 46 Conn. Supp. 252 (Conn. Super. Ct. 1999) ("Since the plaintiff, in count six of his complaint, relies on the same claim that the doctrine of apparent authority creates a species of vicarious tort liability, it follows that the

defendant is entitled to 'judgment as a matter of law' on that count.").[10]

Moreover, Plan Participants cannot show that JAC was ever Lincoln National's agent, or that Bulakites and Winslow were acting within the scope of their agency with Lincoln National when they allegedly committed torts against the Plan Participants. JAC has never been an employee or agent of Lincoln National. See Brody Aff. at ¶ 4 ("Joshua Adams Corporation has never been an employee or agent of Lincoln National."). Nor can Lincoln National be held liable for Bulakites and Winslow's actions under the doctrine of respondeat superior. Plan Participants cannot show that either was acting within the scope of his employment and in furtherance of Lincoln National's business when they allegedly breached their fiduciary duty to the Plan Participants:

> We have long adhered to the principle that in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business. But it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply. [I]f employee's actions are not authorized by his employer and he is acting for his own interests and not in furtherance of his employer's business, employer cannot be held vicariously liable for employee's actions.

A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 208 (1990). Administration of retirement plans was not within the scope of Bulakites' employment with Lincoln National. See Brody Aff. at ¶ 19 ("Administration of retirement plans was not within Barry L. Bulakites' scope of employment with Lincoln National."). Nor was administration of retirement plans within Winslow's scope of agency with Lincoln National. See Brody Aff. at ¶ 20 ("Administration of

---

[10] Plan Participants Amended Complaint would fare no better on an apparent authority claim based in contract. The manager of an employer's office or store has no apparent authority to bind his employer to a contract when the employer itself has done nothing to make the third party reasonably believe the manager possessed such authority. See Adams v. Herald Pub. Co., 82 Conn. 448 (1909) (Office manager possessed no apparent authority to contract with vendors at the employer's place of business because employer did nothing to justify the belief that his authority extended beyond its actual limits.); Fairfield Lease Corp. v. Radio Shack Corp., 5 Conn. Cir. Ct. 460 (1968) (Store manager found to lack apparent authority to lease vending machine placed in his employer's store despite signing lease in company's name, receiving invoices and correspondence at store, corresponding on company letterhead, and signing money orders as company representative.).

retirement plans was not within James A. Winslow's scope of agency with Lincoln National."). In fact, both Bulakites' employment contract, and Winslow's agency contract specifically prohibit each of them from holding himself out as having authority to engaging in any activities other than those articulated in those contracts. See Bulakites Broker Contract at p. A-1, attached to Brody Aff. at Exhibit A ("The Broker hereby agrees not to perform any of the following acts: . . . j. hold himself/herself/itself out as a Broker of Lincoln National in any manner or for any other purpose than is expressly prescribed in this contract . . ."); Winslow's Agent Contract at p. A-1, attached to Brody Aff. at Exhibit B (similar). Nor was Lincoln National's business furthered in any way by any such conduct. See Brody Aff. at ¶ 24 ("Lincoln National's business was not furthered in any way by any administration of retirement plans Barry L. Bulakites, James A. Winslow, and/or Joshua Adams Corporation may have performed on behalf of the Plan Participants in this action.").[11] See Reed v. Zizka, 1998 Conn. Super. LEXIS 620 (1998) ("[W]here the alleged acts of the employee are very clearly outside of the scope of his authority, the Courts of this state have considered the issue to be one of law.") (citing, Brown v. Housing Authority, 23 Conn. App. 624, 628, 583 A.2d 643 (1990)).[12]

### 4. Wiblyi Cannot Maintain an Individual ERISA § 502(a)(2) Claim

It would also be futile for the Court to permit the Plan Participants to amend their Complaint to include Wiblyi's ERISA § 502(a)(2) claim for a "lump sum and interest" because

---

[11] The Report of the Special Master appointed by the Court to investigate this matter, indicates that Lincoln National receive no money from any of the Plan Participants. See Special Master's Report.

[12] In Sheltry v. Unum Life Ins. Co. of Am., 247 F. Supp. 2d 169 (D. Conn. 2003) the court denied an insurance company's summary judgment motion on finding issues of fact as to whether an agent who absconded with several customers' premium checks, and failed to initiate their policies, was acting on company's actual or apparent authority to act on its behalf. Sheltry is distinguishable in that the facts there indicated that the agent had been authorized to sell the policies at issue, did so for his employer's benefit, and was thus, acting within the scope of his employment, but then absconded with the premiums. In contrast, Bulakites and Winslow were never authorized to administer retirement plans on Lincoln National's behalf, did not do so for Lincoln National's benefit, and thus, did not do so within the scope of their employment.

an individual participant or beneficiary may not recover on his own behalf on claims brought under that section. "Any recovery under that section inures to the benefit of the plan as a whole, not to the benefit of the participant or beneficiary asserting the claim." Walsh v. Eastman Kodak Co., 53 F. Supp. 2d 569 (W.D.N.Y. 1999). Count III of the Amended Complaint seeks recovery on Wiblyi's behalf pursuant to ERISA § 502(a)(2). Such a claim "fails to state a claim or would be subject to a motion to dismiss . . . ." Nichols v. Metro. Life Ins. Co., 180 F. Supp. 2d 413, 418 (W.D.N.Y. 2001). Thus amending the Complaint to include such a claim would be futile.

## CONCLUSION

For the reasons stated herein, Defendant Lincoln National respectfully requests that the Court issue an Order denying the Plan Participants motion seeking leave to amend their Complaint to add Lincoln National as a defendant and to add Wiblyi as a plaintiff, and granting Lincoln National such other and further relief as this Court deems just and proper.

Dated: Hartford, CT
October 21, 2005

LeBOEUF, LAMB, GREENE & MacRAE, L.L.P.

By: _____
Thomas G. Rohback
James J. Reardon, Jr.
Doug Dubitsky
LEBOEUF, LAMB, GREENE & MacRAE, L.L.P.
225 Asylum Street
Hartford, CT 06103
(860) 293-3500
(860) 293-3730 (fax)
Counsel for Defendant
Lincoln National Life Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was hand delivered by courier on this 21st day of October, 2005 to the following counsel of record:

Jean Elizabeth Tomasco
Theodore J. Tucci
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

Joseph V. Meaney, Jr.
Cranmore, Fitzgerald & Meaney
49 Wethersfield Avenue
Hartford, CT 06114-1102

Thomas G. Moukawsher
Ian O. Smith
Moukawsher & Walsh
21 Oak Street, Suite 209
Hartford, CT 06106

Bryan D. Short
Deborah S. Freeman
Sara R. Simeonidis
Bingham McCutchen
One State Street
Hartford, CT 06103-3178

Eric P. Smith
Nancy Fitzpatrick Myers
Steven J. Errante
Lynch, Traub, Keefe & Errante
52 Trumbull Street
New Haven, CT 06506

_____
Doug Dubitsky