# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------- x
WASLEY PRODUCTS, INC., ET AL.,        :
                                      :
              Plaintiff,              :
                                      :   MASTER CONSOLIDATED CASE CIVIL
    v.                                :   NO. 3:03 CV 383 (MRK)
                                      :
BARRY BULAKITES, ET AL.,              :
                                      :
              Defendant.              :
                                      :
                                      :
------------------------------------- x

## AFFIDAVIT OF CAROLYN P. BRODY

STATE OF _Indiana_ }
COUNTY OF _Allen_ }

I, Carolyn P. Brody, having been duly sworn, do state under oath as follows:

1. My name is Carolyn P. Brody, and my business address is: Lincoln National Life Ins. Co., 1300 S. Clinton St., Ft. Wayne, IN 46802.

2. I am over eighteen years of age and understand the obligations of an oath.

3. I am an officer of Lincoln National Life Insurance Company ("Lincoln National") and have personal knowledge of the facts stated herein.

4. Joshua Adams Corporation has never been an employee or agent of Lincoln National.

5. Barry L. Bulakites held a 1288 Broker Contract and was employed as a Regional CEO of the Fairfield, Connecticut Regional Management Office ("Fairfield RMO") from May 8, 1995 to April 18, 1996.

-1-

6.  A true and accurate copy of the pertinent page of Barry L. Bulakites' broker contract is attached hereto as Exhibit A (bates number LNL-1279).

7.  James A. Winslow held an 1185 Agent Contract and acted as Brokerage Manager of the Fairfield RMO from June 1, 1995 to December 16, 1997.

8.  James A. Winslow was a registered representative of Lincoln National Life Insurance Company and LNC Equity Sales Corp. from August 30, 1995 to December 16, 1997.

9.  A true and accurate copy of the pertinent page of James A. Winslow's agency contract is attached hereto as Exhibit B (bates number LNL-0928).

10. James A. Winslow was never a Lincoln National employee.

11. Barry L. Bulakites resigned from Lincoln National by letter dated April 18, 1996. His resignation was accepted and effective as of that day.

12. A true and accurate copy of Barry L. Bulakites' resignation letter, dated April 18, 1996, is attached hereto as Exhibit C (bates number LNL-1276).

13. After April 18, 1996, Barry L. Bulakites had no further professional relationship with Lincoln National.

14. James A. Winslow's 1185 Agent Contract was terminated on December 16, 1997.

15. A true and accurate copy of James A. Winslow's termination notice, dated December 16, 1997, is attached hereto as Exhibit D (bates number LNL-0917).

16. After December 16, 1997, James A. Winslow had no further professional relationship with Lincoln National.

17. Lincoln National never authorized Barry L. Bulakites, James A. Winslow, or Joshua Adams Corporation to administer retirement plans on Lincoln National's behalf.

18. Lincoln National never authorized Barry L. Bulakites, James A. Winslow, or Joshua Adams Corporation to represent that they had authority from Lincoln National to administer retirement plans on Lincoln National's behalf.

19. Administration of retirement plans was not within Barry L. Bulakites' scope of employment with Lincoln National.

20. Administration of retirement plans was not within James A. Winslow's scope of agency with Lincoln National.

21. In fact, both Barry L. Bulakites' broker contract, and James A. Winslow's agency contract specifically prohibit each of them from engaging in any activities other than those articulated in those contracts.

22. Lincoln National was never a third party administrator of the Wasley Products 401(k) Profit Sharing Plan, or the Wasley Products, Inc. Retirement Plan.

23. Lincoln National received no funds, payments, commissions or compensation from Wasley Products 401(k) Profit Sharing Plan, or Wasley Products, Inc. Retirement Plan.

24. Lincoln National's business was not furthered in any way by any administration of retirement plans Barry L. Bulakites, James A. Winslow, and/or Joshua Adams Corporation may have performed on behalf of the Plan Participant's in this action.

Further the affiant sayeth not.

_____
Carolyn P. Brody

Subscribed and sworn to before me on this 19TH day of October, 2005.

_____
Notary Public

LORI M. YONKMAN
NOTARY PUBLIC
RESIDENT OF ALLEN COUNTY
MY COMMISSION EXPIRES 5/7/09

# EXHIBIT A

## SECTION A. BROKER CONTRACT - GENERAL PROVISIONS

Effective ___May 8___, 19 _95_ Lincoln National Life Insurance Company, LNC Equity Sales Corporation and Lincoln National Health and Casualty Insurance Company, all of Fort Wayne, Indiana, and any other Lincoln National companies made a party to this contract by future supplement (hereinafter "Lincoln National") appoint

___BARRY  L. BYLAKITES___
Name of Broker

of (or incorporated under the laws of) ___CT___
City, State or State

as a Broker or Corporate Broker and/or as a Registered Representative (hereinafter "Broker").

The Broker shall solicit applications for Individual Life Insurance, Individual Disability Insurance, Individual Long Term Care, Group Insurance, Annuities and solicit subscriptions for securities offered by or through Lincoln National.

### 1. Limitations on Appointment

This contract authorizes the Broker to solicit applications for those contracts or securites offered by the specific companies comprising Lincoln National only while properly licensed by and/or registered with the appropriate governmental agency or authority for that specific type of product or securities.

If the Broker is a corporation it is not authorized to solicit applications for Individual Annuities or any subscriptions or applications for any products registered as a security with the Securities and Exchange Commission (SEC). The Broker must have a letter of authorization or authorization card from the appropriate Lincoln National company for the particular type of security offered before soliciting subscriptions or applications for any SEC registered product.

### 2. Limitations of Authority

The Broker agrees not to perform any of the following acts on behalf of Lincoln National:

a.  incur any indebtedness or liability;
b.  make, alter or discharge contracts or make or alter any securities or any prospectus or item of supplemental sales literature pertaining to any such securities;
c.  initiate any legal action in any matter pertaining to Lincoln National's business without prior written consent of Lincoln National;
d.  change rates quoted by Lincoln National;
e.  extend the time for payment of any premium;
f.  waive payment in cash;
g.  guarantee dividends; or
h.  receive or collect any monies for or on behalf of Lincoln National, except the initial premium as allowed by Lincoln National's rules on insurance or annuities solicited by the Broker necessary to put the policy in force.

The Broker hereby agrees not to perform any of the following acts:

i.  submit to Lincoln National any application which Broker has not personally reviewed and believes to be accurate and complete;
j.  hold himself/herself/itself out as a Broker of Lincoln National in any manner or for any other purpose than is expressly prescribed in this contract;
k.  violate any federal or state statute, rule or regulation thereunder or rule of Lincoln National, respecting the sale of insurance, annuities or securities;

Rev. (2/94)

Form 1288 - A-1

LNL- 1279

**Lincoln National**

By:x _Donna Clark_
       Assistant Secretary

**Individual**

By:x _[signature]_
       Broker

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
Social Security Number

OR

**Corporate Broker**

_____
Corporate Broker

By:x _____
       President

_____
Tax Identification Number

OR

Executed in Duplicate

By: _Carol Brody_
    Sponsoring Marketing Manager*

* Only those individuals authorized by Lincoln National may sign this contract as a Sponsoring Marketing Manager.

**Partnership (all partners sign)**

By:x _____

By:x _____

By:x _____

By:x _____

_____
Tax Identification Number

Rev. (2/94)

A-6 - Form 1288

# EXHIBIT B

# SECTION A. AGENT CONTRACT - GENERAL PROVISIONS

Effective ___June 1___, 19 _95_ Lincoln National Life Insurance Company, LNC Equity Sales Corporation and Lincoln National Health and Casualty Insurance Company, all of Fort Wayne, Indiana, and any other Lincoln National companies made a party to this contract by future supplement (hereinafter "Lincoln National") appoint

_____JAMES A. WINSLOW_____
Name of Agent

of (or incorporated under the laws of) _____CT_____
City, State or State

as an Agent or Corporate Agent and/or as a Registered Representative (hereinafter "Agent").

The Agent shall solicit applications for Individual Life Insurance, Individual Disability Insurance, Individual Long Term Care, Group Insurance, Annuities and solicit subscriptions for securities offered by or through Lincoln National.

## 1. Limitations on Appointment

This contract authorizes the Agent to solicit applications for those contracts or securities offered by the specific companies comprising Lincoln National only while properly licensed by and/or registered with the appropriate governmental agency or authority for that specific type of product or securities.

If the Agent is a corporation it is not authorized to solicit applications for Individual Annuities or any subscriptions or applications for any products registered as a security with the Securities and Exchange Commission (SEC). The Agent must have a letter of authorization or authorization card from the appropriate Lincoln National company for the particular type of security offered before soliciting subscriptions or applications for any SEC registered product.

## 2. Limitations of Authority

The Agent agrees not to perform any of the following acts on behalf of Lincoln National:

a. incur any indebtedness or liability;
b. make, alter or discharge contracts or make or alter any securities or any prospectus or item of supplemental sales literature pertaining to any such securities;
c. initiate any legal action in any matter pertaining to Lincoln National's business without prior written consent of Lincoln National;
d. change rates quoted by Lincoln National;
e. extend the time for payment of any premium;
f. waive payment in cash;
g. guarantee dividends; or
h. receive or collect any monies for or on behalf of Lincoln National, except the initial premium as allowed by Lincoln National's rules on insurance or annuities solicited by the Agent necessary to put the policy in force.

The Agent hereby agrees not to perform any of the following acts:

i. submit to Lincoln National any application which Agent has not personally reviewed and believes to be accurate and complete;
j. hold himself/herself/itself out as an Agent of Lincoln National in any manner or for any other purpose than is expressly prescribed in this contract;
k. violate any federal or state statute, rule or regulation thereunder or rule of Lincoln National, respecting the sale of insurance, annuities or securities;

Rev. (2/94)

Form 1185 - A-1

LNL- 0928

**Limitations of Authority (cont.)**

l. withhold any monies or property of Lincoln National;

m. rebate or offer to rebate all or any part of a premium or deposit on an insurance or annuity contract issued or to be issued by Lincoln National;

n. induce or endeavor to induce any policyholder of Lincoln National to discontinue payment of premium or relinquish any policy or annuity contract (except if replaced by another Lincoln National product);

o. within a period of 90 days after termination of the Agent's appointment, induce or endeavor to induce any agent of Lincoln National to leave its service;

p. use any information acquired while a Registered Representative or Registered Principal in a manner adverse to the interests of Lincoln National or of the organizations for which Equity Sales shall act as the distributor of securities; or

q. use any form of advertising bearing Lincoln National's name, other than that furnished by Lincoln National, in negotiations, solicitations or advertising without such advertising being submitted to and approved by Lincoln National. The term "advertising" includes all forms of communication by any medium including, but not limited to, print, radio, television, billboards, direct mail, booklets, leaflets, business cards and stationery.

## 3. Relationship of Parties

The Agent agrees to be governed in the performance of his/her/its duties by the terms and conditions of this contract, and by the rules established by Lincoln National. The Agent shall be considered an independent contractor for purposes of this contract, except during periods of time when the Agent is party to a Subsidy Agreement with Lincoln National. While an independent contractor, the Agent reserves the right to exercise independent judgment as to the time, place and manner of soliciting applications for insurance, annuities and securities. No other provision of this contract nor any rule or regulation of Lincoln National shall be construed to abridge this right or create the relationship of employer and employee.

The Agent has no authority except as stated in this contract. No other authority may be implied from the authority expressly granted.

## 4. Prior Contracts

Execution of this contract by the parties terminates all previous contracts held by the Agent with Lincoln National.

## 5. Right to Withdraw

Lincoln National may at its discretion withdraw from the Agent the privilege of writing a particular type of policy contract or security.

Lincoln National may withdraw from any territory without liability to the Agent.

## 6. Termination

The Agent or Lincoln National may terminate the Agent's appointment under this contract, with or without cause, by notice sent by ordinary mail to the last known address of the other party. A resignation of the Agent tendered to any one of the companies a party to this contract will be assumed to be a termination of appointment with all companies a party to this contract unless otherwise specified.

Upon termination, the Agent shall immediately deliver to Lincoln National, or its representative, all rate manuals, policyholder record cards, application forms, letters, written correspondence with policyholders and representatives of Lincoln National, records, sales material, equipment and all other supplies and materials connected with, authorized or printed by and belonging to Lincoln National or any of its affiliates.

Termination of appointment as used in this contract shall mean termination of authority either through cancellation of the appropriate license or registration as required by this paragraph or through termination of this entire contract.

Rev. (2/94)

A-2 - Form 1185

LNL- 0929

## 12. Accounting

Lincoln National shall provide to the Agent, on a monthly or otherwise regular basis, a statement setting forth commissions earned and payable to the Agent along with an accounting of charges to the Agent's commission account. Lincoln National reserves the right to establish a minimum balance which must be reached before a statement and check will be provided.

## 13. Assignments, Modifications

No modifications or amendments of this contract nor any assignment of commissions payable hereunder shall be valid unless approved in writing by an authorized officer of Lincoln National.

## 14. Severability

If any provision of this agreement is found to be illegal or otherwise unenforceable, the remainder of this agreement shall not be affected and shall remain fully enforceable.

## 15. Forbearance

Forbearance or neglect of Lincoln National to insist upon performance of this contract shall not constitute a waiver of its rights and privileges.

Rev. (2/94)

Form 1185 - A-5

**Lincoln National**

By:x _[signature: Donna Clark]_
Assistant Secretary

**Individual**

By:x _[signature]_
Agent

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
Social Security Number

OR

**Corporate Agent**

_____
Corporate Agent

By:x _____
President

_____
Tax Identification Number

Executed in Duplicate

The undersigned RCEO, on behalf of his marketing organization, or PPGA guarantees payment of any debt due Lincoln National by the Agent and waives any requirement that Lincoln National first attempt to collect from the Agent.

By: _[signature]_
RCEO/PPGA

Rev. (2/94)

A-6 - Form 1185

LNL- 0932

# EXHIBIT C

TO: Suzanne Womack
    Secretary

Effective immediately, I, Barry Bulakites, resign as an officer of Lincoln Financial Group, Inc., from my position as Regional Chief Executive Officer of the Fairfield, CT Regional Marketing Office and any other officer titles I hold as a result of this position.

_____
Barry Bulakites

April 15, 1996
(Date)

# EXHIBIT D

**LINCOLN FINANCIAL ADVISORS**™

**Lincoln Financial Advisors Corp.**
1300 South Clinton Street
PO Box 2239
Fort Wayne IN 46801-2239
Tel. 800-237-3813

December 16, 1997

Mr James A Winslow
61 Muller Dr
Westbrook CT 06498

Dear Mr. Winslow:

Please consider this letter as official notification that the Agent Contract, Form 1185, which was effective June 1, 1995 between you and Lincoln National is being terminated as of December 16, 1997, per request from the Managing Agent, Gary Katz.

Renewal commissions will be credited to your account as they accrue, in accordance with contract provisions.

Subject to final audit, your account as of the November 30, 1997 statement, shows a debit balance of $469.14, which is now due and payable in line with Section A(5) of your contract.

Coverage under the Agents Major Medical/Dental Coverage and Life Insurance Benefit Plans automatically terminates on the last day of the month your status as an Agent terminates. When coverage terminates, you are eligible to purchase an individual conversion policy for your group life insurance. Applications for conversion must be made to the Benefits Section of Human Resources within 31 days following the date your coverage terminates. Also, with regard to your Comprehensive Major Medical/Dental coverage, you will receive a letter, within 14 days of your termination stating your options for continuation of coverage through COBRA. If you have not received this letter, notify the Benefits Section of Human Resources, (219)455-3766.

Also, we would call to your attention that if you have any unfinished business or policies for which settlement is not yet complete, please arrange for completion of these matters as described in the contract.

If you have any questions please contact Becky Harrold at (219)455-2335.

We appreciate having had the opportunity to provide service to you in representing our Company.

Sincerely,

*Rebecca J. Harrold*
Assistant Secretary

bjh:pk
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

Gary Katz      0754

Lincoln Financial Advisors Corp. (member NASD, SIPC)

LNL- 0917