Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

*HN31* To satisfy the first prong of the McDonnell Douglas test, a plaintiff must make a prima facie showing that he (i) is a member of a protected group; (ii) was qualified for the position; and (iii) was discharged or denied employment under circumstances giving rise to an inference of discrimination. More Like This Headnote

**COUNSEL:** For Plaintiff: ALEX A. BOHM, ESQ., New York, NY.

For Defendants: Frank Cummings, Esq., of counsel, LEBOEUF, LAMB, GREENE & MACRAE, Washington, DC.

**JUDGES:** Peter K. Leisure, U.S.D.J.

**OPINIONBY:** Peter K. Leisure

**OPINION: OPINION AND ORDER**

LEISURE, District Judge:

Plaintiff, an attending physician at defendant Bronx-Lebanon Hospital Center (the "Hospital"), brings this action to challenge the denial of certain retirement benefits the Hospital allegedly offered him as part of an employee pension plan. While plaintiff's Amended Complaint is inartfully drafted, he appears to be asserting common-law claims of breach of contract and wrongful discharge. The Amended Complaint also asserts claims of improper denial of benefits and wrongful discharge under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants now move for summary judgment. Their motion is granted.

BACKGROUND n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 In connection with its motion for summary judgment, defendants have complied with the requirements of Local Rule 56.1, submitting a detailed statement of material facts as to which they contend there are no genuine issues to be tried. In accordance with Rule 56.1(d), defendants have also supported each statement of material fact with a citation to admissible evidence. Plaintiff, however, has failed to comply fully with *HN1* Rule 56.1(b), which requires a party opposing a summary judgment motion to file a statement of material facts as to which there is a genuine issue for trial. Instead of filing such a separate submission, plaintiff chose to begin his memorandum of law with a peculiar rendition of a Rule 56.1 statement. Plaintiff's unorthodox "statement" consists of quoted entries from the table of contents of defendants' memorandum of law, which entries plaintiff asserts embody "a rather concise 'SUMMARY OF UNDISPUTED FACTS,'" and disparagingly contrasts that "summary" with the "verbosity" of defendant's actual Rule 56.1 statement. Plaintiff then proceeds to dispute, seriatim, each of the entries he sets forth as comprising what defendants consider to be "undisputed facts".

*HN2* Rule 56.1 provides that "all material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Local Rule 56.1(c); see also Maresco v. Evans Chemetics, 964 F.2d 106, 111 (2d Cir. 1992). Plaintiff's version of a Rule 56.1 statement does set forth facts that plaintiff contends present genuine issues for trial, with accompanying cites to admissible evidence. Plaintiff has thus complied, to a limited extent, with subdivisions (b) and (d) of Rule 56.1. The Court notes its displeasure, however, at plaintiff's manner of compliance. Accordingly, the Court deems all of the facts set forth in defendants' Rule 56.1 statement to be admitted by plaintiff, except those specifically controverted by his version of a Rule 56.1 statement.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*2]**

## I. Plaintiff's Employment Relationship with the Hospital

Plaintiff was hired by the Hospital as its Chief of Cardiology commencing on July 1, 1977. On September 9, 1992, the President of the Hospital informed plaintiff that he had been reappointed to that position, effective for the period from January 1, 1993 to December 31, 1994. See Letter from Miguel M. Fuentes, Jr., President of Bronx-Lebanon Hospital Center, dated September 10, 1992, Att. 8 to Defs.' Statement Pursuant to Local Rule 56.1 ("Defs.' 56.1 Statem.").

Plaintiff's immediate supervisor at the Hospital was defendant Jonathan W.M. Gold, M.D., the Director of Medicine. Dr. Gold was not satisfied with plaintiff's performance as head of cardiology. He was particularly displeased with the quality of care administered in the Cardiology Department, and with plaintiff's supervision of cardiologic residents and fellows. In June of 1993, Dr. Gold sent a letter to plaintiff informing him that effective July 1, 1993, plaintiff would become the Acting Chief of Cardiology, and that his appointment as Acting Chief would end with the selection of a new Chief. See Letter of Jonathan W.M. Gold, M.D., dated June 30, **[*3]** 1993, Att. 7 of Defs.' 56.1 Statem. Upon receiving that letter, plaintiff reminded the Hospital that his contractual term as Chief did not expire until the end of 1994, and submitted his grievances to the Faculty Review Committee of the Senate of the Albert Einstein College of Medicine ("Faculty Review Committee"). n2 What occurred in the year after plaintiff received Dr. Gold's letter is somewhat unclear from the record. However, in a subsequent letter, dated April 27, 1994, Dr. Gold informed plaintiff that he would remain Chief of Cardiology through July 1, 1994, and indicated that he would "continue on salary through December 31, 1994, at which time [he would] be placed on terminal leave." Letter of Jonathan W.M. Gold, M.D., dated April 27, 1994, Ex. 4 to Pl.'s Opp'n Mem. of L. ("Opp'n"). The letter also explained that "while on terminal leave, [plaintiff would] be paid for accumulated vacation days and [would] continue to receive benefits, in accordance with hospital policy, to which [he was] entitled." Id. Shortly after Dr. Gold sent the second letter, the Faculty Review Committee issued a report criticizing him for his abrupt treatment of plaintiff and recommending **[*4]** that plaintiff be given two-years' notice if he was to be terminated from the medical staff. See Findings and Recommendations by the Faculty Review Committee of the Senate of the Albert Einstein College of Medicine, dated June 2, 1994, Ex. 1 to Opp'n ("Faculty Review Committee Report"), at 4. The report did not, however, contradict Dr. Gold's statement that plaintiff's appointment as Chief would expire at the end of 1994.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The Hospital is affiliated with the College of Medicine.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In December, Dr. Gold sent plaintiff yet another letter, reminding him that his "appointment as Director of Cardiology ends December 31, 1994." That letter also described that "as of January 1, 1995, your status will be that of a voluntary staff member. You will continue with the rank of attending physician. This status is unsalaried." Letter of Jonathan W.M. Gold, M.D., dated December 28, 1994, Att. 9 to Defs.' 56.1 Statem. ("Gold Letter of Dec. 28, 1994"). Shortly thereafter, Dr. Gold sent a memorandum to the payroll department, **[*5]** which noted that "Dr. Yoran is no longer on the Department of Medicine staff as per December 31, 1994." Memorandum of Jonathan W.M. Gold, M.D., dated January 10, 1995, Att. 10 to Defs.' 56.1 Statem.

## II. Employee Pension Benefits

As part of his employment benefits with the Hospital, plaintiff participated in the Pension Plan and Trust for the Employees of the Bronx-Lebanon Hospital Center (the "Pension Plan"), also a defendant in this action. Between May and June of 1995, the Hospital considered offering an early retirement pension benefits program to eligible Hospital employees in order to reduce payroll and costs. On September 12, 1995, the Hospital amended the Pension Plan to provide benefits to "Eligible Participants" who elected to retire during

an appointed "Window Period". This amendment, known as the "Voluntary Enhanced Early Retirement Plan" ("VEERP"), is at the heart of the instant action.

In mid-September of 1995, the Hospital began sending letters and accompanying enrollment forms to Pension Plan participants to notify them of the VEERP ("VEERP Letter"). The VEERP Letter informed recipients that

> as a result of the major overhaul of our national and local **[*6]** health care delivery system, sweeping changes in the laws regarding hospital reimbursement rates, and projected reductions in Medicare and Medicaid programs, the Trustees of [the Hospital] see a need for reducing its workforce in a planned and systematic manner. As part of that effort we are offering a voluntary enhanced early retirement program . . . to all employees who participate in [the Pension Plan] who have attained the age of 55 and completed at least 5 years of service with the Hospital.

Att. 14 to Defs.' Rule 56.1 Statem. (also "VEERP Letter"), at 1. Those electing to participate in the VEERP were required to sign a waiver that included the statement: "I hereby elect to retire under the VEERP. I acknowledge that if I elect to retire under the VEERP, I will retire effective January 1, 1996." Id. at 4. The waiver required participants to forgo their right to pursue claims against the Hospital under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"). See id.

The Hospital sent plaintiff a copy of the VEERP Letter, dated September 22, 1995. The Letter included a summary comparison of the benefits he would earn under the original **[*7]** terms of the Pension Plan and those he would receive if he enrolled in the VEERP. In November of 1995, Dr. Yoran signed the VEERP enrollment form and the ADEA waiver, and then submitted them to the Plan Administrator.

A benefits consultant for the Pension Plan subsequently sent a letter to plaintiff informing him that the VEERP was "available only to active employees who were employed by [the Hospital] as of and after September 1, 1995. Your employment at [the Hospital] ended on December 31, 1994. Thus, you are not entitled to participate in [the VEERP]." Letter of L. David DeMian, dated December 1, 1995 ("DeMian Letter"), Att. 16 to Defs. Rule 56.1 Statem.

## III. Procedural Background

Seeking to obtain VEERP benefits, plaintiff filed a complaint against the Hospital in the New York Supreme Court, Bronx County. The Hospital removed the case to this Court, pursuant to 28 U.S.C. § 1441, on the grounds that plaintiff's claims arose out of and/or pertained to a retirement benefit plan administered under ERISA. Plaintiff subsequently moved to remand the case to state court, arguing that his complaint asserted only state contract law claims. In denying plaintiff's motion, **[*8]** this Court determined that

> the VEERP is part of a plan governed by ERISA. Dr. Yoran's claims are related to and founded upon his alleged right to enroll in the VEERP and to receive benefits defined by the VEERP. Therefore, his cause of action, even if worded as a contract claim, is essentially a claim for benefits under an ERISA plan. Such a claim is displaced by ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B), and is within the scope of ERISA's preemption provision, 29 U.S.C. § 1144(a).

Yoran v. Bronx-Lebanon Hospital Center, 1996 U.S. Dist. LEXIS 13559, *7-8, No. 96 Civ. 2179, 1996 WL 527337, at *3 (S.D.N.Y. Sept. 16, 1996).

Plaintiff subsequently filed an Amended Complaint, which, among other things, added Dr. Gold and the Pension Plan as defendants.

DISCUSSION

## I. Standard for Summary Judgment

*HN3*⊤A moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Holt v. KMI-Continental, Inc., 95 F.3d **[*9]** 123, 128 (2d Cir. 1996), cert. denied, 520 U.S. 1228, 117 S. Ct. 1819, 137 L. Ed. 2d 1027 (1997); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). *HN4*⊤The moving party bears the burden of showing no genuine issue of material fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (citation omitted); see also Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1231 (2d Cir. 1996).

*HN5*⊤The Court's function in deciding summary judgment motions is not to try issues of fact, but instead to determine whether there are such issues to try. See Sutera v. Schering Corp., 73 F.3d 13, 15-16 (2d Cir. 1995). *HN6*⊤In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor **[*10]** of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); see also Holt, 95 F.3d at 129. However, *HN7*⊤the substantive law governing the case will identify those facts that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment." Anderson, 477 U.S. at 248. "*HN8*⊤A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. The nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Dister v. The Continental Group, Inc., 859 F.2d 1108, 1112 (2d Cir. 1988) (quoting, respectively, Anderson, 477 U.S. at 248; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)) (citations omitted). He must present "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256.

## II. ERISA Preemption

Congress enacted ERISA so that employers could rely on a single, uniform **[*11]** system of regulation for employee benefit plans. This federal scheme was intended to avoid the crazy quilt of varying and even conflicting state laws to which employers would otherwise be subjected in administering their plans. See New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656-57, 131 L. Ed. 2d 695, 115 S. Ct. 1671 (1995).

To facilitate achievement of that goal, *HN9*⊤ERISA contains a preemption clause that, in relevant part, mandates that "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." ERISA § 514(a), 29 U.S.C. § 1144(a). The Supreme Court of the United States has noted that *HN10*⊤the preemption clause "is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan governed by ERISA." FMC Corp. v. Holliday, 498 U.S. 52, 58, 112 L. Ed. 2d 356, 111 S. Ct. 403 (1990). As a result, courts have deemed numerous state-law claims to be preempted by ERISA. See Albradco, Inc. v. Bevona, 788 F. Supp. 786, 788-89 (S.D.N.Y. 1992) (collecting cases). *HN11*⊤ **[*12]** With respect to common-law claims pertaining to employee benefit plans, the United States Court of Appeals for the Second Circuit has held that "[a] state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 288 (2d Cir. 1992); see also James v. Fleet/Norstar Fin. Group, 992 F.2d 463, 465 (2d Cir. 1993). "*HN12*⊤Whether ERISA preempts a state law or portion thereof is a question of law," Devlin v. Transportation Communs. Int'l Union, 173 F.3d 94, 1999 WL 203254, at *2 (2nd Cir. 1999), to which the Court now turns.

Plaintiff's Amended Complaint is poorly drafted; none of its three counts explicitly spells out plaintiff's causes of action, and his opposition papers to the present motion have done little to clarify the same. His first and third counts do, however, appear to make out state-law claims. Construing the first count liberally,

the Court determines that plaintiff is asserting a breach of contract claim against the Hospital. Plaintiff claims that the VEERP Letter constituted a valid offer to enter **[\*13]** into a contract with the Hospital, which offer he allegedly accepted. Plaintiff argues that the Hospital breached the contract he alleges resulted therefrom by refusing to grant plaintiff benefits under the VEERP. Count three of the Amended Complaint, asserted against all three defendants, alleges that plaintiff was discharged prematurely in order to avoid offering the VEERP benefits to him. Plaintiff contends defendants "conspired together to single [him] out and to discriminate against him in refusing to pay him the VEERP benefits which he was entitled to receive under the terms of a contract and in refusing to pay him the retirement benefits to which he was entitled as an ERISA benefit . . . ." Am. Compl. P 32. While the Amended Complaint does not explicitly couch it as such, this allegation could be construed as a state-law wrongful discharge claim. Defendants move for summary judgment on these claims, arguing that they are state-law causes of action subject to ERISA preemption. The Court finds that plaintiff's state-law claims are preempted.

**A. Contract Claim**

The contract claim forming the basis of plaintiff's first cause of action is preempted by ERISA. The great weight **[\*14]** of authority indicates that *HN13* ERISA preempts a breach of contract claim arising from a failure to pay employee benefits. See Pilot Life Ins. v. Dedeaux, 481 U.S. 41, 56-57, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987); see also T Square Med., Inc. v. Sinew Corp. Group Health Plan, 1995 U.S. Dist. LEXIS 8614, No. 93 Civ. 8862, 1995 WL 375901, at \*2 (S.D.N.Y. June 22, 1995) (Keenan, J.) (interpreting Pilot Life as standing for the proposition that, as a matter of law, ERISA preempts contract claims for failure to pay benefits); Protocare of Metro. New York, Inc. v. Mutual Ass'n Adm'rs, Inc., 866 F. Supp. 757, 759 (S.D.N.Y. 1994) (holding that state breach of contract claim is preempted by ERISA); Snyder v. Elliot W. Dann Co., 854 F. Supp. 264, 273 (S.D.N.Y. 1994) ("As a matter of law all state common law claims of promissory estoppel, breach of contract or fraud are preempted by ERISA"). The contract plaintiff alleges he made with the Hospital was for employee benefits offered as part of an employee benefit plan. The VEERP Letter--the sole source of plaintiff's contract claim--was an offer of benefits under the Pension Plan, which is undisputedly governed by ERISA. n3 Plaintiff's contract claim, therefore, **[\*15]** "'relates to an employee benefit plan governed by ERISA,'" FMC Corp., 498 U.S. at 58, and is accordingly preempted. As such, summary judgment must be granted to the Hospital on the first count of plaintiff's Amended Complaint.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 In its previous Memorandum Order, the Court concluded that the alleged contract was for benefits under the VEERP. The Court reasoned that if the VEERP became part of the original Pension Plan, then it too would be governed by ERISA. The Hospital offered convincing evidence that the VEERP was created by an amendment to the Plan. Because plaintiff offered no evidence in rebuttal, for the purposes of the removal motion, the Court determined that the VEERP was part of the original Plan, and was thus governed by ERISA. See Yoran, 1996 WL 527337, at \*2-\*3. With respect to the instant motion, plaintiff does not dispute that determination.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Seeking to avert ERISA preemption of his contract claim, plaintiff cites Momentum v. Employee Creditors, 25 F.3d 1132 (2d Cir. 1994). In that **[\*16]** bankruptcy case, the Second Circuit held that a debtor company that had represented to its employees that they would receive certain severance payments, seemingly for the purpose of securing the employees' approval of the debtor's reorganization plan, was estopped from later amending the plan to eliminate those payments. See id. at 1136. The debtor contended the severance payments were employee benefit plans, and any estoppel claim pertaining thereto should accordingly be preempted by ERISA. Rejecting the debtor's argument, the Court of Appeals determined that ERISA preemption does not preclude a bankruptcy court from using its traditionally expansive equitable remedial powers to estop a debtor "in litigation from asserting otherwise lawful positions where its prior misleading conduct would make such an assertion inequitable." Id. at 1137.

Aside from simply citing Momentum, plaintiff does not develop an equitable estoppel claim. In any event, Momentum is inapposite to the case at bar. Drawing the most favorable inferences from his opposition

et a Document - by Citation - 2003 U.S. Dist. Employee Benefits Cas. (BNA) 1938          Page 10 of 17

Case 3:03-cv-00889-WIG   Document 249-4   Filed 10/21/2005   Page 6 of 10

brief, plaintiff's Momentum-based argument appears to be that because of defendants' allegedly "misleading conduct" with [*17] respect to the VEERP Letter, they should be estopped from contending ERISA preempts his contract claim. Yet, Momentum does not remotely suggest that principles of estoppel can preclude a claim of preemption. Momentum instead stands for the reverse proposition--that preemption does not necessarily bar a claim of estoppel. In any event, plaintiff has not described why defendants' conduct would be grounds for equitable estoppel of their preemption arguments; there is no indication that defendants ever represented anything to plaintiff about his claims being preempted.

Considering plaintiff's submissions as a whole, it seems that plaintiff may have instead intended to assert a promissory estoppel claim, which would be premised upon the Hospital's alleged promise to grant him VEERP benefits. Such a claim is not, however, set forth in the Amended Complaint. Consequently, the Court construes the seeming promissory estoppel arguments in plaintiff's opposition papers as a motion to amend his complaint. See Block v. First Blood Assoc., 988 F.2d 344, 350 (2d Cir. 1993); Finnerty v. Aer Lingus, 1995 U.S. Dist. LEXIS 17945, No. 94 Civ. 0877, 1995 WL 710919, at *1 (S.D.N.Y. Dec. 4, 1995). The Court, however, [*18] denies leave to amend, because amendment would be futile. See Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198-99 (2d Cir. 1989).

The Second Circuit has held that HN14☞only in "extraordinary circumstances" can principles of estoppel apply in ERISA cases. See Bonovich v. Knights of Columbus, 146 F.3d 57, 62 (2d Cir. 1998); Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993); Chambless v. Masters, Mates & Pilots Pension Plan, 772 F.2d 1032, 1041 (2d Cir. 1986). HN15☞The elements of a promissory estoppel claim in an ERISA action are: (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced. Bonovich, 146 F.3d at 62; Schonholz v. Long Island Jewish Medical Center, 87 F.3d 72, 79 (2d Cir. 1996).

Even if plaintiff could establish the first element of a promissory estoppel claim--that the VEERP Letter constituted a material misrepresentation--he cannot show that he relied to his detriment on that misrepresentation, the second and third elements of an estoppel claim. See Petrelli v. City of Mount Vernon, 9 F.3d 250, 256 (2d Cir. 1993). Plaintiff has admitted that between the time he returned the completed [*19] VEERP forms to the Hospital and when the Hospital subsequently denied his claim, he made no preparations for retirement, bought no retirement property, and spent no money in anticipation of retirement. Defs.' 56.1 Statem. PP 52-54.

The sole basis for plaintiff's reliance argument is that by signing the VEERP waiver, he forbore any ADEA claims he might have otherwise pursued against the Hospital. HN16☞In New York, a plaintiff must file such claims with the Equal Employment Opportunity Commission within 300 days of an allegedly unlawful employment practice. See 29 U.S.C. § 626(d)(2). Plaintiff asserts that because he believed he was entitled to enroll in the VEERP, he signed the ADEA waiver, thus allowing the limitations period for filing an age discrimination claim to elapse.

HN17☞The 300-day limitations period on ADEA claims begins to run when the employee receives "definite notice" of the adverse employment action. Economu v. Borg-Warner Corp., 829 F.2d 311, 315 (2d Cir. 1987). Put another way, the limitations period commences on the date the allegedly discriminatory action "was made and communicated to [the employee]." Delaware State College v. Ricks, 449 U.S. 250, 262, 66 [*20] L. Ed. 2d 431, 101 S. Ct. 498 (1980). The latest date from which the limitations period could begin running is on or about April 27, 1994, the date of Dr. Gold's letter informing plaintiff that he would "be placed on terminal leave," as of December 31, 1994. Letter of Jonathan W.M. Gold, M.D., dated April 27, 1994, Ex. 4 to Opp'n (emphasis added). Plaintiff concedes this in his affidavit: "in mid 1994 [the Hospital] notified me that my employment there would be terminated as of December 31, 1994." Aff. of Chaim Yoran, dated May 6, 1996, Ex. 9 to Opp'n ("Yoran Aff."), at P 2 (emphasis added); see also Depo. of Chaim Yoran, M.D., dated March 13, 1997 ("Yoran Depo."), Att. 4 to Aff. of Frank Cummings, Esq., dated Feb. 26, 1998 ("Cummings Aff."), at 77 (acknowledging having been notified in 1994 that his employment would end on December 31st of that year). Given that triggering date, plaintiff's potential ADEA claims were time-barred well before the Hospital enacted the VEERP, much less sent plaintiff the VEERP Letter and its accompanying ADEA waiver form. n4 Plaintiff had no cognizable age discrimination claim to waive at the time he signed the ADEA waiver. His "waiver" [*21] cannot, therefore, constitute detrimental reliance. Furthermore, plaintiff has not related how his case presents "extraordinary circumstances" sufficient to support an estoppel claim in the ERISA context. Lee, 991 F.2d at 1009. Any such claim would, therefore, be futile.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 While it is true that the Faculty Review Committee Report recommended plaintiff be given two-years' notice if the Hospital wanted to terminate him from the medical staff (as distinguished from terminating him as Chief of Cardiology), see Faculty Review Committee Report at 4, plaintiff has not presented any evidence or argument indicating the Committee's recommendation had any effect on his employment. Most importantly, plaintiff has not attempted to show the Committee had the authority to overrule Dr. Gold's decision to terminate all but plaintiff's admitting privileges at the end of 1994. These omissions on plaintiff's part, combined with his admission in both his affidavit and his deposition that he was given notice of termination in mid-1994, convince the Court that no more than a "metaphysical doubt as to the material facts,'" Dister, 859 F.2d at 1112, exists regarding when he received notice.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*22]**

## B. Wrongful Discharge

To the extent the third count of the Amended Complaint can be construed to allege a state-law wrongful discharge claim--which plaintiff does not press in his opposition papers--such a claim is, as a matter of law, preempted by ERISA. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990).

## II. ERISA Claims

Because ERISA preempts plaintiff's state-law claims, he must look exclusively to the remedial scheme provided by ERISA. _HN18_ Section 502 of ERISA expressly empowers an employee benefit plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . ." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

Plaintiff asserts that under section 502(a)(1)(B), he is entitled to the pension benefits described in the VEERP Letter. In addition, plaintiff contends he was prematurely terminated in order to prevent him from obtaining the VEERP benefits. While plaintiff does not cite a statutory provision applicable to this claim, such a wrongful discharge claim is redressable under **[*23]** _HN19_ section 510 of ERISA, which makes it unlawful for an employer to terminate an employee with the purpose of interfering with his pension rights. See 29 U.S.C. § 1140. Before addressing the merits of plaintiff's ERISA claims, however, the Court must consider the threshold question of whether plaintiff exhausted his administrative remedies before filing the instant suit.

## A. Exhaustion of Administrative Remedies

_HN20_ In seeking to redress a denial of benefits, claimants must first pursue any administrative means of redress provided by their benefit plans. See Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989). This exhaustion requirement is a jurisdictional prerequisite to a suit for benefits under ERISA. n5

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 See Ambris v. Bank of New York, 1998 U.S. Dist. LEXIS 15801, *20 n.7, No. 96-0061, 1998 WL 702289, at *6 n.7 (S.D.N.Y. Oct. 7, 1998); Barnett v. IBM Corp., 885 F. Supp. 581, 586-87 (S.D.N.Y. 1995); Ludwig v. NYNEX Serv. Co., 838 F. Supp. 769, 781 (S.D.N.Y. 1993). The exhaustion requirement does not, however, apply to plaintiff's § 510 wrongful discharge claim. See Barnett, 885 F. Supp. at 592.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*24]**

Defendants claim plaintiff did not exhaust administrative remedies because he failed to appeal the denial of VEERP benefits to the Plan Administrator in accordance with the administrative procedures set forth in the Plan. See Pension Plan & Trust for the Employees of the Bronx-Lebanon Hospital Center ("Plan"), Ex. 18 to Cummings Aff., at 74-76. However, the Summary Plan Description of the Plan ("SPD"), which was distributed to plaintiff, plainly states that "if you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in state or federal courts . . . ." Pension Plan & Trust for the Employees of the Bronx-Lebanon Hospital Center Summary Plan Description, Ex. 19 to Cummings Aff. (also "SPD"), at 16. The SPD does not describe any other, intermediate, step necessary for appealing a denial of benefits. In Heidgerd v. Olin, 906 F.2d 903 (2d Cir. 1990), the Second Circuit held that HN21 when a Summary Plan Description conflicts with the terms of the original, operative plan documents, the terms of the summary control. See id. at 907-08. Because the SPD does not discuss any administrative remedies available for a denial of benefits, in light of [*25] Heidgerd, defendants' exhaustion argument must be rejected. The Court now turns to the merits of plaintiff's ERISA claims.

## B. Claims to Recover Benefits under ERISA § 502(a)(1)(B)

### 1. Claim against Defendants Gold and the Hospital

To the extent that in count three of the Amended Complaint plaintiff is asserting claims to recover benefits under ERISA § 502(a)(1)(B) against Dr. Gold and the Hospital, such claims are not cognizable under ERISA. n6 It is well settled in this Circuit that "HN22 'ERISA permits suits to recover benefits only against the Plan as an entity.'" Lee, 991 F.2d at 1009 (citing 29 U.S.C. § 1132(d)(2)) (quoting Gelardi v. Pertec Computer Corp., 761 F.2d 1323 (9th Cir. 1985)); see also Leonelli, 887 F.2d at 1199; Barnett, 885 F. Supp. at 591-92. Thus, summary judgment is granted to defendants Gold and the Hospital on any such claim.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The sole cause of action contained in the second count is a § 502(a)(1)(B) claim, asserted only against the Pension Plan. Because of the poor drafting of the Amended Complaint, it is difficult to determine whether plaintiff's third count, asserted against all three defendants, contains only a claim for wrongful discharge under ERISA § 510, or also includes a § 502(a)(1)(B) claim.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*26]**

### 2. Claim against the Pension Plan

### a) Standard of Review

The Supreme Court has held that HN23 a denial of benefits is to be reviewed under "a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989). If the plan does give the administrator such discretion, a denial of benefits is subjected to the "arbitrary and capricious" standard of administrative review. See id.; Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). Under that deferential standard, a court may overturn a decision to deny benefits only if the decision was made "without reason, [was] unsupported by substantial evidence, or [was] erroneous as a matter of law." Id. at 442. In arguing for the arbitrary and capricious standard, defendants bear the burden of showing that the Pension Plan Administrator had discretionary authority over benefits determinations. See Sharkey v. Ultramar, 70 F.3d 226, 230 (2d Cir. 1995) ("The party claiming deferential review should [*27] prove the predicate that justifies it."); Arthurs v. Metropolitan Life Ins. Co., 760 F. Supp. 1095, 1098 (S.D.N.Y. 1991).

Defendants argue that the Plan explicitly entrusts the Administrator with such discretion. Section 2.3 of the Plan provides:

The Plan Administrator shall have such duties and powers . . ., which shall be performed in its full and absolute discretion, including . . . interpreting the provisions of the Plan . . .,

determining eligibility of any Employee to participate in the Plan and the amount of any benefits . . ., [and] determining all questions relating to the status and rights of Participants under the Plan . . . .

Plan at 15-16 (emphasis added). The Plan also describes that the Administrator's interpretations of Plan provisions "shall be conclusive and binding on all parties affected thereby . . . ." Id. at 15. In his opposition memorandum, plaintiff erroneously asserts that "while defendants' memorandum suggests that the Plan in question . . . granted discretionary powers to the administrator, it does not identify where such alleged discretionary powers can be found," Opp'n at 9, and thus urges that the Court employ de novo **[\*28]** review. The language from the Plan quoted above belies plaintiff's assertion; the Plan unambiguously vests the Administrator with discretion regarding claims for benefits.

In the alternative, plaintiff argues that even if the Plan does give the Administrator discretionary authority, the Administrator was not the person who denied plaintiff's claim for VEERP benefits. To support his contention, plaintiff relies on the denial letter sent to plaintiff by the Plan's benefits consultant. See Opp'n at 10 (citing DeMian Letter). Plaintiff appears to conclude from the letter that the benefits consultant, David DeMian, was responsible for denying plaintiff's claim. In this regard, plaintiff cites the Second Circuit's decision in Sharkey v. Ultramar, 70 F.3d 226 (2d Cir. 1995), which held that HN24 if an unauthorized party (i.e., one not given discretion under the terms of the plan) makes the benefit determination at issue, such determination must be reviewed under a de novo standard. See id. at 229-30.

Defendants deny plaintiff's assertion, arguing that the Plan Administrator, Ralph Staulcup, was in fact responsible for the denial. In his deposition testimony, Mr. Staulcup **[\*29]** notes that upon receiving plaintiff's VEERP enrollment forms, he concluded that plaintiff was not eligible to participate in the VEERP. See Depo. of Ralph Staulcup, dated July 17, 1997 ("Staulcup Depo."), Att. 3 to Defs.' 56.1 Statem., at 80. He then contacted Mr. DeMian, who in turn sent the denial letter to plaintiff. See id. Plaintiff does not address this evidence. HN25 While the nonmoving party to a summary judgment motion is entitled to every favorable inference, he must address the contentions of the movant in order to defeat judgment on an issue. See Anderson, 477 U.S. at 256-57 ("Rule 56(e) . . . provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. . . . The [nonmoving party] must present affirmative evidence in order to defeat a properly supported motion for summary judgment."); Goenaga, 51 F.3d at 18 ("The party opposing summary judgment may not rely simply on conclusory statements."); Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990) ("The nonmoving party may not rely simply **[\*30]** 'on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'") (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).

While it is quite possible that Mr. DeMian was involved in the deliberations on plaintiff's claim for benefits, plaintiff has offered the Court nothing that would enable a reasonable factfinder to conclude that it was not Mr. Staulcup who ultimately was responsible for denying the claim. In any event, there is nothing in the record that suggests Mr. DeMian's role in benefit determinations was at all inappropriate. The Plan plainly contemplates that the Administrator will rely on the assistance of others in exercising his duties. See Plan at 15 & 17 ("The Plan Administrator shall have such duties and powers as may be necessary to discharge its duties . . . including . . . appointing and employing individuals to assist in the administration of the Plan and any other agents it deems advisable including legal and actuarial."). Defendants have shown, and plaintiff has failed to controvert, that benefit determinations were committed to the discretion of the Administrator, who in this case made the **[\*31]** decision to deny plaintiff's claim for benefits. See Pagan, 52 F.3d at 441-42. Accordingly, the Court will examine that denial under the arbitrary and capricious standard of review.

## b) Reasonableness of Benefit Determination

HN26 The scope of arbitrary and capricious review is narrow; the Court may not substitute its judgment for that of the plan administrator as if the question of eligibility were being considered anew. See id. at 442. As stated, a court can reject the administrator's determination only if it was "without reason, unsupported by substantial evidence, or erroneous as a matter of law." Pagan, 52 F.3d at 442. Under this "highly deferential standard," a decision to deny benefits must be upheld if it was reasonable. Sharkey, 70 F.3d at

229; Jordan v. Retirement Comm. of Rensselaer Polytech. Inst., 46 F.3d 1264, 1273 (2d Cir. 1995). Thus, even if the parties set forth "two competing yet reasonable interpretations of a pension plan," this Court must accept that offered by the administrators [of the plan]." Pagan, 52 F.3d at 443.

Defendants argue that it was reasonable for the Administrator to deny plaintiff benefits under the VEERP because **[*32]** plaintiff was not an "active employee", i.e., a salaried employee, of the Hospital during the VEERP's "Window Period" of eligibility (September 15, 1995 to November 30, 1995). As such, defendants maintain plaintiff was unable to retire on January 1, 1996, as required under the terms of the VEERP amendment, and as described in the VEERP Letter. Defendants note that the VEERP amendment permits only "Eligible Participants" to elect to retire under the VEERP. The VEERP defines an "Eligible Participant" as "any active Participant who has completed five . . . Years of Service and has attained age 55 on or before the last day of the Window Period." Second Amendment to the Pension Plan and Trust for the Employees of the Bronx-Lebanon Hospital Center, dated September 12, 1995, Att. 21 to Cummings Aff., at 2 (emphasis added). Defendants argue the Administrator reasonably construed "active Participant" to mean a salaried employee participating in the Pension Plan. The Court agrees.

The Plan defines "Participant", in relevant part, as any "Employee" or "former Employee" participating in the Plan. Plan at 11. An "Employee" is defined as "any person included on the active employment **[*33]** rolls of [the Hospital] on or after [January 1, 1989]." Id. at 10 (emphasis added). Given that the definition of "Participant" distinguishes between current and former employees, and that an "Employee" is defined as a person listed on the "active" employment rolls, it was reasonable for the Administrator to have interpreted "active Participant" to be limited to then-current employees, i.e., those on the Hospital payroll during the Window Period of the VEERP. Cf. DeMian Letter (explaining VEERP was "available only to active employees who were employed by [the Hospital] as of and after September 1, 1995") (emphasis added).

The VEERP Letter itself describes that the purpose of the VEERP is to "reduce [the Hospital's] workforce in a planned and systematic manner," due to increased costs and decreased insurance reimbursement. VEERP Letter at 1. The Letter goes on to state that "as part of that effort we are offering a voluntary enhanced early retirement program . . . to all employees who participate in [the Pension Plan]." Id. (emphasis added). Plaintiff was not an employee by the time the VEERP was introduced. See supra at 17-18; see also Staulcup **[*34]** Aff. at 56 ("Dr. Yoran was a non-salaried attending physician beginning January 1, 1995."). The Court reiterates that plaintiff has admitted that at the end of 1994, he ceased to be "employed" by the Hospital. n7 As of January 1, 1995, plaintiff's only real affiliation with the Hospital derived from the admitting privileges he held there--the same affiliation he had with four other New York hospitals--where his status was also that of a non-salaried attending physician. See Defs.' Rule 56.1 Statem. PP 21-23.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 Yoran Aff. P 2 ("In mid 1994 defendant notified me that my employment there would be terminated as of December 31, 1994.").

Plaintiff argues in his opposition brief that because the Hospital paid him in 1995 for unused vacation time accrued during his previous years of service, he was still "employed" by the Hospital in 1995. This argument is utterly devoid of merit, and is rejected on its face.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Hospital's undisputed aim in offering the VEERP was to reduce payroll. See id. at P 32. In light **[*35]** of that goal, it was eminently reasonable for the Administrator to deny VEERP benefits to plaintiff, who was drawing no salary from the Hospital when the VEERP was offered. While the Hospital may have been careless in sending plaintiff the VEERP Letter, the Court cannot say that the denial of benefits was "without reason, unsupported by substantial evidence, or erroneous as a matter of law," Pagan, 52 F.3d at 442, as the Court must in order to overturn the Administrator's decision.

Plaintiff does not point to any language in the Pension Plan, or the VEERP amendment thereto, that might entitle him to VEERP benefits. His claim to recover benefits is instead based solely on the VEERP Letter.