Civil Procedure > Summary Judgment > Summary Judgment Standard
HN1± Summary judgment, pursuant to Fed. R. Civ. P. 56, is warranted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could return a verdict for the nonmoving party. A court must view the record in the light most favorable to the non-movant by resolving all ambiguities and drawing all reasonable inferences in favor of that party. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN2± In a motion for summary judgment, the burden to show that there is no genuine issues of fact rests with the party seeking summary judgment. Nevertheless, the party opposing the motion bears the ultimate burden of proof to demonstrate that there is some evidence which would create a genuine issue of material fact. The non-movant cannot meet this burden by simply relying on mere conclusory allegations, speculation or conjecture. More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement
Civil Procedure > State & Federal Interrelationships > Choice of Law
HN3± Pursuant to § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.S. § 185, a federal district court has the requisite jurisdiction to determine the validity of collective bargaining agreements between employers and unions. 29 U.S.C.S. § 185(a). Although federal law generally governs disputes arising under § 301, the United States Court of Appeals for the Second Circuit has recognized that state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. More Like This Headnote | Shepardize: Restrict By Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement
Business & Corporate Entities > Agency > Authority to Act > Agent Authority
HN4± In an action under the Labor Management Relations Act of 1947, 29 U.S.C.S. § 185, an employer is bound by the acts of its agents. 29 U.S.C.S. § 185(b). In order to determine if a person is acting as an employer's agent, common law principles of agency are applicable. A finding that an individual is not acting as an agent for another cannot be made simply because the acts performed were not actually authorized or subsequently ratified. 29 U.S.C.S. § 185(e). The authority to act may be implied or apparent, not just expressed. More Like This Headnote | Shepardize: Restrict By Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement
Business & Corporate Entities > Agency > Authority to Act > Apparent Authority
HN5± Second Circuit case law supports the view that apparent authority is created only by the representations of the principal to the third party, and explicitly rejects the notion that an agent can create apparent authority by his own actions or representations. Apparent authority arises from the principal's words or actions which, reasonably interpreted, leads a third party to believe that the principal consents to the purported agent acting on his behalf. A person may not confer authority upon himself or transform himself into an agent by merely claiming that he is one, rather the requisite authority must be traceable to the conduct or statements of the alleged principal. More Like This Headnote

Business & Corporate Entities > Agency > Authority to Act > Apparent Authority
HN6± Under New York law, an inquiry into the scope of a purported agent's authority is not a prerequisite to a finding of apparent authority. Where, however, facts and circumstances are such as to put him on inquiry, the transaction is extraordinary, or the novelty of the transaction alerts the third person of the danger of fraud, then the duty to inquire exists. A party relying on the apparent authority of an agent may not fail to heed warnings or inconsistent circumstances. More Like This Headnote

Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities
HN7± Under New York law, there must be overwhelming evidence of the signatory's intent to assume personal liability. Factors to be examined in determining a signatory's intention are the length of the agreement, the location of the personal liability provision in relation to the signature line, the appearance of the signatory's name within the body of the actual contract, the nature of the

negotiations leading up to its execution, and the signatory's position within the company. New York law requires that for individual responsibility to be imposed, the nearly universal practice is that the officer sign once as an officer and once as an individual. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement
Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities
HN8 ± The United States Court of Appeals for the Second Circuit has observed that although it has never held that two signatures are required under the Labor Management Relations Act of 1947, 29 U.S.C.S. § 185 et seq., the appearance of only one signature further supports a finding that the signatory did not intend to be bound. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** For Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Program Fund, New York State Laborers-Employers Cooperation and Education Trust Fund, New York Laborers' Health and Safety Trust Fund, Building Contractors Association Industry Advancement Program, John J Virga, Anthony Silveri, PLAINTIFFS: Lawrence A Kravitz, Gorlick, Kravitz & Listhaus, PC, New York, NY USA.

For JNG Construction Ltd, George Kafantaris, DEFENDANTS: John Michael Spanakos, Spanakos & Spanakos, Esqs, Brooklyn, NY USA.

**JUDGES:** GEORGE B. DANIELS, United States District Judge.

**OPINIONBY:** GEORGE B. DANIELS

**OPINION:** MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge:

Plaintiffs commenced this action, pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), as amended (29 U.S.C. §§ 1132(a)(3); 1145), and section 301 of the Labor-Management Relations Act of 1947 ("LMRA") (29 U.S.C. § 185), for equitable relief under ERISA and for breach of contract. Plaintiffs and defendants **[*2]** are both moving, pursuant to Fed.R.Civ.P. 56, for summary judgment.

Plaintiffs are a number of employee benefit trust funds ("Funds") and a Union, as well as their respective representatives. They allege defendant-employer JNG Construction Ltd. ("JNG") and defendant George Kafantaris ("George"), the signatory to the collective bargaining agreement, have violated their statutory and contractual obligation to submit monetary contributions and reports to the Funds; remit due checkoffs and New York Laborers' Political Action Committee ("NYLPAC") contributions to the Union, and to submit to an audit.

It is uncontested that John Kafantaris ("John") is sole owner and officer of JNG. John employs his brother George as a roofer. George signed the collective bargaining agreement at issue, and John maintains he had no authority to bind JNG. For purposes of defendants' motion for summary judgment, defendants concede the truth of the deposition testimony of plaintiffs' representatives. Plaintiffs, however, rely on the deposition of George Kafantaris in support of their motion and in opposition to defendants' motion. Accordingly, the factual recitation **[*3]** herein is based on all the evidence in the record.

George began working for JNG toward the end of 1996. (G. Kafantaris Dep. at 4). George has check signing authority for the company when John is not available. (J. Kafantaris Dep. 7-8, 16; G. Kafantaris Dep. at 10; Vollbrecht Aff. Ex. F). John never gave his brother authority to executive the collective bargaining agreement (J. Kafantaris Dep. at 16).

John Mastrion and Joseph Franco are the business agents for the Construction General Buildings Laborers Local 79 ("Local 79") who act as field representatives trying to organize non-union laborers. (Mastrion Dep. at 5-7; Franco Dep. at 5-6). They meet with the principals of companies in an attempt to have them sign collective bargaining agreements. (Mastrion Dep. at 9; Franco Dep. at 7) A principal would hold a position

such as chief executive officer, president, vice president, or officer of the corporation. (Mastrion Dep. at 10; Franco Dep. at 20). After learning of an ongoing renovation job at P.S. 104, Mastrion and Franco visited the school in July of 1998. (Mastrion Dep. at 12-13; Franco Dep. at 21-23). At the school, a worker gave them the telephone number for JNG and told them, **[*4]** when they call, to speak with John, the owner. (Mastrion Dep. at 16; Franco Dep. at 24-28). They called JNG from the location, and although Mastrion recalled speaking with John at that time, Franco testified that they left a message. (Mastrion Dep. at 16,19; Franco Dep. at 29-30). Mastrion testified that during his telephone conversation with John, John identified himself as the principal of JNG. (Mastrion Dep. at 18-19). John told him that the job was being closed down for a few week, but in any event, it was nearing completion. (Mastrion Dep. at 19-20).

John testified that in July of 1998, he returned the telephone call from Mastrion, and agreed to a meeting the following day. (J. Kafantaris Dep. at 11-12). John claimed that it was at this meeting that he told Mastrion and Franco that the project was nearly completed, and that although JNG was now using Local 8, he would consider Local 79 for future projects. (J. Kafantaris Dep. at 13-14). John denies having further contact with any representative of Local 79, and denies ever informing them that George had authority to sign on behalf of JNG. (J. Kafantaris Dep. at 14, 17).

Franco, however, testified that he and Mastrion had such **[*5]** a meeting, but claimed it was with George, not John. (Franco Dep. 32). Franco maintained that George said that he could represent JNG, but that he had to bring the Local 79 materials "back to his bosses." (Franco Dep. at 33-34). Franco could not recall whether George indicated he was a principal, shareowner, owner, officer or director of JNG. (Franco Dep. at 35). George's testimony fails to reveal his attendance at such a meeting nor did Mastrion testify to the existence of this meeting. (G. Kafantaris Dep. at 7-8, 11; Mastrion Dep. at 20-21; 23-24).

The roofing job at the school was closed down for a period of time. (J. Kafantaris Dep. at 13-14; Mastrion Dep. at 20). Mastrion testified that after learning that the project had resumed, he called John in August of 1998. (Mastrion Dep. at 25). Mastrion testified that John told him he would meet with him the following day. (Mastrion Dep. at 25, 26-29). George testified that although Mastrion and Franco called JNG requesting to speak with John, he took the call explaining to them that John was out of the country. (G. Kafantaris Dep. at 8-9). George testified that he agreed to meet with them. (G. Kafantaris Dep. at 8).

On August 26, 1998, Mastrion **[*6]** and Franco arrived for the meeting, and Mastrion had delegates from Local 8 and Local 1 also present to lend their support. (Mastrion Dep. 29-30; Franco Dep. at 41-42). Mastrion testified that he expected John to arrive, and did not know what he looked like because he had never met him before. (Mastrion Dep. at 32). When George identified himself, Mastrion claimed he asked him if he was an officer or principal of JNG, to which George replied he would sign the contract on behalf of John. (Mastrion Dep. at 32-34). Franco does not recall any such conversation occurring. (Franco Dep. at 43-46). Mastrion further testified that he thought he had seen George at the work site during his initial visit, so he was taken aback because if George was a principal they could have worked it out at that time and no future meeting with John would have been necessary. (Mastrion Dep. at 36). Mastrion believed that "when George stepped up to sign, he must have got the orders from John to sign." (Mastrion Dep. at 42). George denies ever being asked whether he was authorized to bind JNG or what his position with the company was. (G. Kafantaris Aff. P 5). He claims that he was instructed to sign the book, **[*7]** and he complied. (G. Kafantaris Dep. at 9). The contract is actually in booklet form. (Vollbrecht Aff. Ex A). Although the contract states, "print name and title," George did not fill in his title. (Mastrion 45; Franco 48-49; Vollbrecht Aff. Ex. A at 48). The collective bargaining agreement indicates it was signed on June 1, 1996. (Vollbrecht Aff. Ex. A at 48). In the paragraph above George's signature, the agreement states that "the person signing on behalf (sic) the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided in this Agreement ... (Id.). On the same day George signed the collective bargaining agreement with Local 79, he also signed a collective bargaining agreement with Local No. 1 wherein he wrote his title as "SECRE." (Vollbrecht Aff. Ex. G).

After George signed the Local 79 agreement, he was told that a laborer would be sent the following day to begin working at the school. (G. Kafantaris Dep. at 9-10; Mastrion Dep. at 33-34, 47; Franco Dep. at 46). The worker who arrived the next day was the shop steward. (Mastrion Dep. at 47-48; Franco Dep. 46, 55-56). He only worked at the site for a few days. (G. Kafantaris Dep. **[*8]** at 10; Mastrion Dep. at 48; Franco Dep. at 56). Since John was still on vacation, George signed the shop steward's paycheck. (G. Kafantaris Dep. at 10).

HN1 Summary judgment, pursuant to Rule 56, is warranted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The Court must view the record in the light most favorable to the non-movant by resolving all ambiguities and drawing all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587-88, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); Anderson, 477 U.S. at 255; Tomka v. Seiler Corp., 66 F.3d 1295, 1304 (2d Cir. 1995). HN2 The burden to show that there is no genuine issues of fact rests with the party seeking summary judgment. Anderson, 477 U.S. at 256; Tomka, 66 F.3d at 1304. Nevertheless, [*9] the party opposing the motion bears the ultimate burden of proof to demonstrate that there is some evidence which would create a genuine issue of material fact. Twin Laboratories v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990). The non-movant cannot meet this burden by simply relying on mere conclusory allegations, speculation or conjecture. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).

HN3 Pursuant to section 301 of the LMRA, the district court has the requisite jurisdiction to determine the validity of collective bargaining agreements between employers and unions. 29 U.S.C. § 185(a); Kozera v. Westchester-Fairfield Chapter of National Elec. Contractors Ass'n, 909 F.2d 48, 52 (2d Cir. 1990). Although federal law generally governs disputes arising under section 301, the Second Circuit has recognized that "state law, 'if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy.'" Lerner v. Amalgamated Clothing and Textile Workers Union, 938 F.2d 2, 5 (2d Cir. 1991) (quoting Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 457, 1 L. Ed. 2d 972, 77 S. Ct. 912 (1957). [*10]

HN4 An employer is bound by the acts of its agents. 29 U.S.C. § 185(b). In order to determine if a person is acting as an employer's agent, common law principles of agency are applicable. National Labor Relations Board v. Truck Drivers Local Union No. 449, 728 F.2d 80, 85-86 (2d Cir. 1984); National Labor Relations Board v. Local Union No. 3, 467 F.2d 1158, 1159 (2d Cir. 1972); Minelli Constr. Co, Inc. v. United Derrickmen & Riggers Assoc., 1990 WL 180550, * 4 (S.D.N.Y. 1990). A finding that an individual is not acting as an agent for another cannot be made simply because the acts performed were not actually authorized or subsequently ratified. 29 U.S.C. § 185(e). The authority to act may be implied or apparent, not just expressed. NLRB v. Truck Drivers Local Union No. 449, 728 F.2d 86; Local Union No. 3, 467 F.2d at 1159.

Plaintiffs contend that George had apparent authority to sign the collective bargaining agreement. HN5 "Second Circuit case law supports the view that apparent authority is created only by the representations of the principal to the third party, and [*11] explicitly rejects the notion that an agent can create apparent authority by his own actions or representations." Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989). Apparent authority arises from the principal's words or actions which, reasonably interpreted, leads a third party to believe that the principal consents to the purported agent acting on his behalf. Minskoff v. American Express Travel Related Servs. Co. 98 F.3d 703, 708 (2d Cir. 1996) (citations omitted). A person may not confer authority upon himself or transform himself into an agent by merely claiming that he is one, rather the requisite authority must be traceable to the conduct or statements of the alleged principal. See, Karavos Compania Naviera S.A. v. Atlantica Export Corp., 588 F.2d 1, 10 (2d Cir. 1978); Meyerson v. Contracting Plumbers Ass'n of Brooklyn & Queens, 606 F. Supp. 282, 289 (S.D.N.Y. 1985) (citations omitted); Ford v. Unity Hosp., 32 N.Y.2d 464, 299 N.E.2d 659, 346 N.Y.S.2d 238, 244 (N.Y. 1973).

Plaintiffs fail to point to words or deeds that are attributed to John which could have, even arguably, given the union representatives [*12] the impression that George had been given the authority to bind the company, and a review of the record fails to disclose any. On the initial visit to the job site, the union representatives were advised to call John who was identified as the owner of the JNG. Mastrion claims that, in that telephone conversation, John identified himself as the principal of JNG. John testified that when he met with the union representatives, he indicated that he was unwilling to sign the agreement at that time, and he denies ever telling them that George was authorized to sign for JNG. None of John's words or acts, either individually or in any combination, would create the appearance of apparent authority granted to George.

George's statements and actions should not have caused the union representative to justifiably believe

George was vested with the requisite authority. Franco claimed that although George said "he could represent JNG," he did not indicate in what manner he could do so. Additionally, Franco did not remember whether George ever said he was a principal, owner, officer, director or shareholder of the company. Moreover, instead of George signing the agreement when first given to him, [*13] he allegedly told Franco that he had to take the union materials back to his "bosses." Such a statement is clearly indicative of his lack of authority to bind JNG. Mastrion testified that on the day the agreement was signed, he specifically asked George whether he was an officer or principal of JNG, and that George simply replied that he would sign on behalf of John. In responding to such a direct question, George neither identified himself as an officer nor as a principal. Yet, Mastrion chose not to pursue this line of questioning despite the fact that he thought it important enough to pose the query initially. Even Mastrion acknowledged his surprise that George would possess the requisite authority to sign the agreement because when he met George during his initial visit to the work site, George did not identified himself as a principal, but rather Mastrion was instructed to call John. Despite his doubts as to George's authority, he proceeded on the assumption that John had ordered George to sign the agreement.

HN6 Under New York law, an inquiry into the scope of a purported agent's authority is not a prerequisite to a finding of apparent authority. Herbert Constr. Co. v. Continental Ins. Co., 931 F.2d 989, 995 (2d Cir 1991). [*14] Where, however, "facts and circumstances are such as to put him on inquiry, the transaction is extraordinary, or the novelty of the transaction alerts the third person of the danger of fraud," then the duty to inquire exists. Herbert Construction Co., 931 F.2d at 996 (internal quotation marks and citations omitted). A party relying on the apparent authority of an agent may not "fail to heed warnings or inconsistent circumstances." See, Property Advisory Group, Inc. v. Bevona, 718 F. Supp. 209, 213 (S.D.N.Y. 1989); see also, Sixth Ave. West Assoc. v. Local 32B-32J, Serv. Employees, Int'l Union, 1995 WL 442157, *5 (S.D.N.Y. July 25, 1995). Given the circumstances of this case, a duty to inquire into the scope of George's authority and to receive an answer to such an inquiry existed.

Plaintiffs nevertheless argue that JNG's actions and failure to act, after the agreement was executed, demonstrates its intention to adopt the agreement. Specifically, plaintiffs focus on the activities surrounding the shop steward: (1) the agreement to hire him; (2) a fax sent to JNG the day after the agreement was signed regarding his hiring; and (3) the [*15] pay check issued to him. These events are of no significance, with regard to JNG's intent to be bound, as they all occurred while John was out of the country on vacation. Plaintiffs fail to point to any conduct by John as JNG's principal manifesting an intent to abide by the terms of the agreement. Since George lacked the authority to bind the company, JNG cannot be held liable under the collective bargaining agreement.

The agreement, however, also provides that the signatory is to be held personally liable. Therefore, plaintiffs argue that George has a contractual obligation with respect to payment of fringe benefit contributions, dues checkoffs and NYLPAC contributions. Above the signature line, the agreement provides that the signatory is agreeing to be personally bound. HN7 Under New York law, there must be "overwhelming evidence of the signatory's intent to assume personal liability." Mason Tenders District Council Welfare Fund v. Thomsen Constr. Co., Inc., 301 F.3d 50, 53 (2d Cir. 2002) (quoting Lerner, 938 F.2d at 4). Factors to be examined in determining a signatory's intention are the length of the agreement, the location of the personal liability [*16] provision in relation to the signature line, the appearance of the signatory's name within the body of the actual contract, the nature of the negotiations leading up to its execution, and the signatory's position within the company. Cement and Concrete Workers District Council Welfare Fund v. Lollo, 35 F.3d 29, 35 (2d Cir. 1994) (citation omitted). New York law requires that for individual responsibility to be imposed, the nearly universal practice is that the officer sign once as an officer and once as an individual. Thomsen Constr. Co., 301 F.3d at 54 (quoting Salzman Sign Co. v. Beck, 10 N.Y.2d 63, 176 N.E.2d 74, 217 N.Y.S.2d 55, 57 (N.Y. 1961)). HN8 The Second Circuit observed that although it has never held that two signatures are required under the LMRA, the appearance of only one signature further supports a finding that the signatory did not intend to be bound. Id. at 53-54.

An examination of these factors, as well as the record as a whole, fail to demonstrate George's intent to be held personally accountable under the agreement, or even present a genuine issue of fact in this regard. Although no name appears in the body of the actual contract, [*17] the union representatives originally anticipated John, not George, to sign the agreement. The negotiations predominately focused on John's role as principal. Although Franco claims that he met with George to discuss the agreement, Franco admits George said that he had to bring the agreement back to his "bosses" for their review. George, employed as a roofer with JNG, signed the agreement only once. Even if he is the secretary of the company, which

appears to be the title he used when he signed an agreement with Local 1, there is still no evidence that he is a controlling corporate official. n1 Furthermore, Mastrion testified that George definitively stated that he was signing on behalf of John. This alleged pronouncement would vitiate any belief that George intended to be signing on his own behalf, and agreeing to become personally liable under the contract. n2

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 In a bank resolution giving George check signing authority, John is identified as both the president and secretary of JNG. (Vollbrecht Aff. Ex. F. at 1, 4). The title of secretary originally appeared next to George's name, but was crossed-out and replaced with "authorized signer." (Id. at 4). **[*18]**

n2 The agreement itself provides that it becomes "effective and binding upon the parties hereto on the 1st day of June 1996, and remains in effect through June 30, 1999." (Id. at 47). Although there is no dispute that George signed the agreement on August 26, 1998, directly above the signatory line it states that it was signed by both parties on June 1, 1996, prior to the date George even began his employment with JNG. (Vollbrecht Aff. Ex. A at 48).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In light of the foregoing, plaintiffs' motion for summary judgment is denied. Defendants' motion for summary judgment is granted, and the complaint is hereby dismissed.

Dated: December 17, 2003

SO ORDERED:

GEORGE B. DANIELS

United States District Judge

Service: **Get by LEXSEE®**
Citation: **32 Employee Benefits Cas. (BNA) 2458**
View: **Full**
Date/Time: Friday, October 21, 2005 - 10:54 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
[A] - Citing Refs. With Analysis Available
[I] - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.