UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WASLEY PRODUCTS, INC. et al | : : : | CIVIL ACTION NO. 3:03 CV 00383 (MRK) |
| Plaintiffs | : : : | |
| v. | : : | |
| BULAKITES, et al | : : | NOVEMBER 28, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO APPOINT SPECIAL MASTER**

**1. Introduction.**

The plaintiff plan participants Prentiss, Rizzi, Seich and Brown move for the appointment of a second special master to calculate the amount of the individual plan participants' losses in the case and reconstruct their 401(k) accounts using reasonable rates of return.

In their Complaint, the Plan Participants sue various parties they claim were fiduciaries of the 401k Plan set up by their employer, Wasley Products, Inc. They claim that at least three of the fiduciaries, Barry Bulakites, James Winslow, and Joshua Adams Corporation ("JAC"), converted plan assets to their own use. They claim the other fiduciaries, at a minimum, failed to fulfill their duties to supervise these three, enabling them to convert the plan assets. On June 25, 2003, before the Plan Participants joined the case as plaintiffs, Judge Squatrito appointed accountant

1

Alan Mandell as special master to trace payments made into the 401(k) Plan.[1] Ultimately, Mandell issued a report dated July 26, 2005 which, among other things, concluded that over $700,000 of payments made to the 401(k) through Bulakites, Winslow and JAC are unaccounted for.

While the Mandell Report is strong evidence that large amounts of money are missing, the Report does nothing to recreate what individual plan participants should have in their 401(k) accounts. The importance of this is thrown in to high relief because Bulakites, Winslow and JAC accuse Wasley Products of grossly underfunding the plan, thus making it impossible for the parties to know how much money is needed to restore the plans to the condition they would be absent any breaches of fiduciary duty. Without knowing how much money is missing from the 401k because too little was contributed by the plan sponsor and how much money is missing because the trust assets were wrongly diverted by the third party administrators, the parties can't constructively discuss settling the case and the Court can't apportion amounts of liability among the defendants if it determines any of the parties breached their fiduciary duties. Appointing a second special master will make this possible.

---

[1] Exhibit A (Order of Reference).

**2. The Court has Discretion to Appoint a Special Master.**

The Court has the discretion under Fed. R. Civ. P. 53 to appoint a special master. As the Second Circuit noted as long ago as 1939 in *In re Hotel Governor Clinton, Inc.* reference to a special master is a matter primarily in the discretion of the District Court.[2] Rule 53 explains, however, that masters are specifically provided for accountings or difficult damages calculations:

> Rule 53.  Masters
>
> (a) Appointment.
>
>  (1) Unless a statute provides otherwise, a court may appoint a master only to:
>
>  (A) perform duties consented to by the parties;
>  (B) hold trial proceedings and make or recommend findings of fact on issues to be decided by the court without a jury if appointment is warranted by
>> (i)   some exceptional condition, or
>> (ii)  the need to perform an accounting or resolve a difficult computation of damages; or

As the Western District of Missouri Third Circuit held in 1985 in *United States v. Conservation Chemical Co.*, the District Court's discretion to refer matters to special masters is particularly broad where difficult accounting problems are involved.[3] Indeed, as the Third Circuit pointed out in 2005 in *Beazer, Inc. v. Mead Corp.*: "Accountings and other damages computations may be referred without the

---

[2] 107 F.2d 398 (2d Cir. 1939).
[3] 106 F.R.D. 210 (W.D.Mo. 1985).

parties' consent because they generally do not call for any peculiar judicial talent or insight."[4]

Here the computations needed are mathematical. A special master wouldn't encroach on any judicial function but would supply the Court with needed information that could assist the parties in settling the case or the Court in deciding it. Indeed, the parties previously consented to the appointment of a special master, and hiring another one now would serve only to complete the picture the first master began. Accordingly, this case is appropriate for a special master.

**3. Who Should Be Appointed?**

Rule 53 (b)(1) says that the parties may suggest candidates for special master. Rule 53 (b)(2) says, however, that the special master should be neutral:

> (2) A master must not have a relationship to the parties, counsel, action, or court that would require disqualification of a judge under 28 U.S.C. § 455 unless the parties consent with the court's approval to appointment of a particular person after disclosure of any potential grounds for disqualification.

The plan participants propose that the Court appoint Nancy Klein, President of the firm of Coty & Bruce Benefits, Inc. Coty & Bruce is an employee benefits consulting firm that assists companies with administering employee benefit plans. It was established in 1989 and is based in San Diego, California. It lists among its

---

[4] 412 F.3d 429, 441 (3d Cir. 2005)(citing 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2605 at 655-66 (2d ed. 1994)).

clients Verizon, Hilton Hotels, Bausch & Lomb, Ingersoll-Rand, Revlon, Sunbeam, Waste Management, and many other prominent corporations. Further information about Klein and the company is contained in Exhibit B. In a telephone call with Robert Coty and Nancy Klein, undersigned counsel confirmed that she and her firm are available to do the work. Klein gave undersigned counsel the following time estimate:

> If the records are complete and in good order and we are able to do a terminal funding calculation for the Defined Benefit Plan in 1994 and carry the balances into the Defined Contribution Plan and then forward for the 11 years, we estimate it to take 4-6 months from the date we receive the records. If we need to reconstruct the Defined Benefit Plan back to its inception in the early 60's and/or the records are incomplete or inaccessible, the time to complete will vary accordingly

The rate for this work would be on an hourly basis as set forth in Exhibit C.

The plan participants' attorneys are familiar with Coty & Bruce because Moukawsher & Walsh, LLC represented plaintiffs in a case similar to this one in this District entitled *Briere v. Emergi-Lite*, No. 398CV01558 (SRU) where the defendant hired Coty & Bruce as experts in employee benefits administration. Moukawsher & Walsh has no relationship with Coty & Bruce, however, because Coty & Bruce was hired by their opposing counsel in that case and plaintiffs' counsel here has had no contact with that firm from then until contacting them now to determine the firm's availability and rates.

Coty & Bruce's experience in *Briere v. Emergi-Lite* will be particularly useful here. *Emergi-Lite* involved a small manufacturer's 401(k) plan that was looted by a dishonest third party administrator. Emergi-Lite and its counsel, Pullman & Comley, hired Coty & Bruce to do precisely what must be done here: a reconstruction of the participants' accounts as they would be today, in the absence of any failure to make contributions and any conversion of plan resources.

### 4. Who Should Pay?

Rule 53 says the Court must "consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay", but the rule makes clear that who pays how much is within the sound discretion of the District Court:

> (h) Compensation.
>
>   (1) *Fixing Compensation.* The court must fix the master's compensation before or after judgment on the basis and terms stated in the order of appointment, but the court may set a new basis and terms after notice and an opportunity to be heard.
>
>   (2) *Payment.* The compensation fixed under Rule 53(h)(1) must be paid either:
>
>     (A) by a party or parties; or
>
>     (B) from a fund or subject matter of the action within the court's control.
>
>   (3) *Allocation.* The court must allocate payment of the master's compensation among the parties after considering the nature and amount of the controversy, the means of the parties, and the extent to

>which any party is more responsible than other parties for the reference to a master. An interim allocation may be amended to reflect a decision on the merits.

As the First Circuit affirmed in 1976 in *Morgan v Kerrigan*: "The district court has broad discretion in fixing the amount of such compensation and in determining which of the parties to charge. F.R.Civ.P. 53(a);" the courts of appeals will not disturb a district court's decision where the court reasonably concluded the work was necessary and useful.[5]

    Here the defendants should bear the full cost of the special masters' work. The nature of the controversy supports this conclusion. The plaintiffs sue to recover monies that the first special master has already confirmed have gone missing without any explanation other than misappropriation.  The plaintiffs here are clearly innocent parties pursuing a claim whose merit has, in part, already been established by substantial evidence.  Deprived of their retirement savings by some or all of the defendants, the plaintiffs, are least able to bear the expense of the special masters' work.  As for the defendants, the plaintiffs would not oppose any cost sharing proposal they might make, but, in the absence of any, the Court need not puzzle over the relative responsibility of the parties. This is the second special master appointment. Accordingly, in the absence of any other proposal, the plan

---

[5] 530 F.2d 401, 427 (1st Cir. 1976).

participants ask the Court to order the defendants to share the special master's expenses the same way they shared the last special master's expenses:

> Plaintiffs Wasley Products, Incorporated and Precision Molding Company, Inc. shall be responsible for fifty percent (50%) of the master's compensation and costs incurred. Defendants Barry Leonard Bulakites, James Albert Winslow, and Joshua Adams Corporation (collectively); Nationwide Life Insurance Company of America f/k/a Provident Mutual Life Insurance Company, Lincoln National Life Insurance Company shall each be responsible for an equal share of the remaining fifty percent (50%) of the master's compensation and costs incurred, which is seventeen percent (17%). The costs may be reapportioned upon an appropriate motion to this court following a final decision in this matter.[6]

## 5. The Contents of the Order.

Rule 53 says the order of appointment must include:

> (2) *Contents.* The order appointing a master must direct the master to proceed with all reasonable diligence and must state:
>     (A) the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c);
>     (B) the circumstances--if any--in which the master may communicate ex parte with the court or a party;
>     (C) the nature of the materials to be preserved and filed as the record of the master's activities;
>     (D) the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations; and
>     (E) the basis, terms, and procedure for fixing the master's compensation under Rule 53(h).
>
> (3) *Entry of Order.* The court may enter the order appointing a master only after the master has filed an affidavit disclosing whether

---

[6] Exhibit A (Order of Reference).

there is any ground for disqualification under 28 U.S.C. § 455 and, if a ground for disqualification is disclosed, after the parties have consented with the court's approval to waive the disqualification.

   (4) *Amendment.* The order appointing a master may be amended at any time after notice to the parties, and an opportunity to be heard.

(c) Master's Authority. Unless the appointing order expressly directs otherwise, a master has authority to regulate all proceedings and take all appropriate measures to perform fairly and efficiently the assigned duties. The master may by order impose upon a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party and sanctions against a nonparty.

(d) Evidentiary Hearings. Unless the appointing order expressly directs otherwise, a master conducting an evidentiary hearing may exercise the power of the appointing court to compel, take, and record evidence.

## 6. Plan Participants' Proposed Mandate.

The plan participants ask the Court for the following mandate:

a.     The master shall take all steps necessary to determine the dollar amounts that should be in the individual plan participant accounts of the Wasley Products 401(k) Plan as of the date of the master's report if the following facts are assumed:

i.  all required contributions from the plan sponsor were made;

ii. all discretionary contributions from the sponsor and participants were properly credited to plan participants' accounts;

iii. any amounts from defined benefit plans that the sponsor was to deposit as opening balances in the 401(k) Plan were correctly calculated based upon the participants' vested accrued benefits under the defined benefit plans on the date the amounts were to be deposited in the 401(k) Plan.

iv. the 401(k) Plan assets were invested in the manner that a reasonably prudent fiduciary would have invested them under all the circumstances relevant to the 401(k).

In performing its work the master shall make maximum use of the July 26, 2005 report of the prior master, Alan Mandell. If any participants have withdrawn their benefits from the Wasley Products 401(k) Plan, the master shall determine the dollar amount that should have been in these individual plan participants' accounts on the date of withdrawal.

b. In connection therewith, the master may require the production of evidence upon all matters embraced in her determination, including, without limitation, the production of all plan records, employee records, and accounting records connected thereto.

c. Upon receipt of the Order of Reference to the master, the master shall forthwith set a time and place for the first meeting of the parties or their counsel and shall notify counsel for the parties in writing ten (10) days prior to this meeting.

  d. It is the duty of the master to proceed with all reasonable diligence. Any party, upon notice to the parties and master, may apply to the court for an order requiring the master to speed the proceedings.

  e. The master may engage in ex parte communications with the Court.

  f. The master shall not engage in ex parte communications with any party or counsel for any party. All communications with and from the master shall be in writing (with copies to all counsel), in person or by telephone with all counsel present. However, if the master has provided reasonable notice of a meeting to all counsel, and a party and/or its counsel fails to appear at the time and place appointed, the master may proceed ex parte or, in the master's discretion, adjourn the proceedings to a future day, giving notice to counsel of the absent party of the new date and time.

  g. The master shall have the authority to regulate all proceedings and take all appropriate measures to perform the assigned duties fairly and efficiently. The master may impose upon a party any noncontempt sanctions provided by Fed. R. Civ. P. 37 or 45, and may recommend a contempt sanction against a party and sanctions against a nonparty.

  h. The master may use Coty & Bruce employees to assist her with her determination without seeking leave of the Court. With consent of the Court and after notice to the parties and an opportunity for the parties to object within ten

(10) days of the written notice, the master shall be authorized to retain appropriate assistance and experts, as may be reasonably necessary, for her to perform the assigned duties.

    i.    The master shall preserve all materials reviewed and relied upon in preparing the report.  These materials shall be returned to the producing party within thirty (30) days of the filing of a final order by the Court.

    j.    Before the tenth day of the month after the initial meeting with the parties, and before the tenth day of each month thereafter until the final report is filed, the master shall file with the Clerk of the Court a status report setting forth the tasks completed by the master, the tasks that the master anticipates will need to be completed before her final report may be generated, and the time frame anticipated for completing all outstanding tasks and generating the final report.  A copy of each status report shall be provided to counsel for the Parties on the date each report is filed.

    k.    The master shall prepare a final report upon the matters submitted to the master and shall set forth each and every finding of fact which forms the basis for the final report by numbered paragraph.  The master shall file the final report with the Clerk of the Court and serve on counsel for all parties a copy of the final report.  Before filing the final report, the master shall submit a draft report to all counsel for all parties for the purpose of receiving their suggestions.  Within

twenty-one (21) days of receiving the draft report, the Parties shall submit any comments or suggestions to the master.

**7. Effects of the Report.**

The parties reserve the right to challenge the findings of fact set forth in the final report. The parties shall file written objections to the special master's findings of fact within thirty (30) days of the date the final report is filed with the Court. The Court may reject any clearly erroneous findings of fact the special master makes.

**8. Conclusion**

The plan participants ask the Court to appoint Nancy Klein special master to determine the amount that should be in each plan participant's 401(k) account in accordance with the mandate proposed above and at the rates attached as Exhibit C.

                         THE PLAINTIFFS

                         By/s/ Thomas G. Moukawsher
                             Thomas G. Moukawsher ct08940
                             Ian O. Smith ct24135
                             Moukawsher & Walsh, LLC
                             21 Oak Street
                             Hartford, CT 06106
                             (860) 278-7000
                             tmoukawsher@mwlawgroup.com

                         ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2005, a copy of foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT SPECIAL MASTER was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| Theodore J. Tucci<br>Jean Elizabeth Tomasco,<br>Robinson & Cole<br>280 Trumbull Street<br>Hartford, CT 06103<br><br>Joseph V. Meaney, Jr.<br>Cranmore, Fitzgerald &<br>Meaney<br>49 Wethersfield Ave.<br>Hartford, CT. 06114 | Marissa A. Bellair<br>Steven Errante<br>Eric P. Smith<br>Nancy Fitzpatrick Myers<br>Lynch, Traub, Keefe,<br>and Errante, LLP<br>52 Trumbull Street<br>P.O. Box 1612<br>New Haven, CT. 06506<br><br>Sara Simeonidis<br>Deborah S. Freeman,<br>Bryan D. Short<br>Bringham McCutchen<br>1 State Street<br>Hartford, CT 06103 | Maurice T. Fitzmaurice<br>Reid & Riege, P.C.<br>One Financial Plaza<br>755 Main Street, 21st<br>Floor<br>Hartford, CT 06103-3185<br><br>James J. Reardon, Jr.<br>Thomas G. Rohback<br>Doug Dubitsky<br>LeBoeuf, Lamb, Greene &<br>MacRae<br>225 Asylum St.<br>Hartford, CT 06103 |

Dated this 28th day of November, 2005.

        /s/ Thomas G. Moukawsher
Thomas G. Moukawsher ct08940
Ian O. Smith ct24135
Moukawsher & Walsh, LLC
21 Oak Street
Hartford, CT 06106
(860) 278-7000
tmoukawsher@mwlawgroup.com