UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WASLEY PRODUCTS, INC., ET AL., | MASTER CONSOLIDATED CASE |
| | CIVIL NO. 3:03 CV 383 (MRK) |
| Plaintiffs, | |
| | THIS PERTAINS TO: |
| | CIVIL NO. 3:03 CV 1790 (MRK) |
| V. | (Prentiss et at. v. Wasley Products, Inc. et al.) |
| BARRY BULAKITES, ET AL., | |
| Defendants. | DECEMBER 12, 2005 |

### NATIONWIDE LIFE INSURANCE COMPANY OF AMERICA f/k/a PROVIDENT MUTUAL LIFE INSURANCE CO.'S MEMORANDUM IN OPPOSITION TO MOTION TO APPOINT SPECIAL MASTER

Nationwide Life Insurance Company of America f/k/a Provident Mutual Life Insurance Company ("Nationwide") hereby respectfully opposes the Motion to Appoint Special Master (the "Motion") filed by the Plaintiffs Gregory Prentiss, John Rizzi, Richard Seich, and Dorothy Brown (collectively, the "Plan Participants").

Nationwide's continued involvement in the Wasley litigation, and particularly the litigation surrounding the Wasley Products, Inc. 401(k) Profit Sharing Plan (the "Wasley 401(k) Plan"), frustrates any current possibility of the Plan Participants' settlement with the true parties. Instead of focusing on the individuals or entities alleged to be ERISA fiduciaries and those who have breached the duties owed the Plan Participants under ERISA, the Plan Participants continue on course apparently designed to seek damages from Nationwide (and other seemingly "deep pockets") without regard to cost or expense. The Plan Participants' Motion illustrates this effort. The proposal set forth in the Motion will be burdensome on Nationwide (and others), who may not be liable under the theories of recovery the Plan Participants advance.[1] The Plan Participants' Motion calls for the appointment of a second special master after the first special

---

[1] This Court has not yet ruled on the Plan Participants' Motion to Amend. Nationwide is not currently a named defendant in the *Prentiss v. Wasley* action ("Wasley II").

master just completed a two year forensic accounting of the plan contributions for both the Defined Benefit Plan *and the Wasley 401(k) Plan*.

Nationwide objects to the Plan Participants' proposal to appoint a second special master (and to apportion the costs to Nationwide) on multiple independent grounds. First, to the extent the Plan Participants seek a second accounting to determine the amount that the 401(k) Plan was under-funded by Wasley, Nationwide is not liable for Wasley's funding of the Plan, and in any event the Plan Participants do not seek to hold Nationwide (or even Wasley) liable for under-funding the Plan. Second, because Nationwide had no discretion to employ when investing Plan assets, there is no basis (a) to assert that Nationwide is liable for the fiduciaries' failure to invest Plan assets prudently (and there is no allegation Nationwide is a fiduciary), and (b) to hold Nationwide accountable for determining the amount the Plan would have earned if the fiduciaries had invested prudently. Third, to the extent the Plan Participants seek a second accounting to determine the amount that should be in each individual account, much of this work was previously done by the first special master to determine what funds were paid out by Wasley on behalf of its employees and the subsequent disposition of those funds. Nationwide objects to paying for the same effort twice. Nationwide opposes the appointment of a second special master on these grounds, as more fully set forth below.

**II.     Argument**

In the Motion, the Plan Participants seek an order from this Court apportioning the costs of the second special master so that: (1) Plaintiffs Wasley Products, Inc. ("Wasley") and Precision Molding Co. are jointly responsible for only 50% of the second special master's compensation and costs; and (2) Defendants Barry Bulakites, James Winslow and Joshua Adams Corporation (collectively), Nationwide, and Lincoln National Life Insurance Company are each

responsible for an equal share of the remaining 50% of the master's compensation and costs, which is approximately 17%. Motion at 8, Ex. A.

The reasons asserted in the Motion evidence that this proposed allocation to Nationwide is unjust. First, the Plan Participants support apportioning all of the costs of the special master to the Defendants[2] on the basis that "the first special master has already confirmed that [monies] have gone missing without any explanation other than misappropriation." Motion at 7. The inference is that wrongdoing has occurred and thus the Defendants should bear the costs instead of the Plan Participants. It is important to note that Mr. Mandell, the first special master, conducted a forensic accounting of all funds paid out by Wasley to the Defined Benefit Plan and the Wasley 401(k) Plan and the subsequent disposition of those funds. Mr. Mandell specifically found that "all checks turned over to [Nationwide] and cleared through their depositories have been recorded and credited to the Wasley accounts managed by [Nationwide]." Special Master's Final Report at 4. (The special master's final report (without exhibits) is attached hereto as Exhibit A.) Not only is there no basis to state that Nationwide misappropriated any of the Plan Participants' funds, such a statement is directly contrary to the report of Special Master Mandell..

### A. Nationwide Had No Responsibility For Funding the 401(k) Plan.

Nationwide is not liable for the breaches of duty on which the Plan Participants now claim that they need an accounting. The Plan Participants assert that this second accounting is to determine, *inter alia*, how much money is missing from the Wasley 401(k) Plan because too little was contributed by the plan sponsor Wasley, who grossly under-funded the Plan. Motion at 2. Specifically, the Plan Participants seek an accounting of the amounts that should be now present in the individual participants' accounts in the Wasley 401(k) Plan if all the required Plan

---

[2] Nationwide is not currently a defendant in Wasley II.

-4-

contributions by the plan sponsor, Wasley, had been made. Motion at 9. Nationwide is not responsible for the funding of Wasley's Retirement Plans and cannot be held liable for any breach of any duty associated with the under-funding of those Plans by Wasley. Nationwide, therefore, should not bear the associated costs of this second accounting.

First, it appears that the Plan Participants seek the second accounting for relief that may not extend to the participants in the 401(k) Plan, because the 401(k) Plan was funded entirely by employee contributions. Here, it appears that the relief the Plan Participants seek is intended to benefit the Defined Benefit Plan, because that is the Plan which received employer contributions. If the Plan Participants now seek this second accounting to determine the amount of money that should have been contributed by Wasley to a prior combined Retirement Plan that Wasley maintained before creating (or intending to create) a separate Defined Benefit Plan and the Wasley 401(k) Plan,[3] Nationwide is not liable for Wasley's funding of that (or any) Retirement Plan.[4] Indeed the Plan Participants do not seek to hold Nationwide liable for these alleged breaches in the Amended Complaint. In fact, not a single allegation exists in the Amended Complaint that the Wasley 401(k) Plan (or any Retirement Plan sponsored by Wasley) was under-funded, that such conduct constituted a breach of duty under ERISA, or that Nationwide is somehow liable for such conduct.

---

[3] Before Wasley created the separate Wasley 401(k) Plan for its salaried employees, it maintained a combined Retirement Plan for both its union and salaried employees.

[4] First, as the Plan Participants concede in their proposed Amended Complaint, Nationwide was not an ERISA fiduciary and did not serve as a third-party administrator for any Wasley Retirement Plan. Second, Nationwide cannot be held liable for funds that were not provided for investment or invested through its funding vehicles. This prior combined Retirement Plan was not invested through Nationwide. Third, there is no allegation in the Amended Complaint that Nationwide is (or could be) liable for Wasley's failure to properly fund its Retirement Plans.

### B. Nationwide Is Not An ERISA Fiduciary And Had No Discretion In Investing Plan Assets.

The Plan Participants also seek a second accounting to determine what each participant would now have in each individual account if the 401(k) Plan assets had been invested in the manner a reasonably prudent fiduciary would have invested them. Motion at 10. Nationwide is not liable for the fiduciaries' failure to invest the Plan assets prudently. Nationwide was not an ERISA fiduciary. The Plan Participants to not allege that Nationwide was or is. *See* Motion to Amend Complaint, Ex. A Amended Complaint, ¶¶18, 41. While the Plan Participants do allege that the fiduciaries breached their duties for, among other things, failing to ensure diversification of the investments of the Plan so as to minimize the risk of large losses (*see* Motion to Amend, Ex. A Amended Complaint ¶34), Nationwide had no discretion to employ when investing Plan assets. *See* Group Annuity Contract No. GR 3094-101 (Wasley Products 401(k) Plan at 1 (§ 1.02 Allocation of Deposits), 17 (§10.03 Trustee). (The Group Annuity Contract is attached hereto as Exhibit B.) No basis exists for alleging that Nationwide is somehow responsible for these breaches of fiduciary duties by the Trustees and/or the Individual Defendants. Nationwide should not bear the cost of a second accounting for what the 401(k) Plan would have earned if Plan fiduciaries had invested prudently.

### C. The Plan Participants Seek An Accounting On Issues Which This Court Previously Ordered A Detailed Accounting.

The Plan Participants also seek to re-do the work already performed by the first special master. In the Motion, they seek a mandate that a second special master determine whether "all discretionary contributions from the sponsor (Wasley) and participants were properly credited to the plan participants' accounts." Motion at 9. The Plan Participants' position is that to discuss settlement effectively, they have to know how much is now missing from the 401(k) Plan

because its assets were wrongfully diverted by its third party administrators (in addition to knowing the amount that the 401(k) Plan was under-funded by Wasley). Motion at 2.

Nationwide objects to the Motion on this ground as well. Much of this work was previously done by Mr. Mandell in his appointment as the first special master for this Court, Squatrito, J.[5] The parties already have spent two years in a forensic accounting of the Defined Benefit Plan and the Wasley 401(k) Plan to determine what funds were paid out by Wasley on behalf of its employees and the subsequent disposition of those funds. Mr. Mandell's work necessarily determined the amount of contributions by Wasley and their ultimate disposition (whether they were properly distributed to Nationwide or went to an account at another financial institution). Mr. Mandell also did a detailed accounting of other funds paid from other financial institutions (not Nationwide) directly to Plan Participants as benefits. While his report does not detail each participating employee by name and the specific amount of money that should have been (and was) credited to his/her account and/or paid to him/her directly as benefits, much of this work was done for Mr. Mandell to complete his report.[6]

---

[5] To the extent that the Plan Participants object to Mr. Mandell's findings, there were procedures available to them to oppose his report. They can also retain an independent forensic accountant to perform an independent evaluation of any alleged claim or misappropriation of Plan assets.

[6] Nationwide should not be forced to pay for the same effort twice. To the extent that any further accounting is necessary (which Nationwide denies), it would be most prudent to have Mr. Mandell continue his previous analysis of the Wasley 401(k) Plan. Mr. Mandell has done a painstaking review of the records produced in the previous two years. Many of these same records will be the focus of the analysis the Plan Participants now seek.[6] It would be a colossal waste of time and resources to have a new second special master undertake a second review of the same documents when Mr. Mandell has the benefit of his previous knowledge of the records.

## II.     **Conclusion**

It is inappropriate, under the circumstances, to force Nationwide to contribute substantial sums of money to conduct a second accounting of whether the Wasley 401(k) Plan: (1) was properly funded when that allegation is not pled; and in any event, Nationwide is not liable for Wasley's under-funding of the Plan; (2) was properly invested as a prudent fiduciary would have invested when Nationwide was not a fiduciary and had no discretion over investing Plan assets; and (3) contributions from Wasley and the participants were properly credited, because much of this effort was already expended by Mr. Mandell, and his report already established that Nationwide properly credited all funds received.  Contrary to the assertion in the Motion, this second accounting will not assist in settling the case.  The Plan Participants seek a burdensome second accounting on issues not raised in the pleadings, that were already accounted for in part, and for which Nationwide (and likely others) is not liable.

WHEREFORE, for the foregoing reasons, Nationwide respectfully requests this Court deny the Plan Participants' Motion to Appoint Special Master.  In the alternative, Nationwide requests this Court deny the Motion to the extent it seeks to apportion a percentage of the second special master's compensation and costs to Nationwide.  Finally, should this Court grant the Motion in part or in its entirety, and determine that a second special master is necessary for all issues raised by the Plan Participants, Nationwide requests that this Court re-appoint Alan Mandell as the second special master to continue the work he previously did under his earlier appointment by Squatrito, J.

**DEFENDANT,**
**NATIONWIDE LIFE INSURANCE**
**COMPANY OF AMERICA**

By:<u>/s/ Sara R. Simeonidis</u>
    Deborah S. Freeman [ct05257]
    Sara R. Simeonidis [ct25566]
    BINGHAM MCCUTCHEN LLP
    One State Street
    Hartford, CT 06103
    (860) 240-2700
    (860) 240-2800 (fax)
    Its Attorneys
    deborah.freeman@bingham.com
    sara.simeonidis@bingham.com

## CERTIFICATION

       This is to certify that a copy of the foregoing Memorandum in Opposition to Motion to Appoint Special Master has been served this 12th day of December, 2005, via first class mail, postage prepaid, to all counsel and pro se parties of record in these consolidated actions as follows:

Theodore J. Tucci, Esq.
Jean E. Tomasco, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

Thomas G. Moukawsher, Esq.
Ian O. Smith, Esq.
Moukawsher & Walsh
21 Oak Street, Suite 209
Hartford, CT 06106

Joseph V. Meaney, Jr.
Cranmore, Fitzgerald & Meaney
49 Wethersfield Avenue
Hartford, CT 06114-1102

Steven J. Errante, Esq.
Eric P. Smith, Esq.
Nancy Fitzpatrick Myers, Esq.
Marisa A. Bellair, Esq.
Lynch, Traub, Keefe & Errante, P.C.
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

James J. Reardon, Jr., Esq.
Thomas G. Rhoback, Esq.
LeBouef, Lamb, Greene & MacRae
225 Asylum Street
Hartford, CT 06103

                                                /s/ Sara R. Simeonidis
                                                    Sara R. Simeonidis