UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WASLEY PRODUCTS, INC., ET AL., | MASTER CONSOLIDATED CASE |
| | CIVIL NO. 3:03 CV 383 (MRK) |
| Plaintiffs, | |
| | THIS PERTAINS TO: |
| V. | CIVIL NO. 3:03 CV 1790 (MRK) |
| | (<u>Prentiss et at. v. Wasley Products, Inc. et al.</u>) |
| BARRY BULAKITES, ET AL., | |
| Defendants. | DECEMBER 15, 2005 |

<u>**NATIONWIDE'S SUR-REPLY IN OPPOSITION TO PLAN PARTICIPANTS' MOTION
FOR PERMISSION TO JOIN ADDITIONAL PARTIES, TO AMEND COMPLAINT,
AND FOR CERTIFICATION OF DERIVATIVE ACTION UNDER RULE 23.1**</u>

Faced with Nationwide's Opposition solidly grounded in a statute of limitations defense, the Plan Participants now argue in this Reply that their claims fall under ERISA's "fraud or concealment" limitations period. Reply at 1-2. That limitations period along with that claim is absent from the Amended Complaint. A claim of "fraud or concealment" necessarily sounds in fraud and the Amended Complaint is, therefore, subject to Rule 9(b)'s pleading requirements, which it does not meet. The Amended Complaint fails to plead the elements of the "fraud or concealment" limitations period *at all*, and pleads nothing with the particularity required by Rule 9(b). Accordingly, the Motion to Amend should be denied.

**PRELIMINARY STATEMENT**

Nearly two years after bringing suit against the Trustees and the Individual Defendants, and after conducting extensive paper discovery, the Plan Participants now seek to amend their Complaint to, *inter alia*, join Nationwide as a defendant and expand the claims asserted against all Defendants named in the Amended Complaint. The Plan Participants do not allege that Nationwide is an ERISA fiduciary. Compl. ¶¶ 18, 41. Nationwide's liability in the Amended Complaint is instead premised on the theory of vicarious liability -- the Plan Participants seek to

hold Nationwide liable for the actions of the Individual Defendants for the period of time they were allegedly employees or agents of Nationwide.  Compl. ¶¶ 38, 45.  According to the allegations in the Amended Complaint, the Plan Participants concede that the Individual Defendants were no longer employees or agents of Nationwide (if they ever were) no later than 1995 when the Plan Participants admit that the Individual Defendants became employees of Lincoln National Life Insurance Company.  Compl. ¶¶ 22-23.  The Plan Participants now allege that their Amended Complaint is timely as to Nationwide under the "fraud or concealment" limitations period of ERISA §413.  Reply at 1-2.

## ARGUMENT

### A.   ERISA's "Fraud or Concealment" Limitations Period Does Not Save The Plan Participants' Claims Against Nationwide.

ERISA § 413 precludes any party from commencing an action for breach of fiduciary duty after the earlier of: "(1) six years after the date of the last action which constitutes a part of the breach or violation,….except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of the discovery of such breach or violations."  29 U.S.C. §1113.  The Amended Complaint pleads no discovery of any alleged "fraud or concealment" by Nationwide.

Preliminarily, ERISA's "fraud or concealment" limitations period requires allegations that sound in fraud and, thereby are subject to the requirements of Rule 9(b).  *See Caputo v. Pfizer, Inc.*, 89 F. Supp. 2d 237, 240 (D. Conn. 2000) (granting summary judgment and holding that the six year "fraud or concealment" limitations period was inapplicable to the plaintiffs' ERISA claims because they did not plead fraud with the specificity required by Rule 9(b)), *vacated and remanded by*, 267 F.3d 181 (2d Cir. 2001) (holding district court correctly held that

the plaintiffs failed to plead fraud with the requisite particularity, but abused its discretion in denying leave to amend because, under the circumstances, amendment would not be futile); *Kirk v. Liberty Mutual Insurance Co.*, 28 F. Supp. 2d 696, 700-02 (D. Conn. 1998) (granting summary judgment after finding the plaintiff's ERISA claim was time barred because the complaint fell short of meeting the pleading requirements of Rule 9(b) and thus could not take advantage of the six year "fraud or concealment" discovery period); *Losquadro v. FGH Realty Credit Corp.*, 959 F. Supp. 152 (E.D.N.Y. 1997) (granting motion to dismiss ERISA claims holding that plaintiffs' complaint failed to allege facts sufficient to warrant application of the "fraud or concealment" exception to the statute of limitations and noting that Rule 9(b) applies); *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245 (1st Cir. 1996) (affirming district court's grant of summary judgment based on failure of the "fraud or concealment" statute of limitations and holding that it is the plaintiffs' burden under Rule 9(b) to plead with particularity all of the facts that give rise to the fraudulent concealment claim).

Pursuant to Rule 9(b), "in all averments of fraud or mistake, the circumstances of fraud or mistake shall be stated *with particularity*." Fed.R.Civ.P. 9(b) (emphasis added). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Gruby v. Brady*, 838 F. Supp. 820, 831 (S.D.N.Y. 1993). The Amended Complaint does not begin to meet even a lax Rule 8 notice pleading standard, let alone Rule 9(b)'s stringent requirements. With respect to the "fraud or concealment" limitations period, the Plan Participants fail to make even a single

allegation of fraud or concealment against Nationwide to support their claim in the Reply that application of this provision is appropriate.[1]

### 1. The Amended Complaint Fails to Satisfy Rule 9(b)'s Requirement that Fraud Be Pled With Particularity.

Assuming, *arguendo*, that the Plan Participants might properly assert the "fraud or concealment" limitations period in the Reply (which they did not and cannot), Rule 9(b) applies to their ERISA claims against Nationwide, which by definition sound in fraud.  The Second Circuit recognizes that ERISA's "fraud or concealment" limitations period applies to two categories of acts:  (1) self-concealing acts -- acts committed in the course of the breach that has the effect of concealing the breach from the plaintiff; and (2) active concealment -- acts distinct from and subsequent to the breach which are intended to conceal it.  *Caputo*, 267 F.3d at 189 (citations omitted).  To warrant the application of the six year "fraud or concealment" limitations period, the Plan Participants must allege facts sufficient to establish common law fraud.[2]  That [the defendant] breached a fiduciary duty owed the [plaintiff] does not itself establish fraud.... Rather the plaintiff must satisfy the pleading requirements of Rule 9(b)."  *Kirk*, 28 F. Supp. 2d at 700 (internal citations omitted); s*ee also Losquadro*, 959 F.Supp. at 158 ("application of the

---

[1] It is important to note that the Plan Participants cannot properly seek to now amend their Amended Complaint in a memorandum of law.  *See Natale v. Town of Darien*, 1998 WL 91073, at *4, n. 2 (D. Conn. Feb. 26, 1998) (noting that when ruling on the defendant's motion to dismiss, the plaintiff cannot amend his complaint in response thereto in a memorandum of law); *see also Daury v. Smith*, 842 F.2d 9, 15-16 (1st Cir. 1988) (recognizing that the "duty to liberally construe the pleadings [does not] give[] a plaintiff the license to amend the complaint by a memorandum in the district court).  Thus, to the extent that the "fraud or concealment" limitations period is not pled in the Plan Participants' Amended Complaint, it is improper now to amend that pleading by way of the Reply to include the "fraud or concealment" limitations period in defense of Nationwide's Opposition. *See id.*  Copies of all unreported cases are attached hereto as Exhibit 1.

[2] *See Caputo*, 89 F.Supp. 2d at 239 (a breach of fiduciary duty involves fraud or concealment if the following elements are established:  (1) material false representation or omission of an existing fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; (4) reasonable reliance; and (5) damage"); *Kirk,* 28 F.Supp. 2d at 700 (plaintiff must establish the elements of common law fraud to claim the benefit of the "fraud or concealment" limitations period).

'fraud or concealment' provision of [ERISA §413] places the burden of pleading adequate facts under the heightened standards of Fed. R. Civ. P. 9(b) on the plaintiffs") (citations omitted).

In the Second Circuit, a plaintiff must plead fraud to "specify the time, place, speaker and content of the alleged misrepresentations." *Caputo*, 267 F.3d at 191. In addition, the complaint must explain how the misrepresentations were fraudulent and raise expressly those events which "give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Id.*, 267 F.3d at 191 (applying Rule 9(b) to claim of "fraud or concealment" under ERISA's statute of limitations); *Kirk*, 28 F. Supp. 2d at 700 (the complaint must specifically allege when and where the misrepresentations took place, the content of the misrepresentations, the identity of the speaker and how the misrepresentations were fraudulent) (citations omitted); *Losquadro*, 959 F. Supp. at 157 ("it is the plaintiff's burden to plead with particularity under [Rule] 9(b) the events giving rise to a claim of fraud or concealment") (citations omitted). Here, where specificity is required, the Complaint is *silent* on the issue of Nationwide's alleged "fraud or concealment."

The Plan Participants' allegations are devoid of the specific facts particularly required. The Plan Participants do not allege any of the elements of fraud against Nationwide to invoke the "fraud or concealment" provision of ERISA §413.[3/] First, there is no allegation that Nationwide

---

[3/] 22. On or about the date [August 1994] the [Wasley 401(K)] Plan was established, Wasley Products and Wasley retained Bulakites, Winslow and later retained JAC as agents employed to assist in carrying out Plan administrative and trust duties. Upon information and belief, at the time Wasley Products hired them, Bulakites and Winslow worked for the defendant Provident Mutual and were acting within the scope of their employment in contracting with Wasley Products.

38. Provident Mutual or Lincoln are liable to the [Wasley] 401(K) Plan and the Plaintiffs for the misconduct of Bulakites, Winslow and JAC because Bulakites, Winslow and JAC were employees or agents of Provident Mutual or Lincoln.[3/]

43. Upon information and belief, one or more of the Defendants or their agents negligently

-5-

either engaged in self-concealing acts of fraud or engaged in active concealment subsequent to its alleged breach of duty. *See Caputo*, 267 F.3d at 189 (noting that to be entitled to the "fraud or concealment" limitations period, the plaintiff must allege that the defendant committed either a self-concealing act or active concealment). The Amended Complaint fails to allege that Nationwide made any misrepresentation to accomplish any "fraud or concealment."[4/] Second, the Amended Complaint lacks any allegations establishing: (1) when and where Nationwide made any alleged misrepresentations; (2) the contents of the alleged misrepresentations; (3) the identify of the person(s) making the alleged misrepresentations; and (4) an explanation of how Nationwide's alleged representation's were fraudulent.

This case is much like *Caputo*, where the Second Circuit found that the District Court correctly held that the *Caputo* plaintiffs failed to plead fraud with the requisite particularity. 267 F.3d at 191. Although in *Caputo* the plaintiffs actually alleged that the defendant Pfizer made affirmative material misrepresentations (which the Plan Participants do not even allege against Nationwide in the Amended Complaint), the *Caputo* plaintiffs, like the Plan Participants, failed to specify the time, place, speaker, or content of the alleged misrepresentations. *Caputo*, 89 F.Supp. 2d at 240. The *Caputo* plaintiffs also failed to allege why any alleged statements were

---

understated the Plaintiffs' accrued benefits when converting them to lump sums and depositing them into the [Wasley] 401(K) Plan. Accordingly, because of the Defendants' breach of their fiduciary duties, the Plaintiffs lost vested accrued benefits.

45. Provident Mutual is liable to the Retirement Plan or to the Plaintiffs for the misconduct of Bulakites and Winslow because, upon information and belief, Bulakites and Winslow were employees or agents of Provident Mutual when they helped Wasley Products freeze the Retirement Plan.

[4/] Because the Amended Complaint does not allege any of the elements of common law fraud against Nationwide, see *Caputo,* 89 F.Supp. 2d at 239, *vacated and remanded on other grounds*, 267 F.3d 181 (2d. Cir. 2001); *Kirk,* 28 F.Supp. 2d at 700; *Losquadro*, 959 F.Supp. at 157 (requiring pleading elements of common law fraud even when self-concealing fraud doctrine is at play), the Amended Complaint does not even meet Rule 8's lax pleading standard with respect to the Plan Participants' claim, in the Reply, that they have pled their Amended Complaint under ERISA's "fraud or concealment" limitations period.

fraudulent. *Id.* Because the Rule 9(b) pleading requirements were not satisfied, the *Caputo* plaintiffs did not plead any fraud sufficient to apply the six-year "fraud or concealment" limitations period. *Caputo*, 267 F.3d at 191 (remanding, however, to grant plaintiffs leave to amend, finding that under the particular circumstances, amendment would not be futile).

Because the Amended Complaint fails to (1) allege "fraud or concealment" and (2) allege a single element necessary for pleading fraud with the particularity required under Rule 9(b), the Plan Participants' Motion to Amend should be denied, at least as to Nationwide. *See Caputo*, 267 F.3d at 191, *see also Kirk*, 28 F.Supp. 2d 696 (granting summary judgment because the plaintiff did not plead a claim of "fraud or concealment" with particularity required under Rule 9(b)); *Losquadro*, 959 F.Supp. 152 (granting motion to dismiss ERISA claims because "fraud and concealment" limitations period not adequately pled).

    **B.**    **The Plan Participants Should Not Be Granted Leave To File A Second Amended Complaint Because It Would Be Futile.**

The Plan Participants' Motion to Amend should be denied, at least as to Nationwide, without leave to amend. While leave to amend is freely given when justice requires, it is proper to deny further amendments if they would be futile. *See Zahara v. Town of Southhold*, 48 F.3d 674, 685 (2d Cir. 1995); *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993). Any subsequent pleadings as to Nationwide would be futile. The Plan Participants filed the Amended Complaint after extensive paper discovery, which necessarily disclosed any alleged "responsibility for these breaches" on the part of Nationwide. Reply at 3. Despite having the universe of available documents, the Plan Participants did not raise the "fraud or concealment" limitations period until the Reply. In the Reply, the Plan Participants make no offer of proof to this Court that allowing further amendment in support of the "fraud or concealment" limitations

period would even be fruitful.  See Reply at 5, n. 5.

As the Reply itself makes clear, the Plan Participants are relying on what they claim are the "fraudulently concealed" actions of the Individual Defendants in their capacities as fiduciaries of the Wasley 401(K) Plan, some of whom may also have been employees or agents of Nationwide at the time of those alleged breaches, to establish Nationwide's liability under the "fraud and concealment" limitations period.  Importantly, the Plan Participants concede in the Amended Complaint that Nationwide was not a fiduciary of the Wasley 401(K) Plan.  Compl. ¶¶18, 41.  As an initial matter, the Plan Participants do not cite, and Nationwide has not found, any case law establishing the proposition that vicarious liability applies under the "fraud or concealment" limitations period, such that a non-fiduciary may be held liable for the actions of a fiduciary who may also have had a separate employee or agent relationship with the non-fiduciary.  And, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Gruby*, 838 F. Supp. at 831.[5]

Notwithstanding the Plan Participants' legal hurdles, their argument that the "fraud or concealment" limitations period applies fails for independent factual reasons.  Assuming, *arguendo*, that Nationwide might be held liable under ERISA's "fraud or concealment" statute of limitations for the actions of the Individual Defendants (which it cannot be), the Plan Participants acknowledge through allegations in the Amended Complaint that Nationwide's liability, if any, for the Individual Defendants' actions is limited to actions no later than 1995.  After 1995, the Individual Defendants became employed by Lincoln National Life Insurance Company and,

---

[5] Rule 9(b)'s pleading requirements exist "to give the defendant fair notice of the factual grounds on which the plaintiff bases its claims of fraud, and to protect defendants from improvident charges of wrongdoing." *Caputo*, 89 F. Supp. 2d at 240 (*quoting Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990)).

according to the Amended Complaint, were no longer employees or agents of Nationwide. Compl. ¶¶22-23. Nationwide's liability, if any, for the Individual Defendants' self-concealing acts or active concealment could not extend past 1995 when they were no longer Nationwide employees or agents. The statute of limitations as to Nationwide still ran in 2001, even under the asserted "fraud or concealment" doctrine. Absent any pleading that *Nationwide* engaged in self-concealing acts or active concealment post-1995, the Plan Participants' Amended Complaint is still time-barred. No such allegations are made in the Amended Complaint nor do the Plan Participants, in the Reply, suggest that they would, or could, make such allegations against Nationwide.

First, the Plan Participants do not allege any independent acts or omissions by Nationwide that constitute breaches of fiduciary duty under ERISA. They do not allege Nationwide was an ERISA fiduciary. Second, the Amended Complaint does not allege "fraud or concealment" against any defendant, and specifically not against Nationwide. Third, in the Reply, the Plan Participants do not make any offer of proof regarding how the "fraud or concealment" limitations period applies against *Nationwide*. In light of the circumstances, it would be futile to allow the Plan Participants to amend the Amended Complaint again.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Opposition, Nationwide respectfully requests this Court deny the Motion to Amend as to Nationwide, consistent with the Opposition and this Sur-Reply.

**DEFENDANT,**
**NATIONWIDE LIFE INSURANCE**
**COMPANY OF AMERICA**

By: /s/ Sara R. Simeonidis
    Deborah S. Freeman [ct05257]
    Sara R. Simeonidis [ct25566]
    BINGHAM MCCUTCHEN LLP
    One State Street
    Hartford, CT 06103
    (860) 240-2700
    (860) 240-2800 (fax)
    deborah.freeman@bingham.com
    sara.simeonidis@bingham.com
    Its Attorneys

## **CERTIFICATION**

      This is to certify that a copy of the foregoing Sur-Reply In Opposition To Plan Participants' Motion for Permission to Join Additional Parties, To Amend Complaint, And For Certification of Derivative Action Under Rule 23.1 has been filed electronically and served this 15th day of December, 2005, via first class mail, postage prepaid, or electronic mail to all counsel and pro se parties of record in these consolidated actions as follows:

Theodore J. Tucci, Esq.
Jean E. Tomasco, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

Thomas G. Moukawsher, Esq.
Ian O. Smith, Esq.
Moukawsher & Walsh
21 Oak Street, Suite 209
Hartford, CT 06106

Joseph V. Meaney, Jr.
Cranmore, Fitzgerald & Meaney
49 Wethersfield Avenue
Hartford, CT 06114-1102

Steven J. Errante, Esq.
Eric P. Smith, Esq.
Nancy Fitzpatrick Myers, Esq.
Marisa A. Bellair, Esq.
Lynch, Traub, Keefe & Errante, P.C.
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

James J. Reardon, Jr., Esq.
Thomas G. Rhoback, Esq.
Doug Dubitsky, Esq.
LeBouef, Lamb, Greene & MacRae
225 Asylum Street
Hartford, CT 06103

                                          /s/ Sara R. Simeonidis
                                              Sara R. Simeonidis

# EXHIBIT 1



Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 91073 (D.Conn.)  
**(Cite as: 1998 WL 91073 (D.Conn.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.
Barry L. NATALE
v.
Town of Darien, Connecticut, Darien Police Commission, Darien Police Department, Hugh F. McManus, Frederick Komm and Richard LaBella
**No. CIV. 3:97CV583 (AHN).**

Feb. 26, 1998.

RULING ON DEFENDANTS' MOTION TO DISMISS

NEVAS, District J.

**\*1** The plaintiff, Barry L. Natale ("Natale"), brings this action pursuant to 42 U.S.C. § § 1983 and 1985 against the defendants, the Town of Darien ("Darien"), Darien Police Commission (the "Commission"), Darien Police Department (the "DPD"), Hugh F. McManus ("McManus"), Frederick Komm ("Komm"), and Richard LaBella ("LaBella") for due process and equal protection violations. Natale also raises a claim under the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a-60(a)(1) ("CFEPA"), and for negligent infliction of emotional distress.

Now pending before the court is the defendants' Motion to Dismiss. For the reasons set forth below, the motion [doc. # 9] is GRANTED in part and DENIED in part.

STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir.1991), cert. denied, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also Still v. DeBuono, 101 F.3d 888 (2d Cir.1996). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F.Supp. 784, 786 (D.Conn.1990) (citing Scheuer, 416 U.S. at 236). In deciding such a motion, consideration is limited to the facts stated in the complaint or in documents attached thereto as exhibits or incorporated therein by reference. See Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991).

FACTS

Natale, a 39 year old male, submitted a job application to the DPD on January 27, 1995. (*See* Compl. ¶ 14.) In connection with the application process, he achieved the highest score on the DPD's written examination and successfully completed the physical agility test designed for applicants his age. (*See id.* ¶ ¶ 15-16.)

On April 25, 1995, Komm, a Captain in the DPD, and LaBella, a sergeant, interviewed Natale. (*See id.* ¶ 17) They asked him several questions related to his age. (*Id.*) Similar questions were not asked of other applicants. (*Id.*) After the interview, Komm informed Natale that successful candidates would be notified by April 28, 1995. (*See id.* ¶ 19.)

On May 1, 1995, Natale received notice that he was no longer under consideration for a position in the DPD. (*See id.* ¶ 20.) On May 9, 1995, he submitted a written request for information "relied upon in eliminating him from the application process" to McManus, the Chief of the DPD. (*See id.* ¶ 21.) McManus did not reply to Natale's request. (*Id.*)

**\*2** On May 31, 1995, Natale sought the same information from Darien's town counsel. (*See id.* ¶ 22.) On June 5, 1995, he received a response from Komm which stated, in pertinent part;

With regard to your specific request, I can advise you that we do not possess any notes, evaluations, or comments written by members of this department relative to the selection process.... [In addition, many of the candidates selected over you] have four-year degrees in a formalized criminal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 91073 (D.Conn.)
**(Cite as: 1998 WL 91073 (D.Conn.))**

Page 2

justice program which is obviously a distinct advantage ... as the trend in law enforcement is toward increased professionalism via formalized criminal justice training.

(*See id.* ¶ 23 )

The individuals selected for positions in the DPD were 21, 30 and 31 years old. (*See id.* ¶ 24.) Not one possessed a four-year degree in criminal justice. (*Id.*) Sixteen individuals, each younger than Natale, proceeded further in the application process. (*Id.*) Natale commenced this action on March 31, 1997.

DISCUSSION

In support of their motion to dismiss, the defendants argue that Natale's claims under 42 U.S.C. § § 1983 and 1985 are preempted by the Age Discrimination in Employment Act, 29 U.S.C. § § 621--634 ("ADEA"). Because his claims are not predicated on rights created by the ADEA, Natale contends that preemption is inappropriate. In the alternative, the defendants assert that Natale has failed to state a claim for relief under both § § 1983 and 1985. The defendants also assert that the CFEPA claim should be dismissed as to all defendants, except the DPD, because Natale failed to name them as respondents in a proceeding before the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Finally, the defendants argue that they are entitled to qualified immunity.

I. *Preemption under the ADEA*

Both parties acknowledge that the Second Circuit has not addressed whether the ADEA is the exclusive federal remedy for claims of age discrimination. [FN1] District courts in the circuit are split on this issue. Compare *Reed v. Town of Branford,* 949 F.Supp. 87 (D.Conn.1996) (finding that ADEA did not preempt claims under section 1983 based on age discrimination), *Jungels v. State Univ. College of N.Y.,* 922 F.Supp. 779, 785 (W.D.N.Y.1996) (ruling that the ADEA does not preempt section 1983 claims which are based on "substantive rights distinct from those established under the ADEA"), *aff'd,* 112 F.3d 504 (2d Cir.1997), *and LaBlanc v.. City of Stamford,* Civ. No. B-88-63(TFGD), 1988 WL 148431, at *1 (D.Conn. May 10, 1988) (holding that a "cause of action to redress violations of rights independent of those created by the ADEA may be brought pursuant to § § 1983 and 1985"), *with Gregor v. Derwinski,* 911 F.Supp. 643, 651 (W.D.N.Y.1996) (stating that the ADEA provides "the exclusive remedy for age discrimination"), *and Reale v. Jenkins,* No. 92 Civ. 7234(LJF), 1993 WL 37091 (S.D.N.Y. Feb.9, 1993) (finding that ADEA is the sole federal remedy for age discrimination).

> FN1. The defendants assert that the Second Circuit has found section 1985 claims preempted by the ADEA. In support of their position, the defendants rely on *Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522 (2d Cir.1996). There, the Court recognized "that a violation of the ADEA ... cannot be the basis for a claim under § 1985(3)." *Id.* at 527. However, the Court left open the question of whether or not the ADEA preempts § 1985 actions predicated on independent constitutional rights. Because Natale looks to rights distinct from those created by the ADEA in support of his § § 1983 and 1985 claims, the defendants reliance on *Sherlock* is misplaced.

*3 Implicit in the opinions finding that the ADEA does not preempt § 1983 actions is the recognition that Congress limited the ADEA's application "to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Individuals who cannot satisfy this threshold age requirement are not afforded protection under the statute. See *Ludovicy v. Dunkirk Radiator Corp.,* 922 F.2d 109, 110 (2d Cir.1990) (stating that 40 is "the age at which ADEA protection begins"); *Philippeaux v. North Cent. Bronx Hosp.,* 871 F.Supp. 640, 647 (S.D.N.Y.1994) (finding that a plaintiff, who was 39 years old at the time of the alleged discrimination, could not "invoke the protections of the ADEA"), *aff'd,* 104 F.3d 353 (2d Cir.1996), *cert. denied,* 520 U.S. 1105, 117 S.Ct. 1110, 137 L.Ed.2d 312 (1997). Thus, it would be inimical to the interests of individuals under 40 who were not covered by the ADEA to hold that the ADEA preempts all claims of age discrimination.

Here, Natale was 39 years old at the time of the defendants alleged discriminatory acts. Thus, he could not have brought an age discrimination claim under the ADEA. Because the ADEA cannot preempt a cause of action brought by an individual outside of the class afforded protection under the statute, the court finds the defendants' argument unpersuasive.

II. *Failure to State a Claim--Section 1983 Claims*

The defendants alternatively argue that Natale has not stated a claim for relief under § 1983 for either a due process or equal protection violation. Specifically, the defendants assert that Natale does not have a property interest that is protected by the

Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 91073 (D.Conn.)  
**(Cite as: 1998 WL 91073 (D.Conn.))**

Page 3

due process clause. The defendants further contend that Natale has not stated an equal protection claim because he has not alleged that similarly situated persons have been treated differently than him. Natale maintains that his complaint properly alleges both of these claims. The court disagrees with Natale in part and finds that his due process claim must be dismissed.

A. *Due Process Claim*

The Second Circuit recognizes that "[t]o state a cause of action under the due process clause, a plaintiff must show that [he] has a property interest, created by state law, in the employment or the benefit that was removed." Bernheim v. Litt, 79 F.3d 318, 322 (2d Cir.1996) (citation omitted). *See also* Story v. Green, 978 F.2d 60, 62 (2d Cir.1992) (recognizing that "[t]o state a claim under ... the Due Process Clause ... plaintiffs were required to allege facts showing that state action deprived them of a protected property interest"); Interboro Inst., Inc. v. Maurer, 956 F.Supp. 188, 196 (N.D.N.Y.1997) (finding that a plaintiff "must identify a property interest" to state a due process claim). "A plaintiff must also allege that [the] deprivation was arbitrary or not reasonably related to a legitimate government interest." Maurer, 956 F.Supp. at 196.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Property interests do not originate from the Constitution. *See* Grandal v. City of New York, 966 F.Supp. 197, 202 n. 8 (S.D.N.Y.1997) (citation omitted). "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.*

**\*4** In support of his due process claim Natale does not identify a specific property interest. Rather, he makes vague allegations that defendants' acts "constitute a policy, pattern and practice of discrimination against [him] and others because of their age and resulted in the deprivation of [his] rights as secured by the United States Constitution, including but not limited to equal protection and due process under the law." (Compl.¶ ¶ 34-35.) Natale's failure to identify the specific property interest, which is an essential element of a § 1983 due process claim, requires that the claim be dismissed. [FN2]

> FN2. In his memorandum of law Natale asserts that Conn. Gen.Stat. § 7-420 gives rise to a protected property right. Natale's complaint, however, makes no reference to this state law. Natale can not amend his complaint in a memorandum of law. *See* Daury v. Smith, 842 F.2d 9, 15- 16 (1st Cir.1988) (recognizing that the "duty to liberally construe the pleadings [ [does not] give[ ] a plaintiff the license to amend the complaint by memorandum in the district court"). Accordingly, the court will not look beyond Natale's complaint to determine whether he has stated a due process claim.

B. *Equal Protection Claim*

The Second Circuit recognizes that "a plaintiff must allege that similarly situated persons have been treated differently" in order to state a claim under the equal protection clause. Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir.1994) (citations omitted). Here, Natale's equal protection allegations satisfy this requirement.

Natale states in his complaint that he "was an applicant for a position as [a] police officer with the [DPD], and despite being eminently qualified for said position and having obtained the highest score on the written civil service examination, was denied appointment to that position in favor of younger, less-qualified individuals." (Compl. at 1-2.) Natale's complaint further alleges that "individuals eventually selected over [him] ... were ages 21, 30 and 31, and ... 16 individuals, all of them younger than [him], were allowed to continue further in the application process." (*Id.* ¶ 24.) These allegations sufficiently convey that persons "similarly situated" were treated differently on account of age. Accordingly, the defendants' motion to dismiss Natale's equal protection claim is denied.

III. *Qualified Immunity--Section 1983 Claims* [FN3]

> FN3. Because Natale's due process claim is dismissed, the court only considers whether the defendants are entitled to qualified immunity on the equal protection claim.

The defendants argue that they are entitled to qualified immunity because of the "unresolved status in this Circuit of the applicability of § 1983" to the age discrimination claim asserted by Natale. (*See*

Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 91073 (D.Conn.)  
**(Cite as: 1998 WL 91073 (D.Conn.))**

Page 4

Mem. of Law in Supp. of Defs.' Mot. to Dismiss [hereinafter "Defs.' Mem."] at 15.) In opposition, Natale correctly asserts that the pertinent inquiry is whether the defendants' actions violate clearly established federal law, not a particular statute. Qualified immunity protects government officials from civil liability arising from the performance of their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *accord Cartier v. Lussier,* 955 F.2d 841, 843 (2d Cir.1992); *Giacalone v. Abrams,* 850 F.2d 79, 85 (2d Cir.1988). However, even if the plaintiff's federal rights are clearly established at the time of the defendant's acts, "the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). Thus, "courts must determine not only whether a right has been established but also whether a reasonable official would have known that the acts in question violated the alleged right." *Bapat v. Connecticut Dep't Health Serv.,* 815 F.Supp. 525, 535 (D.Conn.1992).

 **\*5** Here, Natale has alleged a clearly established federal right. *See Spain v. Ball,* 928 F.2d 61, 63 (2d Cir.1991) (recognizing that age discrimination may constitute a violation of the Equal Protection clause). But this does not end the inquiry. The court must also determine whether "a reasonable official would have known that the acts in question violated the alleged right." *Bapat,* 815 F.Supp. at 535. *See also Spain,* 928 F.2d at 63 (question of whether discrimination based on age violates equal protection is analyzed under the rational basis standard) (citing *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312-14, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976)). This question is better decided after discovery and not on the limited record currently before the court. *See, e.g., Moray v. City of Yonkers,* 924 F.Supp. 8, 12 (S.D.N.Y.1996) (denying motion to dismiss on grounds of qualified immunity without prejudice to renewal where issue of objective reasonableness better decided after discovery).

 IV. Conspiracy--*Section 1985(3)*

 In order to state a claim under § 1985(3) a plaintiff must allege that two or more individuals conspired to deprive either a person or class of "the equal protection of the laws or of equal privileges and immunities under the law." *Girard v. 94th St. and 5th Ave.,* 530 F.2d 66, 70 (2d Cir.), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976). The defendants argue that Natale's § 1985 claim is barred by the intracorporate conspiracy doctrine which provides that "a corporation ... cannot conspire with its employees or agents as all are considered a single legal entity." *Rini v. Zwirn,* 886 F.Supp. 270, 291 (E.D.N.Y.1995). Natale contends that this doctrine does not apply because Darien, the Commission and the DPD are separate and distinct entities capable of engaging in conspiratorial conduct. The court disagrees.

 The Second Circuit has applied the intracorporate conspiracy doctrine to § 1985 claims. *See Girard,* 530 F.2d at 72. The doctrine is particularly applicable where "officers and employees are alleged to be acting within the scope of their employment." *Rini,* 886 F.Supp. at 291. *See also Northern Tankers (Cyprus) Ltd. v. Backstrom,* 967 F.Supp. 1391, 1417-18 n. 40 (D.Conn.1997) (recognizing that "[w]hen individuals are motivated by an independent personal stake in achieving the corporation's objective, the doctrine ... does not apply") (citations omitted). This doctrine has been extended to conspiracies between municipalities and their employees. *See Rini,* 886 F.Supp. at 292 (citations omitted).

 Although Natale argues that his conspiracy claim concerns three separate entities, his allegations relate solely to the DPD. For instance, Natale alleges that members of the DPD conducted his interview. (*See* Compl. ¶ 17.) Further, the individuals allegedly involved in the decision not to hire Natale were employees of the DPD. (*See id.* ¶ ¶ 20-23.) Moreover, Natale alleges that the DPD "actively sought to fill its vacant positions with individuals in their 20s and early 30s." (Compl.¶ 27.) Finally, the allegations against McManus, Komm and LaBella concern actions taken in the scope of their employment with the DPD. These allegations only involve one entity, the DPD, acting through its employees and there can thus be no conspiracy. *See Hermann v. Moore,* 576 F.2d 453, 459 (2d Cir.) (holding that the intracorporate conspiracy doctrine barred a § 1985(3) claim where the defendants were either trustees or faculty members of a law school), *cert denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978); *Lieberman v. Gant,* 474 F.Supp. 848, 875 (D.Conn.1979) (finding no liability under § 1985(3) where defendants "were all acting in their capacities as officers and employees of" a university), *aff'd,* 630 F.2d 60 (2d Cir.1980). *See also Turner v. Randolph County,* 912 F.Supp. 182, 186-187 (M.D.N.C.1995) (dismissing § 1985(3) claim under

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 91073 (D.Conn.)
**(Cite as: 1998 WL 91073 (D.Conn.))**

Page 5

the intracorporate conspiracy doctrine where allegations involved only county employees). Accordingly, Natale's § 1985 claim is dismissed. [FN4]

> FN4. It is also unclear whether the DPD or the Commission may be sued under § 1985. Courts have recognized that individual departments of a municipality are not subject to liability under § 1983. *See Eddy v. City of Miami,* 715 F.Supp. 1553 (S.D.Fla.1989); *Williams v. Dayton Police Dep't,* 680 F.Supp. 1075 (S.D.Ohio 1987); *Boren v. City of Colorado Springs,* 624 F.Supp. 474 (D.Colo.1985); *Shelby v. City of Atlanta,* 578 F.Supp. 1368 (N.D.Ga.1984). Without an underlying § 1983 claim against either the DPD or the Commission, there could be liability under § 1985 against these agencies. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (recognizing that section 1985(3) "provides no substantive rights itself"). Because the parties failed to raise this issue, the court declines to address it.

V. *CFEPA*

**\*6** Finally, the defendants argue that Natale's CFEPA claim is barred for his failure to exhaust his administrative remedies as to all defendants, except the DPD. Natale responds that dismissal is inappropriate because the underlying purpose of exhaustion has been satisfied. The court disagrees. [FN5]

> FN5. The defendants also argue that this claim must be dismissed as to McManus, Komm and LaBella because there is no individual liability under CFEPA. Because this claim is dismissed against these defendants on exhaustion grounds, the court need not address the issue.

CFEPA provides, in pertinent part;
> [a]ny person claiming to be aggrieved by an alleged discriminatory practice ... may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the [CHRO].

Conn. Gen.Stat. Ann. § 46a-82 (West 1995). A plaintiff may commence a civil action against the named respondent only after receiving a release of jurisdiction from the CHRO. *See* Conn. Gen.Stat. Ann. § 46a-100 (West 1995). Identifying all respondents before the CHRO is critical because CFEPA "vests first-order administrative oversight and enforcement of [its] rights in the CHRO." *Sullivan v. Board of Police Comm'rs,* 196 Conn. 208, 216, 491 A.2d 1096 (1985). Where a plaintiff fails to follow the administrative path provided under CFEPA, he "lacks the statutory authority to pursue that claim in [court]." *Id.* (citations omitted).

Here, Natale named the DPD as the sole respondent in his CHRO complaint. (*See* Compl. Ex. A.) The CHRO released its jurisdiction over this claim on January 10, 1997. (*See id.*) Although they were not identified as respondents, Natale now attempts to bring a CFEPA claim against Darien, the Commission, McManus, Komm and LaBella.

Natale, relying on *Malasky v. Metal Products Corp.,* 44 Conn.App. 446, 689 A.2d 1145, *cert. denied,* 241 Conn. 906, 695 A.2d 539 (1997), argues that exhaustion may still be satisfied where all parties to the CFEPA action are not named as respondents before the CHRO. In *Malasky,* the court excused a *pro se* plaintiff's failure to name all respondents where the body of her CHRO complaint identified these individuals. *See id.* at 455-56, 689 A.2d 1145. The Court examined five factors in making this exception: 1) whether the unnamed party's role was known at the time the complaint was filed; 2) whether the interests of the named and unnamed party are so similar that compliance could be obtained without the unnamed party; 3) whether the failure to include the unnamed party resulted in actual prejudice; 4) whether the unnamed party has informed the plaintiff that it should bring suit against him through the named party; and 5) whether the complaint was filed *pro se. See id.* at 453-54, 689 A.2d 1145.

While compliance could most likely have been obtained at the administrative level without each of the unnamed parties, the application of the remaining factors favors the defendants. First, Natale was aware of each party's role at the time the CHRO complaint was filed. Second, Natale's actions deprived the defendants of the opportunity to resolve this matter at the administrative level. Lastly, Natale's CHRO complaint was filed with the assistance of counsel. Unlike a *pro se* plaintiff, an attorney is expected to comply with the procedural

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1998 WL 91073 (D.Conn.)
**(Cite as: 1998 WL 91073 (D.Conn.))**

requirements of CFEPA. [FN6] *See DeLoreto v. Ment,* 944 F.Supp. 1023, 1035 (D.Conn.1996) (stating that "a party must follow the administrative procedures established by the legislature" to bring a CFEPA claim). Thus, Natale's failure to follow CFEPA's administrative procedures mandates that this claim be dismissed as to Darien, the Commission, McManus, Komm and LaBella.

> FN6. The fourth factor, which would typically benefit the plaintiff, is not applicable.

CONCLUSION

**\*7** Based on the foregoing analysis, the defendants' Motion to Dismiss [[[doc. # 9] is GRANTED in part and DENIED in part. The motion is granted as to the plaintiff's § 1983 due process and § 1985 claims. Furthermore, the plaintiff's CFEPA claim is dismissed as to Darien, the Commission, McManus, Komm and LaBella. The motion is denied as to plaintiff's § 1983 equal protection claim. The plaintiff is directed to file an amended complaint in accordance with this ruling within twenty (20) days of the date it is filed.

Not Reported in F.Supp., 1998 WL 91073 (D.Conn.)

**Motions, Pleadings and Filings (Back to top)**

• 3:97cv00583 (Docket) (Mar. 31, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.