## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| WASLEY PRODUCTS, INC., ET AL., | **MASTER CONSOLIDATED CASE**<br>**CIVIL NO. 3:03 CV 383 (MRK/WIG)** |
| Plaintiffs, | |
| | THIS PERTAINS TO:<br>CIVIL NO. 3:03 CV 1790 (MRK/WIG) |
| V. | (Prentiss et al. v. Wasley Products, Inc. et al.) |
| BARRY BULAKITES, ET AL., | |
| Defendants. | DECEMBER 19, 2005 |

### WASLEY DEFENDANTS' MEMORANDUM IN OPPOSITION TO
### PLAINTIFFS' MOTION TO APPOINT A SPECIAL MASTER

Pursuant to Local Rule 7(a), defendants Wasley Products, Inc., Alan Wasley, Andrew

Brady, Sandi Dumas-Laferriere and Barry Connell (the "Wasley Defendants") submit this

memorandum in opposition to the Prentiss plaintiffs' Motion to Appoint Special Master. The

Prentiss plaintiffs seek to have the court appoint a second Special Master to calculate the amount

of the individual plan participants' alleged losses and to reconstruct the plan participants' 401(k)

accounts using reasonable rates of return. Plaintiffs suggest that a benefits advisory firm based

in California be appointed as the Special Master. For the reasons explained more fully in this

memorandum, the Wasley Defendants oppose at this time the motion to appoint a second Special

Master in this litigation. Extensive analysis has already been performed by the first Special

Master. It would not be productive to appoint a second Special Master, particularly without a

clear explanation of the analysis to be completed and the information needed to perform the

analysis. Further, even if the court should decide to appoint a Special Master, the Wasley

Defendants oppose the plaintiffs' suggestion to retain a firm located across the country and also

object to plaintiffs' proposal concerning the scope of the work to be completed and the fee

allocation.   Plaintiffs' motion therefore should be denied.

**I.    ARGUMENT**

**A.    Detailed Work Concerning Plan Contributions and Distributions Has
       Already Been Completed by the First Special Master and Appointment of a Second
       Special Master at this Time Would Not Be Productive.**

As the plaintiffs acknowledge, a Special Master, Alan Mandell of the firm of Blum,

Shapiro, was already appointed by the court in the lead case.   Plaintiffs' statements about the

scope of Mr. Mandell's work are inaccurate in several respects.[1]  What is accurate is that Mr.

Mandell and his associates spent a great deal of time tracing the ultimate disposition of monies

that had been contributed by Wasley Products and its employees to the various employee benefit

plans.  The Wasley Defendants, particularly defendants Brady and Dumas-Laferriere,

painstakingly searched through years of bank statements and other available financial records to

recreate the history of contributions made to the plans, including the Wasley 401(k) Plan.  The

initial Special Master's report clearly identified the employer contributions made and the

participant withholdings/contributions remitted by Wasley Products to the Bulakites Defendants,

Nationwide, and/or Lincoln National.  Thus, much if not all of the analysis that plaintiffs now

seek has already been completed in the lead case or can be extracted from the data and

documents already compiled for the first Special Master proceedings.

---

[1] For example, contrary to plaintiffs' assertions on pages 1-2 of their supporting memorandum, Mr. Mandell was not appointed solely to trace payments made into the Wasley 401(k) Plan that is the subject of plaintiffs' complaint. Rather, Mr. Mandell was appointed to perform an accounting with respect to various Wasley pension plans, which included not only the Wasley 401(k) Plan but also the Wasley UAW Local 376 Retirement Plan and the Precision Molding 401(k) Plan.  Further, Mr. Mandell's finding of over $700,000 in unaccounted plan funds pertains to all of the plans, not solely to the Wasley 401(k) Plan as the plaintiffs allege.  Indeed, the largest portion of the unaccounted funds relates to the defined benefit Retirement Plan, not the 401(k) plans.  In addition, contrary to plaintiffs' implication, there was no mandatory contribution to the Wasley 401(k) Plan; the 401(k) Plan included provisions for a discretionary employer contribution that was in fact made for a number of years.

Even if—as plaintiffs contend—additional analysis needs to be performed, the plaintiffs have not clearly explained what information would be needed in order to complete the work. Before a second Special Master is retained, plaintiffs should be required to articulate the background information and documents needed to complete the analysis. The parties and the court can then determine whether such records exist, whether the records have already been produced or can be obtained, and the work necessary to gather the information. Otherwise, the time and fees spent in additional Special Master proceedings may well be wasted. Given this, appointment of a new Special Master at this juncture would not be a prudent use of time or resources and plaintiffs' motion should be denied.

**B.     Appointment of a New Special Master Based in California Would Be Neither Cost-Efficient nor Practical.**

Further, even if the court were inclined to appoint a Special Master at this juncture, it is within the court's discretion to determine who should be appointed. Plaintiffs propose that Nancy Klein, President of Coty & Bruce Benefits, Inc., a San Diego benefits consulting firm, be appointed. Ms. Klein estimates that it would take at least 4-6 months to perform the necessary calculations from the date that she receives the records, but notes that this time may vary if the records are incomplete.

The Wasley Defendants oppose plaintiffs' proposal. It would be grossly inefficient to have a new Special Master appointed in the case, particularly one based in California and who has provided only a vague estimate of the time and cost involved in completing the task. As noted, Alan Mandell was already appointed as a Special Master in the litigation. Should the court determine that additional accounting work is necessary, the Wasley Defendants suggest that Mr. Mandell be contacted to determine whether he and/or others at his firm could perform the needed analysis. Mr. Mandell and his firm, Blum Shapiro, are already familiar with the

litigation and with the voluminous documents produced by the parties.  Although Mr. Mandell's final report did not break down contributions and distributions by individual participants in the Wasley 401(k) Plan, much of that work either was done in preparation for the final report or could be gleaned from the records already provided to him.  The parties in <u>Wasley I</u> did not object to Mr. Mandell's initial appointment and plaintiffs have proffered no reason as to why Mr. Mandell should not continue as Special Master if additional work is required.  Mr. Mandell's hourly rates are comparable to those proposed by Coty & Bruce.  Further, given that Mr. Mandell and his firm are based in West Hartford, Connecticut, the parties would not be faced with the significant travel expenses and logistical problems that likely would result from having a Special Master based on the West Coast.[2]

Even if Mr. Mandell and his firm are unavailable or unable to perform any work that the court should deem necessary, the Wasley Defendants propose that the court appoint a Special Master who is located in or near Connecticut in order to minimize travel costs and logistical problems.  There are benefit consulting and/or accounting firms within the state that could perform the type of calculations proposed by the plaintiffs.  For example, such firms include Hooker & Holcombe in West Hartford (benefit/actuarial work) and Haggett & Longobardi (accounting) in Glastonbury.  Should the court determine that additional work is required and cannot be undertaken by the original Special Master, the Wasley Defendants request that other local firms be considered as alternatives.

---

[2] The litigation is pending in Connecticut and most of the parties involved in the case reside in this state.  If a Special Master is appointed he or she may need to be present in Connecticut for any number of reasons—for example, to take testimony from potential witnesses, to be deposed if he or she is designated as an expert, or to appear at court proceedings—thereby incurring travel expenses such as airfare, hotel, meal, and ground transportation costs.

**C.      The Scope of Plaintiffs' Proposed Mandate is Unclear and Overbroad.**

Further, should the court decide to appoint a Special Master, the Wasley Defendants object to the plaintiffs' proposed mandate, particularly insofar as it purports to challenge the appropriateness of the investments for the Wasley 401(k) Plan.  (See Pltf. Mem., ¶ iv, p. 10).   It is unclear if plaintiffs intend to challenge the appropriateness of the Nationwide/Provident Mutual funds provided as investment options under the Wasley 401(k) Plan, as opposed to having the Special Master calculate potential investment gains and losses if any missing funds were allocated in accordance with participants' election choices.  If plaintiffs purport to challenge the appropriateness of the Nationwide/Provident funds, such a claim is time-barred given that the plan participants were well aware over the years of the investment options available and the respective performance of the funds.  Plan participants were provided information about the nature and relative risks of the funds.  Further, it was their decision as to how much to contribute, how to allocate contributions among the funds, and to change those allocations as they deemed appropriate.   They do not have a viable basis for challenging those options and decisions in hindsight and the Special Master therefore should not be tasked with this analysis.

**D.      Plaintiffs' Suggested Cost Apportionment Should be Rejected.**

Finally, should a Special Master be appointed, the Wasley Defendants oppose the cost apportionment proposed by the plaintiffs.  Plaintiffs state that they should not bear any of the costs and suggest that the apportionment used in the initial case be utilized again, whereby Wasley Products and Precision Molding paid 50% of the costs with the remaining 50% divided equally among the Bulakites Defendants, Nationwide, and Lincoln National.  Given the initial

Special Master's report and discovery conducted thus far, this proposal is unfair and should be rejected.

There is no reason why plaintiffs, as moving parties, should not bear a share of the costs for the work necessary to prosecute their claims. With respect to the initial Special Master proceedings, the plaintiffs in the first case (Wasley Products and Precision Molding) needed the Special Master analysis in order to confirm their initial findings of loss and therefore contributed a considerable amount of money to pay the costs of the proceedings. The Prentiss plaintiffs likewise should contribute to cover the costs of the work that they contend is necessary to establish the claims for which they seek relief. It is appropriate for every party involved in these matters to have a financial stake in the work of a Special Master in order to ensure that the work is done as efficiently as possible. Each party, therefore, should bear an equal share of the fees and costs of any additional Special Master proceedings.

Finally, although Nationwide and Lincoln National argue that they should not be responsible for the costs of any additional proceedings, their arguments are without merit. As set forth in the third-party complaint (as well as in the initial complaint in the lead case), the Wasley Products, Inc. and the other Wasley Defendants allege that Nationwide and Lincoln National were fiduciaries of the Wasley 401(k) Plan and should be liable for any breaches of fiduciary duty committed by their employees/agents, Bulakites and Winslow. These companies therefore should bear a proportion of the costs of any additional Special Master proceedings. Moreover, if plaintiffs are permitted to amend their complaint to include allegations about the establishment of the Wasley 401(k) Plan and the transfer of funds from the defined benefit plan to the Wasley 401(k) Plan, Nationwide (along with the Bulakites Defendants) should be responsible for fees and costs attributable to analysis of this issue. Wasley Products retained Nationwide (then

Provident Mutual) to establish its 401(k) Plan and prepare any necessary documents. Among

other things, the establishment of the 401(k) Plan, the preparation of plan statements, and the

calculation and transfer of funds from the old plan to the 401(k) Plan was performed by

Bulakites, Winslow, and other individuals employed by Nationwide/Provident Mutual.

Nationwide therefore has a stake in this analysis, notwithstanding its denials, and should bear a

portion of the costs.

## II.    CONCLUSION

For all of the foregoing reasons, plaintiffs' Motion to Appoint a Special Master should be

denied. In the event that the court believes that additional accounting work or analysis is

necessary and feasible at this juncture, the work should be completed either by Special Master

Mandell or another local firm in order to minimize duplication of effort and costs. Further, the

costs of any further Special Master proceedings should be fairly apportioned among all parties,

including the plaintiffs.

DEFENDANTS

WASLEY PRODUCTS, INC., ALAN A.
WASLEY, ANDREW BRADY, SANDI DUMAS-
LAFERRIERE, AND BARRY CONNELL


By: ___/s/ Jean E. Tomasco_____
    Theodore J. Tucci (ct05249)
    ttucci@rc.com
    Jean E. Tomasco (ct09635)
    jtomasco@rc.com
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT 06103-3597
    Tel. No.: (860) 275-8200
    Fax: (860) 275-8299

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2005, a copy of the foregoing Wasley Defendants'

Memorandum In Opposition To Plaintiffs' Motion to Appoint a Special Master, was filed

electronically.  Notice of this filing shall be sent by E-mail to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

| | |
|---|---|
| Eric P. Smith, Esq. | Sara R. Simeonidis, Esq. |
| Steven J. Errante, Esq. | Deborah S. Freeman, Esq. |
| Nancy A. Fitzpatrick Myers, Esq. | Bingham McCutchen |
| Marisa A. Bellair, Esq. | One State Street |
| Lynch, Traub, Keefe and Errante, P.C. | Hartford, CT  06103-3178 |
| 52 Trumbull Street | |
| P. O. Box 1612 | |
| New Haven, CT  06506 | |

| | |
|---|---|
| Thomas G. Rohback, Esq. | Thomas G. Moukawsher, Esq. |
| Doug Dubistsky, Esq. | Ian O. Smith, Esq. |
| James J. Reardon, Jr., Esq. | Moukawsher & Walsh |
| LeBoeuf, Lamb, Greene & MacRae, LLP | 21 Oak Street, Suite 209 |
| 225 Asylum Street | Hartford, CT  06106 |
| Hartford, CT  06103 | |

Joseph V. Meaney, Jr., Esq.
Cranmore, Fitzgerald & Meaney
49 Wethersfield Ave.
Hartford, CT  06114-1102

                                   /s/
                                  Jean E. Tomasco