**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| WASLEY PRODUCTS, INC. ET AL., | **MASTER CONSOLIDATED CASE** |
| | **CIVIL NO.: 3:03 CV 383 (MRK)** |
| Plaintiffs, | |
| | THIS PLEADING PERTAINS TO |
| | CIVIL NO.: 3:03 CV 1790 (MRK) |
| v. | |
| BARRY BULAKITES, JAMES | December 30, 2005 |
| WINSLOW, & JOSHUA ADAMS | |
| CORPORATION. | |
| Defendants. | |

**WASLEY PLAINTIFFS' MEMORANDUM IN OPPOSITION TO PRETISS PLAINTIFF'S MOTION TO APPOINT SPECIAL MASTER**

Pursuant to Local Rule 7(a), Plaintiff WASLEY PRODUCTS, INC AND PRECISION MOLDING COMPANY, collectively known as the "Wasley Plaintiffs", submit this memorandum in opposition to the "Prentiss" Plaintiffs Motion to Appoint Special Master dated November 28, 2005.

The "Prentiss" plaintiffs have moved for the appointment of a second special master in this case in order to reconstruct the Wasley 401(k) participant's accounts

and to calculated individual participant losses.  In particular, they have motioned for

the appointment of Nancy Klein of the San Diego, California based firm, Coty &

Bruce Benefits, Inc.  The "Wasley" Plaintiffs take issue with the proposed

appointment of a second special master and the proposed fee allocation regarding this

second special master.  However, if the court does choose to grant the motion for a

second special master, the Wasley plaintiffs object to the appointment of a special

master who resides cross-continent from the documents needing inspection and the

people necessary to interview[1].

## ARGUMENT:

**A.     Preliminary work done in preparation for the Final Report by the First
Special Master, Alan Mandell, can be extracted and completed to resolve the
questions of the "Prentiss" Plaintiffs more cost effectively and in a more time
efficient manner than involving a new Special Master.**

The Prentiss Plaintiffs contend that a second Special Master is needed in order

calculate what the individual plan participants should have in their 401(k) accounts.

The goal of this second special master would be to address concerns about losses not

only resulting from the "Bulakites" Defendants in the lead case, but also to set forth

and separate possible insufficient contributions by the plan sponsors, as they allege.

---

[1] I have briefely discussed this situation with Mark Greer, Esq. of Greer Benefit Consultants, located in
Glastonbury, CT.  I discussed the request at hand with Attorney Greer, and he could more than
adequately fill the Special Master Role for the purposes articulated by the movant.  (A copy of his
firm's resume is attached).

During the course of his investigation, the Special Master, Alan Mandell of the firm Blum & Shapiro was given access by all parties to years of bank statements and financial records to recreate the financial history of the various benefit plans, including the Wasley 401(k) plan. The initial Special Master's Report identified the employer contributions made and the participant withholdings and contributions deposited with the fiduciaries: the Bulakites Defendants, Defendant Nationwide Life Insurance, and Defendant Lincoln National Life Insurance. In essence, the Wasley Plaintiffs submit that Special Master Mandell already has the information in preliminary form in his records and very little further effort would be required for him to piece this information together to satisfy the "Prentiss" plaintiffs. Furthermore, this duty would fall squarely within the boundaries of District Judge Dominic J. Squatrito whose mandate for Mr. Mandell, filed on June 24, 2003, included the following:

> a. In performing the accountings, the master shall examine all relevant records of funds, bank accounts, places of deposit, or any other sources necessary in order to identify and trace (i) all payments made for the benefit of any or all of the Plans; and (ii) all withdrawals of funds identified with or held for the benefit of any or all of the Plans. *Order of Reference, June 24, 2003, pg. 3.*

It would appear that under the mandate, Special Master Mandel would have full authority to investigate the payments made to each and all of the plans on behalf of all of those who were making contributions, including the "Prentiss" Plaintiffs.  Mr. Mandell's mandate provided he should track who made contributions, whether the contributor was an employee or plan sponsors, and who made withdrawals, including those breaching their fiduciary duties.  Special Master Mandell already revealed that the 401(k) plan sponsors (Wasley Plaintiffs) did often contribute the 3% discretionary employer contribution, and that some of their loss in value was a result of the stock market crash.  Special Master Mandell also pointed out that a large portion of the missing 401(k) funds were also a result of the "Bulakites" Defendants failing to physically roll over the accrued funds they claimed to have garnered for the participants on the 401(k) quarterly statements.  Therefore, the mandate ordered for Mr. Mandell provides him with the power to investigate and report the information sought by the "Prentiss" Plaintiffs without the unnecessary expense and step of appointing a second special master.  Special Master Mandell's report also already explained where the missing 401(k) contributions lie.  Certainly if Special Master Mandell needed specific assistance relating to ERISA matter than Mr. Greer could provide this assistance.

**B.     Should this Court order a second Special Master, the Wasley Plaintiff's oppose the appointment of a special master based out of state.**

"Wasley" Plaintiffs further oppose the appointment the second Special Master proposed by the "Prentiss" Plaintiffs.  This is so because the proposed Special Master works out of California.  To appoint a second Special Master in addition to Alan Mandell, whom has already performed the investigations sought by the "Prentiss" Plaintiffs, the inefficiency and cost would only increase through appointing a Special Master hailing from California.  Surely there are firms capable of performing the necessary calculations falling within the boundaries of the District of Connecticut.  If the "Prentiss" Plaintiff's oppose Special Master Mandell's continued work on this case, perhaps Special Master Mandell would be willing to suggest a person within his firm or another he recommends within Connecticut in order to cut down on travel costs and logistical issues associated with having the special master working on a Connecticut case located out of state.

Furthermore, in addition to her location, the Wasley Plaintiff's oppose appointing Nancy Klein as Second Special Master as she has given only a rough estimate of 4-6 months in order to perform the requested calculations, with variance depending on how complete the records are.  As evidenced throughout the entirety of this case, many documents important to this case were admittedly disposed of by the

Bulakites Defendants, or ex-wives of a Bulakites Defendant, prior to the initiation of these cases.  An additional 6 months or more period of time for the parties in this action to wait for a second set of Special Master's calculations is an unnecessary burden to be placed on the shoulders of the involved parties.

**C.  The "Prentiss" Plaintiffs Suggested Cost Apportionment for the Retaining of a Second Special Master should be Rejected.**

Conveniently, the "Prentiss" Plaintiffs suggest that not only should a Second Special Master be retained to perform the work that Special Master Mandell already has primarily completed, but also have no desire to pay for it.   The "Prentiss" plaintiffs do, however, suggest that 50% of the costs involved should be paid for by the "Wasley" Plaintiffs in the lead case, and the second 50% be divided equally among the Defendants (Bulakites et al, Nationwide, and Lincoln National) also of the lead case as was the payment breakdown for payment of Special Master Mandell. Special Master Mandell was retained by the aforementioned parties in order to confirm their claims of loss in the lead case.  While some of the preliminary groundwork for the claims of the "Prentiss" plaintiffs was touched upon by Special Master Mandell already, it is unfair to ask the parties of the lead case to provide for

the financial costs of full discovery for the parties in the "Prentiss" case.  If the

"Prentiss" Plaintiffs desire Special Master Mandell to use his calculations to provide

another report examining only moderately different issues within his already

approved mandate, then they should also be willing to pay for it.  Should the court

approve the apportionment of Special Master discovery costs to all parties but the

moving party before judgment, it would be setting a dangerous precedent.  The

moving party could make unreasonable financial demands upon other parties to pay

for Special Master costs, particularly in situations where such costs incurred would be

of questionable value.


**<u>CONCLUSION:</u>**


      For all of the foregoing reasons, the "Prentiss" plaintiffs Motion to Appoint a

Special Master should be denied altogether.  Alternatively, should the motion to

appoint the Special Master be approved by the Court, the "Wasley" Plaintiffs also

wish to oppose the "Prentiss" Plaintiffs proposed choice of Special Master as they

would impose a burden in travel costs and logistics.  Finally, the "Wasley" Plaintiffs

also oppose the proposed apportionment of costs associated with a second Special

Master.

PLAINTIFFS
WASLEY PRODUCTS, ET AL.


BY:_____
JOSEPH V. MEANEY, JR.
Cranmore, FitzGerald & Meaney
49 Wethersfield Avenue
Hartford, CT 06114
Fed Bar No:  04315

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent electronically and via

U.S. First Class Mail this 30th day December, 2005 to all counsel of record and pro se

parties as follows:

| | |
|---|---|
| Theodore J. Tucci, Esq. | Thomas G. Moukawsher, Esq. |
| Jean E. Tomasco, Esq. | Ian O. Smith |
| Robinson & Cole, LLP | Moukawsher & Walsh |
| 280 Trumbull Street | 21 Oak Street, Suite 209 |
| Hartford, CT 06103-3597 | Hartford, CT 06106 |

| | |
|---|---|
| Steven J. Errante, Esq. | James J. Reardon, Jr., Esq |
| Eric P. Smith, Esq. | Thomas G. Rhoback, Esq. |
| Nancy Fitzpatrick Myers, Esq. | Doug Dubitsky, Esq. |
| Marisa A. Bellair, Esq. | LeBouef, Lamb, Greene, & MacRae |
| Lynch, Traub, Keefe & Errante, P.C. | 225 Asylum Street |
| 52 Trumbull Street | Hartford, CT 06103 |
| P.O. Box 1612 | |
| New Haven, CT 06506-1612 | |

Deborah S. Freeman, Esq.
Sara R. Simeonidis, Esq.
Bingham McCutchen, LLP
One State Street
Hartford, CT 06103

BY: _____

JOSEPH V. MEANEY, JR.
Cranmore, FitzGerald & Meaney

# ❧ *GBC* ❧

## ❧ *Greer Benefit Consultants, Inc.* ❧

**Greer Benefit Consultants, Inc.** a full-service actuarial and employee benefit consulting firm located in Glastonbury, Connecticut analyzes, designs, installs, communicates and administers all types of benefit programs, including qualified retirement plans (pension, profit sharing, 401(k), age-weighted, new comparability, prevailing wage and Employee Stock Ownership Plans), health and welfare, cafeteria and flexible benefit plans, plans for not-for-profit organizations, including 403(b) plans, non-qualified executive and director's compensation and fringe benefit plans.  GBC is also involved with mergers, acquisitions and ESOP leveraged buyouts. We also handle Internal Revenue Service (IRS) and Connecticut and Federal Department of Labor audits of retirement plans.

**Greer Benefit Consultants, Inc.** provides comprehensive and concentrated independent professional advice at the highest level of expertise.  Our recommendations are unbiased and objective, influenced solely by your company's particular needs.  We will work with our client's current advisors or assemble our own advisory team of professionals, such as CPAs, attorneys, lenders, and investment companies.

**Greer Benefit Consultants, Inc.** has sophisticated computer capabilities.  Our comprehensive retirement plan system has the capability of handling complex administrative issues such as: complicated compliance testing, tracking of multiple money sources and an unlimited number of funds per plan, and handling of multiple eligibility criteria and vesting schedules, tiered contributions, and many more special design features.  Our system's capabilities to import and export data allow us to easily interface with many leading investment companies and payroll companies.  Our system's special Reportwriter feature allows us to customize reports and Participant Statements.   The bottom line - we can make it work to satisfy your particular needs.

**Greer Benefit Consultants, Inc.** employees make the following commitments to our clients:

10

*Competence* - We provide the highest level of professional services available, and we customize our programs
to meet the needs of each of our clients, and we provide innovative, proactive and creative thinking.

*Simplicity* -  We simplify the process of plan installation and administration without jeopardizing quality.

*Convenience* - We provide you with One-stop shopping for employee benefit services.

*Dependability* - We provide you with prompt, courteous service.

*Education* - We provide educational programs for participants, professionals, businesses and the community.

### *Greer Benefit Consultants, Inc.*

### *115 New London Turnpike, Glastonbury, CT 06033*

### ☎ *(860) 659-3367 ● Fax (860) 657-9822*

*Rev. Jan  2005*

# ❧ *GBC* ❧

## ❧ *Greer Benefit Consultants, Inc.* ❧

### EMPLOYEE PROFILE

### Mark C. Greer, Principal

The President of Greer Benefit Consultants, Inc. is *Mark C. Greer*. Mark is an attorney who has been specializing in pension, profit sharing and employee benefit law since 1979. He is a principal in Greer Benefit Consultants, Inc. He received his undergraduate degree, with honors, in Business Administration from the University of Connecticut and received his law degree, with honors, from Loyola Law School, Los Angeles, California.

In addition to being a member of the Connecticut Bar Association, he is also a member of various employee benefit related professional organizations including, the National Center of Employee Ownership and the CBA Employee Benefits Subcommittee, and the Connecticut Chapter of the National Institute of Pension Administrators (Director 2000 – 2002). He is also admitted to practice before the U.S. District Court for Connecticut. He is a member of the Glastonbury Rotary Club (Past President 1998-1999, District Parliamentarian 1998-1999, Interact Club District Chairman 2000 – 2002, Awarded Paul Harris Fellowship in 2002, Assistant District Governor 2006 - 2007), and he is the Founder (1999) of the Glastonbury High School Interact Club (Rotary Advisor 1999 - 2005).

For years, he has lectured on topics affecting qualified and non-qualified employee benefits for various organizations, including the Connecticut Bar Association, the Connecticut Society of Certified Public Accountants, Western New England College of Law, and the National Center of Employee Ownership.

**MARK'S MESSAGE TO OUR CLIENTS**

*I started my pension career in 1979 working for a law firm in Southern California that specialized exclusively in qualified and non-qualified retirement plans. Upon returning home to Connecticut in 1982, I worked as a corporate/business attorney for a Hartford law firm. In 1984, I was given the opportunity to return to the pension field working for another employee benefit*

*consulting firm. I established Greer Benefit Consultants, Inc. ("GBC") in 1988 because of my firm belief that I could provide clients with more professional, knowledgeable and comprehensive services. This is achieved by providing our clients with unbiased, uncompromised loyalty and service. We take the extra steps and provide the extra services that we know clients appreciate. It's hard to quantify, but it makes a big difference. Quite frankly - (more than any other employee benefits consulting firm) - we sweat the details without burdening our clients. My advice is practical, while considering all the legal ramifications. My approach of blending my legal expertise with the practical aspects of employee benefits makes me uniquely qualified to handle the most complicated issues that confront today's benefits managers.*

*If at any time you do not feel that GBC is meeting your highest expectations, then I would appreciate personally hearing from you. Listening to your comments and suggestions will allow us to alleviate any shortcomings that might develop, and will improve our service to you - our valued clients.*

**Greer Benefit Consultants, Inc.**
**115 New London Turnpike, Glastonbury, CT 06033**
**☎ (860) 659-3367 ● Fax (860) 657-9822**

*Rev. Jan 2005*

# ❧ *GBC* ❧

## ❧ *Greer Benefit Consultants, Inc.* ❧

## EMPLOYEE PROFILE

Constance A. Rokicki, F.S.A., F.C.A.

Vice President of Actuarial Consulting Services

The firm's actuarial consulting services are headed up by *Constance A. Rokicki, F.S.A., F.C.A.*  Connie has over 30 years of actuarial, pension and consulting experience, including previous positions with Security-Connecticut Life Insurance, The Hartford, and CIGNA.  She has a Bachelor's Degree in Mathematics from North Carolina Wesleyan College.

She has been a Fellow of the Society of Actuaries since 1983, a Fellow of the Conference of Consulting Actuaries since 1991, a Member of the American Academy of Actuaries since 1979, an Enrolled Actuary since 1980, and is a past member of the Education and Exam Committee for the Society of Actuaries.

She has considerable experience in corporate, municipal and union retirement plans, and has qualified as an expert witness on pension plans for divorce cases, and has testified as an expert in binding arbitration hearings.

*Greer Benefit Consultants, Inc.*

*115 New London Turnpike, Glastonbury, CT 06033*

*☏ (860) 659-3367 ● Fax (860) 657-9822*

*Rev. Jan 2005*