| | | |
|---|---|---|
| WASLEY PRODUCTS, INCORPORATED, | ) | MASTER CONSOLIDATED |
| PRECISION MOLDING COMPANY, INC., | ) | CASE NO. 3:03 CV 383 |
| Individually and on behalf of WASLEY | ) | (MRK) |
| PRODUCTS- UAW LOCAL 376 | ) | |
| RETIREMENT PLAN, PRECISION MOLDING | ) | |
| 401(K) PLAN, AND WASLEY | ) | |
| PRODUCTS 401(K) PLAN | ) | THIS PLEADING |
| Plaintiffs | ) | PERTAINS TO: CIVIL |
| | ) | NO. 3:03 CV 383 (MRK) |
| | ) | |
| Vs. | ) | |
| | ) | |
| BARRY LEONARD BULAKITES, | ) | |
| JAMES ALBERT WINSLOW, | ) | |
| JOSHUA ADAMS CORPORATION, | ) | |
| NATIONWIDE LIFE INSURANCE CO. OF | ) | |
| AMERICA F/K/A/ PROVIDENT MUTUAL | ) | |
| LIFE INSURANCE CO. AND LINCOLN | ) | |
| NATIONAL LIFE INSURANCE CO. | ) | |
| Defendants | ) | SEPTEMBER 29, 2005 |


## SECOND AMENDED COMPLAINT

The Plaintiffs, Wasley Products, Incorporated, Wasley Products- UAW

Local 376 Retirement Plan, Precision Molding 401(k) Plan, Wasley Products 401(k)

Plan and Precision Molding Company, Inc. (jointly referred to as the "Companies"),

by their attorneys, Cranmore, FitzGerald & Meaney, hereby allege:

1

I.             **<u>JURISDICTION AND VENUE</u>**

1. This is an action arising under 29 U.S.C. Sec. 1001 et seq. This Court has jurisdiction of the claims arising under the laws of the United States in this action pursuant to 29 U.S.C. Sec. 1132 (e)(1) and (f), which provide as follows:

    (e)      Jurisdiction

    (1)      Except for actions under subsection (a)(1)(b) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by… a… fiduciary….

    (f)      Amount in controversy; citizenship of parties

    The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of parties….

2. Venue in this Court is proper pursuant to 29 U.S.C. Sec. 1132 (e)(2), which provides that "[w]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found…."

3.  The Court may exercise personal jurisdiction over the defendants pursuant to 29 U.S.C. Sec. 1132(e)(2), which provides that "process may be served in any other district where a defendant resides or may be found."

II.                                   **PARTIES**

4.  The Plaintiff, Wasley Products, Incorporated ("Wasley Products") is a corporation organized and existing under the laws of the State of Connecticut, which maintains its principal place of business at 87 Spring Lane, Plainville, Connecticut. Wasley Products is the Sponsor and Plan Administrator for the Wasley Products- UAW Local 376 Retirement Plan, ("UAW Pension"), which is an employee pension defined benefit plan, and the Wasley Products 401(k) Plan, ("Wasley 401k Plan"), which is an employee pension defined contribution plan. Both of the employee pension plans are subject to the Employee Retirement Security Act ("ERISA"). Wasley Products is in the business of manufacturing custom molded rubber products at the facility in Plainville, Connecticut. Wasley currently employs approximately forty-five people.

5.  The Plaintiff, Precision Molding Company, Inc. ("Precision Molding") is a corporation organized and existing under the laws of the State of Connecticut, which maintains its principal place of business at 167 John Downey Drive, New Britain, Connecticut. Precision Molding is the Sponsor and Plan Administrator for the Precision Molding 401(k) Plan, which is an employee pension defined contribution plan subject to ERISA. Precision Molding is in the business of manufacturing custom molded rubber and plastic products at its New Britain facility. Precision Molding currently employs approximately fifteen people.

6.  The Wasley Products- UAW Local 376 Retirement Plan ("UAW Pension") is an employee pension defined benefit plan where Wasley Products is a sponsor and Third Party Administrator. The UAW Pension is subject to the Employee Retirement Security Act.

7.  The Wasley Products 401(k) Plan ("Wasley 401(k) Plan") is an employee pension defined benefit plan to which Wasley Products is a sponsor and Third Party Administrator. The Wasley 401(k) Plan is subject to ERISA.

8.  The Precision Molding 401(k) Plan ("Precision Molding 401(k)") is an employee pension defined benefit plan to which Precision Molding is a

sponsor and third party Administrator. The Precision Molding 401(k) is subject to ERISA.

9. The Defendant Barry Leonard Bulakites is an individual residing at 558 Castle Pines Parkway, Unit B4 #401, Castle Rock, CO 80108 ("Bulakites"). From November 1990 until November 2002, Bulakites was a fiduciary and Third Party Administrator for the Companies' employee pension plans (the "Plans").

10. The Defendant James Albert Winslow is an individual whose last known residence was 61 Muller Drive, Westbrook, Connecticut 06498 ("Winslow"). From November 1990 until November 2002, Winslow was a fiduciary and Third Party Administrator for the Plans.

11. The Defendant Joshua Adams Corporation ("JAC") is a corporation organized and existing under the laws of the State of Connecticut, which maintains its principal place of business at 149 Durham Road, Suite 25, Madison, Connecticut 06443. From December1993 until November 2002, JAC was a fiduciary and Third Party Administrator for the Plans.

12. The Defendant Nationwide Life Insurance Company of America is the successor in interest to Provident Mutual Life Insurance Company ("Provident Mutual") and is organized and existing under the laws of the

State of Pennsylvania. Provident Mutual maintains a principal place of business at P.O. Box 1717, Valley Forge, Pennsylvania 19482. From November 1990 until at least as late as December 1993, Provident Mutual was a fiduciary and Third Party Administrator for the Plans.

13. The Defendant Lincoln National Life Insurance Company ("Lincoln") is organized and existing under the laws of the State of Indiana and maintains a principal place of business at 1300 South Clinton Street, Fort Wayne, Indiana 46802. From May 1995 until December 1997, Lincoln was a fiduciary and Third Party Administrator for the Plans.

III.                          **FACTS**

A.      *Background*

14.     Prior to 1989, Wasley Products established and maintained two separate defined benefit plans, the funds of which were commingled (the "Wasley DBP").

15.     Prior to 1989, Wasley Products had retained the services of a non-party, Pension Planning Concepts, Inc., as the Third Party Administrator for Wasley DBP.

16.     Alan Wasley, Chairman and President of Wasley Products, was the
        Trustee of the Wasley DBP.

17.     The two separate defined benefit plans that comprised the Wasley DBP
        were known as: (1) "Wasley Inc. Retirement Plan," which was available
        to office staff; and (2) "Wasley Products, Inc. UAW Local 376
        Retirement Plan," which was available to union employees.

18.     Between 1990 and 1991, Wasley Products, through Alan Wasley and
        other employees, participated in numerous discussions with Bulakites
        and Winslow in which Bulakites, Winslow, and Provident Mutual sought
        to replace Pension Planning Concepts, Inc. as Wasley Products' Third
        Party Administrator for the Wasley DBP.

19.     Prior to Wasley Products' retention of Bulakites and Winslow, in a
        September 20, 1990 letter, Winslow stated that he and his "Pension
        Team" would endeavor to "identify the profile and direction of the
        Wasley Product Pension fund." In an October 24, 1990 letter, Winslow
        further promised to "deal with alternatives to how [Wasley Products']
        pension [was] presently structured."

20.     By a letter dated November 20, 1990, Bulakites represented to Wasley
        Products that "[o]ur pension team has been providing service to our

clients since 1865 and will provide the expertise needed to keep your plans worry free." In that same letter, Bulakites made multiple recommendations regarding the structure and investment of the Wasley Products DBP, including the following:

    i.   Split the assets of the Wasley DBP into two separately managed and controlled funds for staff employees and union employees;

    ii.   Purchase annuities for the employees who were already receiving benefits;

    iii.   Freeze the "Wasley 401(k) Plan" for office staff and transfer the assets from Union Trust to Provident Mutual; and

    iv.   Establish a new 401(k) plan for office staff.

21.    On or about November 30, 1990, Wasley Products retained Provident Mutual, Bulakites, and Winslow to perform Third Party Administration services for the Wasley DBP.

22.    Upon information and belief, at the time Wasley Products retained Bulakites, he was employed by Provident Mutual and had been so employed since 1989. Bulakites' employment with Provident Mutual continued until 1995.

23.    Upon information and belief, at the time Wasley Products initially retained Winslow, he was employed by Provident Mutual and had been so employed since 1990. Winslow's employment with Provident Mutual continued until 1995.

24.    On or about February 6, 1991, pursuant to a Limited Power of Attorney, Wasley Products, acting through its President, Alan Wasley, authorized Bulakites to receive information pertaining to the Wasley DBP.

25.    Upon the suggestion and advice of Bulakites, on or about February 14, 1991, Wasley Products authorized the transfer to Provident Mutual of the Wasley DBP funds which had been held on deposit with Union Trust. Wasley Products' authorization directed Union Trust to liquidate the Wasley DBP and send a check made payable to "Provident Mutual" directly to Bulakites.

26.    Thereafter, on March 8, 1991, the funds were deposited with Provident Mutual in a "Fixed Income Fund" investment account in the name of "Wasley Products, Inc.," with Winslow designated as the account's agent.

27.    In March 1991, a defined benefit plan was established for Wasley Products- UAW Local 376 Retirement Plan" (the "UAW Pension").

Upon the suggestion and advice of Bulakites and Winslow, The UAW Pension assets were invested in three investment funds: "Fixed Account," "Balanced Account" and "Value Equity Account."

28.    The UAW Pension designated Wasley Products as its Plan Administrator.

29.    The UAW Pension designated Alan Wasley as its Trustee. On September 26, 1994, Barry Connell, Sandra Dumas- Laferriere and Andrew Brady were added as Trustees of the UAW Pension.

30.    On or about April 9, 1991, Wasley Products terminated the services of Pension Planning Concepts, Inc. as the Third Party Administrator for the Wasley DBP.

31.    On October 28, 1991, the Wasley DBP was terminated by resolution of the board of directors of Wasley Products.

32.    In or about December 1993, Bulakites and Winslow formed JAC. Winslow was the President, Treasurer and a Director of JAC and Bulakites was its Vice President, Secretary and a Director.

33.    Bulakites, Winslow and JAC continued to render Third Party Administrator services to Wasley Products after December, 1993.

34.    In August, 1994, upon suggestion and advice of Provident Mutual, Bulakites, Winslow and JAC, Wasley Products signed an agreement with Provident Mutual for the investment of 401(k) plan assets (the "Wasley 401(k) Plan"). Three investment accounts ("Diversified Equity," "Balanced Fund" and "Fixed Account") were to be established with Provident Mutual into which plan participants could elect to invest their 401(k) funds.

35.    The Wasley 401(k) Plan designated Wasley Products as the Plan Administrator.

36.    The Wasley 401(k) Plan designated Alan Wasley as its Trustee. On or about September 26, 1994, Barry Connell, Sandra Dumas- Laferriere and Andrew Brady were added as Trustees of the Wasley 401(k) Plan.

37.    In August 1994, upon the suggestion and advice of Bulakites, Winslow and JAC, Precision Molding established a 401(k) plan (the "Precision Molding 401(k)"). Precision Molding authorized Bulakites, Winslow and JAC to establish three separate investment accounts ("Diversified Equity Fund," "Balanced Fund" and "Fixed Account") with Provident Mutual into which plan participants could elect to invest their 401(k) funds.

38.     Upon the suggestion and advice of Bulakites, Winslow and JAC, on or about October 6, 1994, Wasley Products authorized a reallocation of UAW Pension assets into the following three separate investment accounts with Provident Mutual: "Fixed Account," "Value Equity" and "Equity Growth".

39.     On or about May 8, 1995, by letter to Wasley Products, Bulakites announced the "association of Joshua Adams Corporation with Lincoln National Corporation," effective on that same day. According to Bulakites: "This alliance creates a much greater depth of services, research and knowledge from which to serve your needs."

40.     Upon information and belief, from May 1995 until April 1996, Bulakites was employed by Lincoln.

41.     Upon information and belief, from June 1995 until December 1997, Winslow was employed by Lincoln.

42.     In or about July 1995, Bulakites and Winslow persuaded Wasley Products to transfer $100,000 of the UAW Pension funds from Provident Mutual to Lincoln. On or about July 26, 1995, at the direction of Bulakites, $100,000 was wire transferred out of the UAW Pension account with Provident to a payee designated as "Wasley Pension Acct."

Wasley Products later learned that Bulakites had directed that the $100,000 be transferred into an account maintained at New Haven Savings Bank ("NHSB"), which was unknown to Wasley Products until February 2003.

43.     In or about August, 1995, Lincoln provided Wasley Products with written promotional materials and introduced Wasley Products to "benefit analysis team key members." Upon Lincoln's recommendation, Wasley Products agreed to a full evaluation of its benefits and compensation programs.

44.     From 1990 until November 2002, Bulakites and Winslow received compensation for their services in the form of commissions and fees.

45.     Upon information and belief from approximately 1990 until at least 1995, Provident Mutual received compensation for its services in the form of commissions and fees.

46.     From December 1993 until November 2002, JAC received compensation for its services in the form of commissions and fees.

47.     Upon information and belief, from May 1995 until December 1997, Lincoln received compensation for its services in the form of commissions and fees.

48.     On or about November 1, 2002, the Companies terminated the services of Bulakites, Winslow and JAC due to problems with the service provided by JAC and various other administration issues. In or about November 2002, the Companies further requested that Bulakites, Winslow and JAC turn over all plan documents and information and all account documents and information relating to the Plans either to Wasley Products or the new Third Party Administrator.

B.     *Misconduct by the Defendants*

49.     After the Companies terminated their services, Bulakites, Winslow and JAC failed and/or refused to turn over all documents and information relating to the Plans and the accounts in which assets of the Plans were to have been invested.

50.     Due to Bulakites', Winslow's and JAC's failure to turn over all documents relating to the Plans despite demands from the Companies, the Companies began efforts to obtain from other sources the documents and information which were withheld by Bulakites, Winslow and JAC. Those efforts have been successful to a limited extent. However, the Companies still do not have documents and information which is critical to the administration of the Plans.

51.  Included among the documents and information that Bulakites, Winslow and JAC continue to withhold are the following:

a.  All plan documents and summary plan descriptions for the Precision Molding 401(k);

b.  All reports filed on behalf of the Plans with the Internal Revenue Service ("IRS"), the Department of Labor ("DOL") and the Pension Benefit Guaranty Corporation ("PBGC"), including IRS Forms 5500 and 1099R;

c.  Annual valuation reports for the UAW Pension for the years 2000 and 2001, including a current value for all employees with an accrued benefit in the plan and all terminated employees who are in "pay status" or have a deferred benefit;

d.  Annual valuation reports for the Wasley 401(k) and the Precision Molding 401(k) for the years 2000 and 2001;

e.   Asset statements for the Plans reflecting current account balances;

f.  Wasley 401(k) Plan and Precision Molding 401(k) statements for the period ending September 30, 2002 for all plan participants (active and inactive).

g.  Historical reports and documents demonstrating rollovers, payouts and all other transactions for the Wasley 401(k) Plan and the Precision

Molding 401(k);

h.  Information and documentation regarding the Wasley 401(k) Plan Diversified Equity account; and

i.  Information and documentation regarding the transfer of $l00,000 of UAW Pension funds from Provident Mutual in 1995.

52.  Based upon the research and investigation conducted by the Companies, subsequent to the termination of the Bulakites, Winslow and JAC, the Plaintiffs have discovered extensive misconduct by Bulakites, Winslow, JAC, Provident Mutual and Lincoln (the "Misconduct"). The Misconduct appears to include the following:

a.  failure to comply with ERISA reporting requirements pertaining to the Plans and failure to submit timely reports to the IRS, the DOL and the PBGC;

b.  failure to make timely payments of Wasley Products' premiums for coverage of the UAW Pension with the PBGC from 1996 until 2002;

c.  misrepresentation of the value of the Plans' assets on periodic reports provided to the Companies;

d.  misrepresentation of the value of the Plans on quarterly statements provided to individual participants;

e.  failure to allocate Wasley 401(k) Plan contributions to the Diversified Equity account as had been elected by plan participants;

f.  misrepresentation of Wasley 401(k) Plan contributions to the Diversified Equity account on quarterly statement provided to individual participants;

g.  a scheme in which, since 1992, Bulakites, Winslow and JAC have failed to deposit more than $725,000 in plan assets into accounts with Provident Mutual and Lincoln;

h.  the diversion of contributions to the UAW Pension into an account with People's Bank, which had never been disclosed to the Plaintiffs;

i.  the diversion of contributions to the Wasley 401(k) Plan into an account with Provident National Bank, which had never been disclosed to Wasley Products; and

j.  contrary to the 1995 authorization of Wasley Products, rather than transfer $100,000 from Provident Mutual to Lincoln, Bulakites and Winslow, in fact, diverted the funds into an account with NHSB - an account which had never been disclosed to Wasley Products. It appears that the funds have been withdrawn from the NHSB account, also without Wasley Products' knowledge or authorization.

k.  undue delay in establishing the 401(k) Plan and misrepresentations or failures to communicate properly the status of the Plan and preparation of Plan documents;

l.  misrepresentations regarding compliance with and the failure to comply with ERISA reporting requirements pertaining to the Plan and failure to submit timely reports to the appropriate government agencies;

m.  otherwise mismanaging or converting assets of the Plaintiffs' Plans for their own interest or in their own account.

53.  To date, the Plaintiffs have discovered the conversion of at least $768,000 from the Plans' investment accounts, which were under the management and control of Bulakites, Winslow, JAC, Provident Mutual and Lincoln.

IV.                    <u>CLAIMS FOR RELIEF</u>

<u>COUNT ONE</u>

**WASLEY PRODUCTS' ERISA CLAIM FOR BREACH OF FIDUCIARY DUTY RE: THE PLANS (29 U.S.C. § 1132(a)(2))**

54.    The Plaintiff's incorporate by reference the allegations of Paragraphs 1 through 53 above.

55.    The Defendants are "fiduciaries" as that term is defined in ERISA (29 U.S.C. § 1002(21)(A)).

56.    Each of the Defendants performed third party administration and investment services on behalf of Wasley Products and the Plans and they were compensated for such services during the following periods:

      a.      Bulakites: November 1990 until November 2002;

      b.      Winslow: November 1990 until November 2002;

      c.      JAC: December 1993 until November 2002;

      d.      Provident Mutual: November 1990 until 2002; and

      e.      Lincoln: May 1995 until December 1997.

57.     The Defendants rendered investment advice for a fee or other compensation, direct and indirect, with respect to the moneys of the Plans and had authority and responsibility to do so.

58.     Over an aggregate of a twelve year period of time, through regular and ongoing contact, the Defendants counseled the Plaintiffs regarding the structure, investment and administration of the Plans.

59.     As fiduciaries of the Plans, the Defendants were legally required to discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries.

60.     As fiduciaries of the Plans, the Defendants were legally required to discharge their duties with respect to the plan for the exclusive purpose of providing benefits to participant and their beneficiaries.

61.     By the Defendants' aforesaid conduct, they have breached their fiduciary duties in violation of the provisions of ERISA, including 29 U.S.C. § 1109. The Plaintiffs bring this claim pursuant to 29 U.S.C. § 1132(a)(2).

62.     The Defendants' aforesaid conduct has resulted in losses to the Plans for the diversion and/or conversion of plan funds (both principal and interest) and for profits gained by the Defendants through their use of plan assets.


**COUNT TWO**

**WASLEY'S ERISA CLAIM RE: THE PLANS (29 U.S.C. § 1132(A)(3))**

54.     The Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 53 above.

55.     The Defendants are "fiduciaries" as that term is defined in ERISA (U.S.C. § 1002(21)(A)).

56.     Each of the Defendants performed third party administration and investment services on behalf of Wasley Products and the Plans and they were compensated for such services during the following periods:

    a.      Bulakites: November 1990 until November 2002;

    b.      Winslow: November 1990 until November 2002;

    c.      JAC: December 1993 until November 2002;

      d.      Provident Mutual: November 1990 until 2002; and

      e.      Lincoln: May 1995 until December 1997.

57.    The Defendants rendered investment advice for a fee or other compensation, direct and indirect, with respect to the moneys of the Plans and had authority and responsibility to do so.

58.    Over an aggregate of a twelve year period of time, through regular and ongoing contact, the Defendants counseled the Plaintiffs regarding the structure, investment and administration of the Plans.

59.    As fiduciaries of the Plans, the Defendants were legally required to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries.

60.    As fiduciaries of the Plans, the Defendants were legally required to discharge their duties with respect to the Plans for the exclusive purpose of providing benefits to participants and their beneficiaries.

61.    By the Defendants' aforesaid conduct, they have breached their fiduciary duties in violation of the provisions of ERISA. The Plaintiffs bring this claim pursuant to 29 U.S.C. § 1132(a)(3).

62.     The Defendants' aforesaid conduct has resulted in losses to the Plans for the diversion and/or conversion of plan funds (both principal and interest) and for profits gained by the Defendants through their use of plan assets.


## COUNT THREE

**WASLEY PRODUCTS' ERISA CLAIM FOR BREACH OF FIDUCIARY DUTY RE: THE WASLEY 401(k) PLAN (29 U.S.C. § 1132(a)(2))**

54.     The Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 53 above.

55.     The Defendants are "fiduciaries" as that term is defined in ERISA (29 U.S.C. § 1002(21)(A)).

56.     Each of the Defendants performed third party administration and investment services on behalf of Wasley Products and the Wasley 401(k) Plan and they were compensated for such services during the following periods:

    a.      Bulakites: 1994 until November 2002;

    b.      Winslow: 1994 until November 2002;

    c.      JAC: 1994 until November 2002;

     d.      Provident: 1990 until 2002; and

     e.      Lincoln: May 1995 until December 1997.

57.     The Defendants rendered investment advice for a fee or other compensation, direct and indirect, with respect to the moneys of the Wasley 401(k) Plan and had authority and responsibility to do so.

58.     Over an aggregate of a nine year period of time, through regular and ongoing contact, the Defendants counseled the Plaintiffs regarding the structure, investment and administration of the Wasley 401(k) Plan.

59.     As fiduciaries of the Wasley 401(k) Plan, the Defendants were legally required to discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries.

60.     As fiduciaries of the Wasley 401(k) Plan, the Defendants were legally required to discharge their duties with respect to the plan for the exclusive purpose of providing benefits to participant and their beneficiaries.

61.     By the Defendants' aforesaid conduct, they have breached their fiduciary duties in violation of the provisions of ERISA, including 29 U.S.C. § 1109. The Plaintiffs bring this claim pursuant to 29 U.S.C. § 1132(a)(2).

62.     The Defendants' aforesaid conduct has resulted in losses to the Wasley

        401(k) Plan for the diversion and/or conversion of plan funds (both principal

        and interest) and for profits gained by the Defendants through their use of

        plan assets.


## COUNT FOUR

**WASLEY PRODUCTS' ERISA CLAIM RE: WASLEY 401(k) PLAN (29 U.S.C. § 1132(a)(3))**

54.     The Plaintiff's incorporate by reference the allegations of Paragraphs 1

        through 53 above.

55.     The Defendants are "fiduciaries" as that term is defined in ERISA (29

        U.S.C. § 1002(21)(A)).

56.     Each of the Defendants performed third party administration and investment

        services on behalf of Wasley Products and the Wasley 401(k) Plan and they

        were compensated for such services during the following periods:

        a.      Bulakites: 1994 until November 2002;

        b.      Winslow: 1994 until November 2002;

    c.      JAC: 1994 until November 2002;

    d.      Provident: 1990 until 2002; and

    e.      Lincoln: May 1995 until December 1997.

57.    The Defendants rendered investment advice for a fee or other compensation, direct and indirect, with respect to the moneys of the Wasley 401(k) Plan and had authority and responsibility to do so.

58.    Over an aggregate of a nine year period of time, through regular and ongoing contact, the Defendants counseled Wasley Products regarding the structure, investment and administration of the Wasley 401(k) Plan.

59.    As fiduciaries of the Wasley 401(k) Plan, the Defendants were legally required to discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries.

60.    As fiduciaries of the Wasley 401(k) Plan, the Defendants were legally required to discharge their duties with respect to the plan for the exclusive purpose of providing benefits to participant and their beneficiaries.

61.     By the Defendants' aforesaid conduct, they have breached their fiduciary

duties in violation of the provisions of ERIISA. The Plaintiffs bring this

claim pursuant to 29 U.S.C. § 1132(a)(3).

62.     The Defendants' aforesaid conduct has resulted in losses to the Wasley

401(k) Plan for the diversion and/or conversion of plan funds (both principal

and interest) and for profits gained by the Defendants through their use of

plan assets.


## COUNT FIVE

**PRECISION MOLDING'S ERISA CLAIM FOR BREACH OF
FIDUCIARY DUTY RE: PRECISION MOLDING 401(k) (29 U.S.C. §
1132(a)(2))**

54.     The Plaintiff's incorporate by reference the allegations of Paragraphs 1

through 53 above.

55.     The Defendants are "fiduciaries" as that term is defined in ERISA (29

U.S.C. § 1002(21)(A)).

56. Each of the Defendants performed third party administration and investment services on behalf of Precision Molding and the Precision Molding 401(k) and they were compensated for such services during the following periods:

    a.    Bulakites: 1994 until November 2002;

    b.    Winslow: 1994 until November 2002;

    c.    JAC: 1994 until November 2002;

    d.    Provident: 1990 until 2002; and

    e.    Lincoln: May 1995 until December 1997.

57. The Defendants rendered investment advice for a fee or other compensation, direct and indirect, with respect to the moneys of the Precision Molding 401(k) and had authority and responsibility to do so.

58. Over an aggregate of a nine year period of time, through regular and ongoing contact, the Defendants counseled Precision Molding regarding the structure, investment and administration of the Precision Molding 401(k).

59. As fiduciaries of the Precision Molding 401(k), the Defendants were legally required to discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries.

60.     As fiduciaries of the Precision Molding 401(k), the Defendants were legally required to discharge their duties with respect to the plan for the exclusive purpose of providing benefits to participant and their beneficiaries.

61.      By the Defendants' aforesaid conduct, they have breached their fiduciary duties in violation of the provisions of ERISA, including 29 U.S.C. § 1109. The Plaintiffs bring this claim pursuant to 29 U.S.C. § 1132(a)(2).

62.     The Defendants' aforesaid conduct has resulted in losses to the Precision Molding 401(k) for the diversion and/or conversion of plan funds (both principal and interest) and for profits gained by the Defendants through their use of plan assets.


## COUNT SIX

**PRECISION MOLDING'S ERISA CLAIM RE: PRECISION MOLDING 401(k) (29 U.S.C. § 1132(a)(3))**

54.     The Plaintiff's incorporate by reference the allegations of Paragraphs 1 through 53 above.

55.    The Defendants are "fiduciaries" as that term is defined in ERISA (29 U.S.C. § 1002(21)(A)).

56.    Each of the Defendants performed third party administration services on behalf of Precision Molding and the Precision Molding 401(k) and they were compensated for such services during the following periods:

    a.    Bulakites: 1994 until November 2002;

    b.    Winslow: 1994 until November 2002;

    c.    JAC: 1994 until November 2002;

    d.    Provident: 1990 until 2002; and

    e.    Lincoln: May 1995 until December 1997.

57.    The Defendants rendered investment advice for a fee or other compensation, direct and indirect, with respect to the moneys of the Precision Molding 401(k) and had authority and responsibility to do so.

58.    Over an aggregate of a nine year period of time, through regular and ongoing contact, the Defendants counseled Precision Molding regarding the structure, investment and administration of the Precision Molding 401(k).

59.     As fiduciaries of the Precision Molding 401(k), the Defendants were legally
        required to discharge their duties with respect to the plan solely in the
        interest of the participants and beneficiaries.

60.     As fiduciaries of the Precision Molding 401(k), the Defendants were legally
        required to discharge their duties with respect to the plan for the exclusive
        purpose of providing benefits to participant and their beneficiaries.

61.     By the Defendants' aforesaid conduct, they have breached their fiduciary
        duties in violation of the provisions of ERISA. The Plaintiffs bring this
        claim pursuant to 29 U.S.C. § 1132(a)(3).

62.     The Defendants' aforesaid conduct has resulted in losses to the Precision
        Molding 401(k) for the diversion and/or conversion of plan funds (both
        principal and interest) and for profits gained by the Defendants through their
        use of plan assets.

## COUNT SEVEN

**COMMON LAW BREACH OF FIDUCIARY DUTY BY DEFENDANTS**

54.     The allegations of paragraphs 1 through 53 are incorporated by reference as
        paragraphs 1 through 53 of this Seventh Count.

55.     The Defendants individually or through their agents and employees were
acting with respect to the Plaintiffs and the Plans in a unique capacity with a
degree of trust and confidence with superior knowledge, skill, and expertise,
and under a duty to represent the interests of the plaintiffs and the interests
of the Plans participants as a Third-Party Administrator, investment advisor
and broker-dealer.

56.     As such the Defendants had a duty to act at all times in good faith and deal
fairly with the Plaintiffs and the Plans.

57.     Through the wrongfu1 acts or omissions, the Defendants breached their
common law fiduciary duties to the Plaintiffs and the Plans.

## COUNT EIGHT

**PROFESSIONAL NEGLIGENCE/ MALPRACTICE BY BULAKITES,
WINSLOW, JAC, PROVIDENT MUTUAL AND LINCOLN**

54.     The allegations of paragraphs 1 through 53 are incorporated by reference as
paragraphs l through 53 of this Eighth Count.

55.     The Defendants, acting individually or through their agents or employees
had a duty at all times to properly administer and manage the Plans and their

assets and to provide appropriate investment advice and accurate

information and documentation concerning the Plans and their assets.

56.     Through their wrongful acts or omissions, the Defendants breached the

applicable standard of professional care, skill and diligence in providing the

services described above.

## COUNT NINE

**INTENTIONAL MISREPRESENTATION BY BULAKITES, WINSLOW, JAC AND PROVIDENT MUTUAL**

54.     The allegations of paragraphs 1 through 53 are incorporated by reference as

paragraphs l through 53 of this Ninth Count.

55.     Bulakites, Winslow, JAC, and through its employees or agents, Provident

Mutual engaged in various acts of misconduct concerning the administration

and management of the Plans. These Defendants made false representations

to Wasley Products and the trustees of the Plans, which included

representations regarding one or more of the following:

(a) the level of training, skill, experience, resources, and expertise

possessed by Provident Mutual, Bulakites, Winslow and JAC in the

area of pension plan administration, management, and investment services;

(b) the filing of Forms 5500 for the Plans;

(c) the value of the Plans' assets on periodic reports provided to Wasley Products

(d) the value of the Plans and investments on quarterly statements provided to individual participants;

(e) the availability of the Diversified Equity account as an investment option under the Plans;

(f) the allocation of 401(k) Plan contributions to the Diversified Equity account as had been elected by plan participants; and/ or

(g) the allocation of Wasley 401(k) Plan contributions to the Diversified Equity account on quarterly statements provided to individual participants.

56.     Bulakites, Winslow, JAC, through its employees or agents, and Provident Mutual knowingly or recklessly made these false representations.

57.     Bulakites, Winslow, JAC, through its employees or agents, and Provident

        Mutual made these false representations in order to force the Plaintiffs to

        rely upon such representations and to continue to use Provident Mutual and

        its employees or agents to administer and manage the Plans.

58.     Bulakites, Winslow, JAC, through its employees or agents, and Provident

        Mutual intentionally withheld material information from the Plaintiffs with

        regard to the management and administration of the Plans, including

        information relative to the status, operation, and funding of the Plans.

59.     Bulakites, Winslow, JAC, through its employees or agents, and Provident

        Mutual withheld material information in order to force Wasley Products and

        the trustees of the Plans to continue to use the services of Provident Mutual

        and its employees or agents in administering and managing the Plans.

60.     The Plaintiffs relied to their detriment upon the misrepresentations and

        nondisclosures of these Defendants.

## COUNT TEN

**NEGLIGENT MISREPRESENTATION AGAINST BULAKITES, WINSLOW, JAC AND PROVIDENT MUTUAL**

54.    The allegations of paragraphs 1 through 53 are incorporated by reference as paragraphs l through 53 of this Tenth Count.

55.    Bulakites, Winslow, JAC and Provident Mutual, through its employees or agents, engaged in various acts of misconduct concerning the administration and management of the Plans. Among other things, Bulakites, Winslow, JAC and Provident Mutual, through its employees or agents, negligently made misrepresentations the Plaintiffs including representations regarding one or more of the following:

(a) the level of training, skill, experience, resources, and expertise possessed by Provident Mutual, Bulakites, Winslow and JAC in the area of pension plan administration, management, and investment services;

(b) the filing of Forms 5500 for the Plans;

(c) the value of the Plans' assets on periodic reports provided to the Plaintiffs;

(d) the value of the Plans and investments on quarterly statements provided to individual participants;

(e) the availability of the Diversified Equity account as an investment option under the Plans;

(f) the allocation of 401(k) contributions to the Diversified Equity account as had been elected by plan participants; and/or

(g) the allocation of Wasley 401(k) Plan contributions to the Diversified Equity account on quarterly statements provided to individual participants.

56.    The statements were made by Bulakites, Winslow, JAC and Provident Mutual, through its employees or agents, in the course of its professional service of Wasley Products and the trustees of the Plans in their business decisions concerning the Plans.

57.    Bulakites, Winslow, JAC and Provident Mutual through its employees or agents, failed to exercise reasonable care or competence in obtaining or communicating information.

58.     The Plaintiffs justifiably relied upon the misinformation given by Provident

Mutual and its employees or agents.

## COUNT ELEVEN

**UNFAIR TRADE PRACTICES AGAINST BULAKITES, WINSLOW, JAC AND PROVIDENT MUTUAL**

61.     The allegations of paragraphs l through 60 of the Ninth Count are

incorporated by reference as paragraphs 1 through 60 of this Eleventh Count.

62.     Bulakites, Winslow, JAC, and Provident Mutual, at all relevant times, were

in the business of providing pension plan administration, management and

investment services in the State of Connecticut.

63.     As such, these Defendants are a "person" engaged in "trade or commerce,"

as defined by Connecticut General Statutes Section 42-110a.

64.      Bulakites, Winslow, JAC, and through its employees or agents, Provident

Mutual engaged in various acts of misconduct concerning the administration

and management of the Plans. Among other things, Bulakites, Winslow,

JAC and Provident Mutual's employees or agents withheld material

information from the Plaintiffs concerning the administration and

management of the Plans and their assets.

65.    The acts of Bulakites, Winslow, JAC, and Provident Mutual, through its

employees or agents, were unfair, misleading, deceptive, or had a tendency

to deceive the Plaintiffs, and constitute unfair and/or deceptive acts or

practices in the conduct of a trade or business, in violation of Connecticut

General Statutes Section 42-110a et seq.

## COUNT TWELVE

**BREACH OF IMPLIED- IN- FACT CONTRACT AGAINST BULAKITES, WINSLOW, JAC AND PROVIDENT MUTUAL**

59.    The allegations of paragraphs 1 through 58 of the Tenth Count are

incorporated by reference as paragraphs 1 through 58 of this Twelfth Count.

60.    The nature and scope of the involvement of Bulakites, Winslow, JAC and

Provident Mutual and its employees and agents in the subject pension plans

created a contract implied-in-fact in which these defendants agreed to

perform various Third- Party Administration and investment services for the

Wasley Products pension plans in exchange for compensation.

61.    These Defendants were fully compensated for its services but failed to

properly perform the services required for the Wasley Products pension

plans constituting a breach of the implied-in-fact contract.

## COUNT THIRTEEN

**BREACH OF IMPLIED- IN- FACT CONTRACT AGAINST BULAKITES, WINSLOW, JAC ANDLINCOLN**

54.    The allegations of paragraphs 1 through 53 are incorporated by reference as paragraphs 1 through 53 of this Thirteenth Count.

55.    The nature and scope of Bulakites', Winslow's, JAC's and Lincoln's and its employees' and agents' involvement in the Plans created a contract implied-in-fact where these Defendants agreed to perform various Third Party Administration and investment services for the Plans in exchange for compensation.

56.    Lincoln was fully compensated for its services but failed to properly perform services required for the Plans constituting a breach of the implied in-fact contract.

## COUNT FOURTEEN

**COMMON LAW CONVERSION AGAINST BULAKITES, WNISLOW, JAC, PROVIDENT MUTUAL AND LINCOLN**

54.    The allegations of paragraphs 1 through 53 are incorporated by reference as paragraphs 1 through 53 of this Fourteenth Count.

55.    The Defendants, Bulakites, Winslow, JAC, Provident Mutual and Lincoln, acting through their employees or agents, are liable for conversion of the Plans' assets.

56.    As such, these Defendants are liable for treble damages pursuant to Section 52- 564 C.G.S.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs Wasley Products, Precision Molding, individually and on behalf of Wasley Products- UAW Local 376 Retirement Plan, the Precision Molding 401(k) Plan and the Wasley 401(k) Plan pray for the following relief:

(a) A judgment requiring restoration to the Plans the amount of losses (principal and interest) due to the breaches of fiduciary duties by defendants;

(b) A judgment requiring disgorgement of all profits made through the improper use of the Plans' assets;

(c) An order requiring the Defendants to turn over to the Plaintiffs all the Plans' documents and information and all account documents and information;

(d) A judgment in an amount equal to any and all charges and penalties against Plaintiffs resulting from breaches of fiduciary duties by Defendants, including any violations of the reporting and disclosure provisions of ERISA;

(e) Restitution;

(f) Damages;

(g) Punitive damages pursuant to Connecticut General Statutes Section 42-110a et seq.;

(h) Interest;

(i) Reasonable attorneys' fees and costs;

(j) Treble damages pursuant to Section 52-564 of C.G.S.

(k) Such other equitable or remedial relief as the Court may deem appropriate

**PLAINTIFFS,**

**WASLEY PRODUCTS, INC.,
PRECISION MOLDING
COMPANY, INC., individually and
on the behalf of WASLEY
PRODUCTS 401(K) PLAN,
PRECISION MOLDING 401(K)
PLAN AND WASLEY PRODUCTS-
UAW LOCAL 376 RETIREMENT
PLAN**


By: _____

Joseph V. Meaney, Jr.
Cranmore, FitzGerald & Meaney
49 Wethersfield Avenue
Hartford, CT 06114
Connecticut Federal Bar No. CT 0431

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was sent via first class mail,

postage prepaid this 29th day of September, 2005 to all counsel and pro se parties of

record, as follows:


Steven J. Errante, Esq.
Eric P. Smith, Esq.
Lynch, Traub, Keefe and Errante, PC
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506

Thomas G. Moukawsher, Esq.
Ian O. Smith, Esq.
Moukawsher & Walsh
21 Oak Street, Suite 209
Hartford, CT 06106

Sara R. Simeonidis, Esq.
Deborah S. Freeman, Esq.
Bryan D. Short, Esq.
Bingham McCutchen
One State Street
Hartford, CT 06103-3178

Albert Zakarian, Esq.
Victoria Woodin Chavey, Esq.
Eric L. Sussman, Esq.
Day, Berry & Howard
CityPlace
Hartford, CT 06103-3499

Jean E. Tomasco, Esq.
Theodore J. Tucci, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

By: _____

              Joseph V. Meaney, Jr.

              Cranmore, FitzGerald & Meaney