UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WASLEY PRODUCTS, INC., ET AL.,          :

    Plaintiffs,          :

       vs.          :          MASTER CONSOLIDATED CASE
                No. 3:03cv383(MRK)(WIG)
BARRY BULAKITES, ET AL.,          :

    Defendants.          :
----------------------------------X

GREGORY T. PRENTISS, ET AL.          :

    Plaintiffs,          :

       vs.          :          No. 3:03CV1790(MRK)(WIG)
                **This motion pertains to:**
WASLEY PRODUCTS, INC., ET AL.,          :          **No. 3:03cv1790(MRK)(WIG)**

    Defendants.          :
----------------------------------X

**RULING ON THE PRENTISS PLAINTIFFS' MOTION TO AMEND [Doc. # 217]
AND MOTION TO APPOINT SPECIAL MASTER [Doc. # 260] AND
RECOMMENDED RULING ON PRENTISS PLAINTIFFS' MOTION FOR
CERTIFICATION OF DERIVATIVE ACTION UNDER RULE 23.1 [Doc. # 217]**

    Plaintiffs, Gregory T. Prentiss, John Rizzi, Richard Seich, and Dorothy Brown (collectively the "Plan Participants" or "Plaintiffs"), have moved this Court, pursuant to Fed. R. Civ. P. 15(a), for leave to amend their complaint in Civil Action No. 3:03cv1790(MRK)(WIG), to join two additional defendants, to add a claim on behalf of John Wiblyi, to supplement their claims to include claims relating to the Wasley Products, Inc., Retirement Plan, and to certify this action as a derivative action under Fed. R. Civ. P. 23.1. Additionally, they have asked the Court to

1

appoint a second Special Master, pursuant to Fed. R. Civ. P. 53, to calculate the amount of the plan participants' individual losses and to reconstruct their Wasley Products, Inc. 401(k) Profit-Sharing Plan accounts based on a reasonable rate of return.  After reviewing all of the papers in support of and in opposition to these motions, and after hearing argument of counsel, the Court will grant in part and deny in part the motion for leave to amend with leave to file a second amended complaint, will recommend certification of this action as a derivative action under Fed. R. Civ. P. 23.1, and will deny the motion to appoint a special master without prejudice to renewal at a later date.

## **Procedural Overview**

These two consolidated cases, brought under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"), stem from the alleged mismanagement of the Wasley Products, Inc., pension plans and the alleged conversion of funds by its third-party administrators and investment advisors, Barry Bulakites ("Bulakites"), James Winslow ("Winslow"), and Joshua Adams Corporation ("JAC") (collectively "the Bulakites Defendants").  See Prentiss v. Wasley Products, Inc., No. 3:03cv1790(DJS), 2005 WL 563091 (D. Conn. Mar. 9, 2005) (Ruling on Mot. to Dismiss)(Squatrito, J.).

The first suit, filed in March 2003, Wasley Products, Inc.,

et al. v. Bulakites, et al., No. 3:03cv0383(MRK)(WIG) ("Wasley
I"), was brought by Wasley Products, Inc., and an affiliated
company, Precision Molding Company, Inc., as the employers, plan
administrators and sponsors, against the Bulakites Defendants,
who were the third-party plan administrators, and two of the
insurance companies by which they were employed and/or
affiliated, Lincoln National Life Insurance Company ("Lincoln")
and Nationwide Life Insurance Company of America, formerly known
as Provident Mutual Life Insurance Company ("Nationwide").

A second suit was filed in October 2003 by the four
individual Plaintiffs, participants in the Wasley Products 401(k)
Profit-Sharing Plan, against the Bulakites Defendants, Wasley
Products, Inc., and Alan A. Wasley, Andrew Brady, Sandi Dumas-
Laferriere, and Barry Connell, trustees of the Wasley Products
401(k) Profit-Sharing Plan (the "Trustee Defendants"), Prentiss,
et al. v. Wasley Products, Inc., et al., No. 3:03cv1790(MRK)(WIG)
("Wasley II").  Wasley Products, joined by the Trustee
Defendants, and the Bulakites Defendants then filed cross-claims
against each other, and, in March 2004, Wasley Products and the
Trustee Defendants filed a third-party complaint against
Nationwide and Lincoln.

The two cases were then consolidated and a special master
was appointed to perform an accounting with respect to the
pension plans at issue in Wasley I and Wasley II.  Discovery was

stayed, and on August 1, 2005, the Special Master's Final Report
was filed with the Court.

The motions now before the Court pertain only to the <u>Wasley
II</u> litigation.

## **Discussion**

### **I.  Motion for Leave to Amend to Add Defendants[1]**

The Plan Participants seek to add Lincoln and Nationwide as
Defendants in <u>Wasley II</u> on the ground that the Bulakites
Defendants were acting as their employees or agents when they
allegedly breached the fiduciary duties owed to the Plan
Participants and, thus, Lincoln and Nationwide are vicariously
liable for their acts and/or omissions.  The proposed amended
complaint[2] alleges that at the time the 401(k) Plan was
established, Bulakites and Winslow were working for Provident
Mutual, the predecessor to Nationwide, and were acting within the

---

[1]  The Wasley Defendants do not object to the motion insofar
as it seeks to add Nationwide and Lincoln as Defendants.

[2]  When the plaintiff has submitted a proposed amended
complaint, as in this case, the Court may review that complaint
for adequacy under the same standards governing the adequacy of a
filed complaint.  <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 941 F.2d 119,
123 (2d Cir. 1991).  "Rule 8(a) requires 'a short and plain
statement of the claim showing that the pleader is entitled to
relief,' Fed. R. Civ. P. 8(a)(2), and is designed to permit the
defendant to have a fair understanding of what the plaintiff is
complaining about and to know whether there is a legal basis for
recovery. . . . Thus, the court should not dismiss the complaint
for failure to state a claim 'unless it appears beyond doubt that
the plaintiff can prove no set of facts in support of his claim
which would entitle him to relief.' <u>Conley v. Gibson</u>, 355 U.S.
41, 45-46 (1957)."  <u>Id.</u> (internal citations omitted).

scope of their employment in contracting with Wasley Products to
assist in carrying out Plan administrative and trust duties.
(Pls.' Am. Compl. ¶ 22.)  Plaintiffs further allege that in May
1995, Bulakites, Winslow, and JAC announced their affiliation
with Lincoln.  Bulakites assumed the position of Regional Chief
Executive Officer for Lincoln, and Winslow joined the staff as
Vice President of Agency Development.  After this time, they
allege that the Bulakites Defendants were acting within the scope
of their employment with Lincoln in connection with their
dealings with Wasley Products.  (Pls.' Am. Compl. ¶ 23.)

In Foman v. Davis, 371 U.S. 178, 182 (1962), the Supreme
Court emphasized that, although courts are afforded discretion in
determining whether to grant leave to amend, the mandate of Fed.
R. Civ. P. 15(a) is to be heeded: "Leave to amend shall be freely
given when justice so requires."  Thus, the Court held,

> [i]f the underlying facts or circumstances relied upon
> by a plaintiff may be a proper subject of relief, he
> ought to be afforded an opportunity to test his claim
> on the merits. In the absence of any apparent or
> declared reason – such as undue delay, bad faith or
> dilatory motive on the part of the movant, repeated
> failure to cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing party by
> virtue of allowance of the amendment, futility of
> amendment, etc. – the leave sought should, as the rules
> require, be "freely given."

Id.

Here, Nationwide and Lincoln have been Defendants in Wasley
I since the commencement of the litigation and have been joined

5

as Third-Party Defendants in this consolidated action since March

2004, so there is little prejudice, if any, by adding them as

defendants at this time.  Although Nationwide and Lincoln

complain about the delay, it seems that the delay was caused at

least in part by the stay of discovery that was entered — over

the objection of the Plan Participants — pending the report of

the first special master.  Under the circumstances, the Court

finds that the only valid reason for denying leave to amend would

be the futility of the proposed amendment.  See Grace v.

Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000) (holding that, in

determining whether leave to amend should be granted, the court

has discretion to consider the futility of the amendment as, for

example, when the new claims would be barred by the statute of

limitations), cert. denied, 532 U.S. 923 (2001).

A proposed amendment is futile if it could not withstand a

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and, thus,

in ruling on the motion to amend, the Court may consider the

legal sufficiency of the proposed amended claims.  See Ricciuti,

941 F.2d at 123; see generally 3 James Wm. Moore, Federal

Practice § 15.13[3] (3d ed. 2005).  The primary reasons cited by

Nationwide and Lincoln in support of their futility argument are

that (1) the claims against them are time-barred, (2) Plaintiffs

have not alleged any fraudulent conduct specifically by Lincoln

or Nationwide, and (3) they were not fiduciaries and, under

ERISA, they cannot be held vicariously liable for the conduct of their agents or employees.[3]

Nationwide argues that, because Bulakites and Winslow were last employed by Nationwide in May 1995, the six-year limitations period under ERISA § 413, 29 U.S.C. § 1113,[4] would have run no later than May 2001.  Thus, any amendment adding it as a

---

[3] This same claim was asserted earlier in their motions to dismiss, addressed to the third-party complaint filed by Wasley Products and the Trustee Defendants.  Judge Squatrito, accepting all well-pled allegations as true, denied the motion to dismiss on the ground that the Trustee Defendants had expressly alleged that Lincoln and Nationwide "to some unspecified degree, acting through Bulakites, Winslow, and JAC, acted as fiduciaries." Prentiss, 2005 WL 563091, at *3.  Plaintiffs' proposed amended complaint, however, does not contain these same fiduciary allegations.  Instead, Plaintiffs rely exclusively on a theory of vicarious liability.

[4] ERISA § 413, entitled "Limitation of actions," provides:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of -

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (emphasis added).

7

defendant would have to be made under Fed. R. Civ. P. 15(c), the "relation back" provision of Rule 15.  But, because Plaintiffs' claims against it were already time-barred when they filed their initial suit, Nationwide argues, the "relation back" provisions cannot save these otherwise time-barred claims.  Likewise, Lincoln maintains that any action against it is time-barred, since Bulakites and Winslow were only employed by Lincoln from 1995 to 1997.

The Plan Participants, however, do not rely on the "relation back" provisions of Rule 15(c).  Instead, they maintain that under the fraud or concealment exception of ERISA § 413 the statute of limitations did not commence to run until they discovered that Nationwide and Lincoln were involved in the breach of fiduciary duty.  They state that it was only through recent discovery that they learned that Bulakites, Winslow, and JAC were operating under the auspices of Nationwide and Lincoln, as opposed to merely selling their products.

In Caputo v. Pfizer, Inc., 267 F.3d 181, 190 (2d Cir. 2001), the Second Circuit clarified its interpretation of the six-year "fraud or concealment" limitations period, holding that the six-year statute of limitations applies to cases in which a fiduciary: "(1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in

acts to hinder the discovery of a breach of fiduciary duty" – in
other words, the exception applies to "cases of fraud or
[fraudulent] concealment."[5]  Id. at 190; see also Burke v.
Bodewes, 250 F. Supp. 2d 262, 266-68 (W.D.N.Y. 2003).  In such
cases, an action is timely if it is brought within six years of
when, with due diligence, the plaintiffs should have discovered
the fraud or fraudulent concealment.   Caputo, 267 F.3d at 192-
93.

     In this case, the Plan Participants state that they did not
discover the fraudulent conduct by the Bulakites Defendants until
approximately 2003 and only recently discovered the involvement
of Nationwide and Lincoln.  Moreover, they claim that the nature
of the misconduct concealed itself.  Under the fraud or
concealment exception of § 413, the statute of limitations began
to run from the date of discovery, not the date of the fraudulent
misconduct, and, thus, they maintain, their claims against these
Defendants are timely.

     Nationwide and Lincoln respond that the fraud or concealment
exception cannot apply to Plaintiffs' claims against them because
Plaintiffs have not pled the discovery of any allegedly

---

     [5]  Nationwide cites to the definition of "fraud or
concealment" adopted by several other circuits, which limited the
application of this limitations period to cases of self-
concealing acts or active concealment.  Caputo, 267 F.3d at 188-
89.  The Second Circuit expressly rejected this definition and
adopted instead a broader definition that encompasses both cases
of fraud as well as cases of fraudulent concealment.  Id. at 190.

fraudulent conduct on the part of Nationwide or Lincoln and because they have not pled fraud with particularity, as required by Rule 9(b), Fed. R. Civ. P.  See Caputo v. Pfizer, Inc., 89 F. Supp. 2d 237, 240 (D. Conn. 2000), vacated and remanded by 267 F.3d 181 (2d Cir. 2001); Kirk v. Liberty Mutual Ins. Co., 28 F. Supp. 2d 696, 700-02 (D. Conn.), aff'd, 164 F.3d 618 (unpublished table decision), 1998 WL 716574 (2d Cir. 1998).  Moreover, they assert that this Court should not grant Plaintiffs further leave to amend to cure these deficiencies, because any further amendment would be futile since the "fraud or concealment" exception cannot apply to vicarious liability claims against a non-fiduciary.  Lincoln also argues that, under the law of Connecticut, a principal may not be held vicariously liable for the torts of its agents based on their apparent authority, citing Davies v. General Tours, Inc., 63 Conn. App. 17, 31 (2001).[6]

Plaintiffs do not dispute that under the Second Circuit's holding in Caputo,

> [t]o get the advantage of the six-year statute of
> limitations, the plaintiff must plead fraud with the
> requisite particularity.  Fed. R. Civ. P. 9(b) requires
> that, "[i]n all averments of fraud or mistake, the
> circumstances constituting fraud or mistake shall be
> stated with particularity."  To satisfy this
> requirement, a plaintiff should specify the time,
> place, speaker, and content of the alleged

---

[6]  The Court need not address this argument at this time for Plaintiffs concede that they have not alleged that Bulakites and Winslow were acting with apparent authority.  (Pls.' Reply Mem. at 3 n.3.)

> misrepresentations. . . . In addition, the complaint
> should explain how the misrepresentations were
> fraudulent and plead those events which give rise to a
> strong inference that the defendant had an intent to
> defraud, knowledge of the falsity, or a reckless
> disregard for the truth.

267 F.3d at 191 (internal citations and quotation marks omitted);

see also Oechsner v. Connell Ltd. P'ship, 101 Fed. Appx. 849, 851

(2d Cir. 2004) (summary order) (holding that when the plaintiff

relies on the fraud or concealment exception, plaintiff's

complaint must specify the time, place, speaker, and content of

the alleged misrepresentation).  Plaintiffs assert, however, that

they have met this standard but, if the Court should find

otherwise, they seek leave to amend the allegations of their

complaint.

　　　In the proposed amended complaint, as Nationwide and Lincoln

point out, there are no specific allegations of fraud or

fraudulent concealment by either of them.  Rather, Plaintiffs

have alleged the following misconduct by the Bulakites

Defendants, acting within the scope of their employment with

Nationwide and Lincoln, as third-party administrators and

fiduciaries of the 401(k) Plan: intentional conversion of the

Plan assets to their own use; intentional, reckless, or negligent

failure to adequately diversify Plan assets; intentional,

reckless, or negligent failure to prudently select Plan

investments; intentional or reckless misrepresentations of the

value of Plan assets to Wasley and Wasley Products in regular

periodic reports; intentional, reckless, or negligent misrepresentations of the value of Plan assets to Plan participants. (Pls.' Am. Compl. ¶ 24.) This was conduct that, with respect to the 401(k) Plan, allegedly occurred over a period of more than eight years. There are no other allegations concerning acts of misconduct by the Bulakites Defendants.

The Court agrees with Nationwide and Lincoln that these general allegations fall short of the heightened pleading requirements of Fed. R. Civ. P. 9(b). Therefore, based on the allegations of the proposed amended complaint, Plaintiffs may not rely on the fraud or concealment exception to ERISA's statute of limitations in § 413. See Caputo, 267 F.3d at 191; see also Broga v. Northeast Utilities, 315 F. Supp. 2d 212, 222-24 (D. Conn. 2004) (finding that the plaintiffs could pursue their claims under the six-year fraud or concealment exception because they had properly alleged fraud or concealment); Kirk, 28 F. Supp. 2d at 700 (holding that the plaintiff, seeking to apply the six-year fraud or concealment limitations period, had to establish the elements of common-law fraud, but had failed to do so); Cramer v. Hartford Hospital, No. 3:96CV217, 1996 WL 732552, at *4 (D. Conn. Dec. 6, 1996) (holding that where plaintiff's allegations fell "woefully short" of the particularity requirements of Fed. R. Civ. P. 9(b), they could not rely on the fraud or concealment exception in ERISA's statute of

12

limitations).  Thus, unless Plaintiffs are granted further leave to amend, their claims against Nationwide and Lincoln would be time-barred.

During oral argument, Plaintiffs' counsel requested leave to amend if the Court were inclined to dismiss the proposed amendments on Rule 9(b) grounds.  <u>Caputo</u> instructs that, under such circumstances, "failure to grant leave to amend is an abuse of discretion unless the plaintiff has acted in bad faith or the amendment would be futile," 267 F.3d at 191, which brings the Court back to Lincoln and Nationwide's other challenges to any proposed amendment on the ground of futility.

Even assuming Plaintiffs can allege fraud with the requisite particularity as to conduct by the Bulakites Defendants,[7] Lincoln and Nationwide maintain that they cannot be liable under ERISA because Plaintiffs do not allege that they were fiduciaries and because they cannot be held vicariously liable for the breach of fiduciary duties by their agents or employees.  Moreover, they argue, neither Bulakites nor Winslow were acting within the scope of their employment when they allegedly breached their fiduciary duties owed to the Plan Participants.

With respect to the last argument, Plaintiffs have alleged

---

[7]  The Court notes that the heightened pleading requirements of Rule 9(b) do not apply to Plaintiffs' breach of fiduciary claims, insofar as they do not allege fraud.  <u>See</u> <u>Howell v. Motorola, Inc.</u>, 337 F. Supp. 2d 1079, 1088 (N.D. Ill. 2004).

that the Bulakites Defendants were acting within the scope of their employment, a factual allegation that the Court accepts as true for purposes of ruling on this motion for leave to amend.

With respect to Lincoln and Nationwide's argument that they cannot be liable because they have not been sued as "fiduciaries," the Second Circuit in <u>Carlson v. Principal Financial Group</u>, 320 F.3d 301, 308 (2d Cir. 2003), held that a defendant's non-fiduciary status is not determinative of whether it is a proper defendant under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). "Because the Supreme Court has held that '§ 502(a)(3) admits of no limit . . . on the universe of possible defendants,' <u>Harris Trust & Savs. Bank v. Salomon Smith Barney, Inc.</u>, 530 U.S. 238, 246 (2000), [defendant's] non-fiduciary status does not end the analysis. Under <u>Harris Trust</u>, a non-fiduciary may be a proper defendant under § 502(a)(3) if it would be a proper defendant under 'the common law of trusts,' <u>id</u>. at 250." <u>Carlson</u>, 320 F.3d at 307-08. Whether Lincoln and Nationwide would be proper defendants under the common-law of trusts is an issue that cannot be resolved on a motion to amend without the benefit of discovery.

With respect to Lincoln's claim that it cannot be vicariously liable under ERISA for the acts and/or omissions of the Bulakites Defendants, this specific issue does not appear to have been addressed by the Second Circuit. However, the question

has been addressed extensively in other circuits, albeit with somewhat conflicting results.  The majority of courts to have considered this issue context have held that an employer/principal may be held vicariously liable under ERISA for the acts of its employee when the employee breaches fiduciary duties while acting within the scope of his employment.  See Hamilton v. Carell, 243 F.3d 992, 1002-03 (6th Cir. 2001) (holding that the doctrine of respondeat superior can be a source of liability in ERISA cases where the employee breached his duty to a third party while acting in the course and scope of his employment); In re Cardinal Health, Inc. ERISA Litigation, — F. Supp. 2d —, 2006 WL 833129, at *34 (S.D. Ohio Mar, 31, 2006) (same) (collecting cases); Kling v. Fidelity Management Trust Co., 323 F. Supp. 2d 132, 146 (D. Mass. 2004) (same) (collecting cases); Crosley v. Composition Roofers' Union, No. Civ. A 04-5954, 2005 WL 2405979, at *7 (W. D. Pa. Sept. 29, 2005) (same); see also In re Tyco Int'l Ltd. Multidistrict Litigation, No. MDL 02-1335-PB, 2004 WL 2903889, at *4 (D.N.H. Dec. 2, 2004) (declining to dismiss plaintiffs's claims based on a respondeat superior theory but declining to decide whether the doctrine applied to the facts of the case until further discovery); but see American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc., 841 F.2d 658, 665 (5th Cir. 1988) (suggesting that an employer may be vicariously liable only if it

actively and knowingly participated in the employee's breach of
fiduciary duties); Crowley ex rel. Corning, Inc. Inv. Plan v.
Corning, Inc., 234 F. Supp. 2d 222, 228-29 (W.D.N.Y. 2002)
(rejecting respondeat superior liability under ERISA).

Because Plaintiffs allege that the Bulakites Defendants were
acting within the scope of their employment with Lincoln and
Nationwide in contracting with Wasley Products and in carrying
out their Plan administration and trust duties, the Court finds
that the allegations would be sufficient to withstand a motion to
dismiss Plaintiffs' claims based on a theory of vicarious
liability.  Thus, the Court declines to deny leave to amend on
futility grounds.

Accordingly, the Court will deny Plaintiffs' motion for
leave to amend to add Nationwide and Lincoln as Defendants based
on the allegations of the current proposed amended complaint.
The Court will treat Plaintiffs' counsel's request at oral
argument to augment his complaint as a motion for leave to amend,
which the Court will grant.  Thus, Plaintiffs may file a new
amended complaint setting forth the allegations of fraud or
concealment with the particularity required by Rule 9(b), so that
they may invoke the discovery provision of the fraud or
concealment limitations period of ERISA § 413.  Particularly
given Lincoln's and Nationwide's involvement in this litigation
for several years, leave to file a second amended complaint

should be freely given.

## II.  Motion to Add John Wiblyi as a Party Plaintiff

The Plan Participants also seek to add a new plaintiff and a new Count III to their complaint, addressed to the claims of John Wiblyi against the Defendants for failing to protect his retirement income.  Mr. Wiblyi is a former Wasley Products employee and participant in the Wasley Products, Inc. Retirement Plan, the predecessor to the 401(k) Plan.  He retired in 1987 after thirty-three years with the company.  He alleges that, upon retirement, he had wanted to take his pension as a lump-sum payment but was told by Defendant Dumas-Laferriere that he had to take monthly annuity payments instead.  In 2005, he learned that the annuity that the Retirement Plan had purchased to fund his benefit payments had been surrendered.[8]  He alleges that Defendants Bulakites, Winslow, and JAC breached their fiduciary duties by surrendering the annuity that the Retirement Plan relied upon to fund his benefits; that Defendants Wasley, Wasley Products, and Dumas-Laferriere are liable for breaches of fiduciary duty; and that Lincoln is vicariously liable for the acts of its agents.

Although the Plan Participants maintain that this claim is

---

[8]  Counsel for the Wasley Trustees stated at oral argument that Mr. Wiblyi's benefits are still being funded and paid under an annuity, but that what had lapsed was the insurance policy taken out to fund the future and contingent claim of his spouse, should he predecease her.  (Tr. at 114-15.)

part of the same pattern of fraud as the claims alleged in the
original complaint, the Court disagrees.  While leave to amend is
to be freely given, there are limits on the Court's discretion to
allow joinder of a new plaintiff with new claims.  Rule 20(a),
Fed. R. Civ. P.,[9] relating to "Permissive Joinder of Parties,"
states in relevant part:

> All persons may join in one action as plaintiffs
> if they assert any right to relief jointly, severally,
> or in the alternative in respect of or arising out of
> the same transaction, occurrence, or series of
> transactions or occurrences and if any question of law
> or fact common to all these persons will arise in the
> action.

Thus, under Rule 20(a), a plaintiff may be joined if his claim
(1) arises out of the same transaction, occurrence or series of
transactions or occurrences, and (2) will present some question
of law or fact in common.  See generally 4 James Wm. Moore,
Federal Practice § 20.02[1][a] (3d ed. 2005).

Here, although Mr. Wiblyi's claim may present some common
questions of law with respect to the breach of fiduciary duties
by some of the Defendants, his claim clearly does not arise out
of the same transaction, occurrence, or series of transactions or
occurrences.  The proposed count on behalf of Mr. Wiblyi relates
exclusively to the Wasley Products, Inc. Retirement Plan; the
Plan Participants' claims pertain solely to the Wasley Products,

---

[9]  The Plan Participants, as movants, do not contend that
Mr. Wiblyi is a necessary party whose joinder is required under
Fed. R. Civ. P. 19.

Inc. 401(k) Profit-Sharing Plan.  The only issue implicating the Retirement Plan concerns the calculation of accrued benefits that were transferred to the 401(k) Plan, discussed _infra_.  It is undisputed that Mr. Wiblyi never participated in the 401(k) Plan and has no claim relating to this Plan.  Thus, the subject matter of his claim is different from the claims of the Plan Participants.

Additionally, since it appears that Mr. Wiblyi has not missed any payments to date, the relief that he seeks is different than that sought by the Plan Participants.  Counsel suggested at oral argument that the appropriate relief would be the establishment of a trust fund or re-establishment of an annuity to fund his benefits or to give him the lump sum that he claims he should have received upon retirement.  This relief is totally unrelated to that sought by the 401(k) Plan Participants.

Assuming this case is certified as a derivative action as recommended by the Undersigned, Mr. Wiblyi's joinder as a party-plaintiff is all the more inappropriate, since the real party in interest would be the 401(k) Profit-Sharing Plan, a plan in which Mr. Wiblyi never participated.

Accordingly, because the Court concludes that Mr. Wiblyi's claims arise out of different facts and circumstances than those of the Plan Participants, the Court in the exercise of its sound discretion afforded under Rule 20(a) denies Plaintiff's Motion

for Leave to Amend to add John Wiblyi as a named plaintiff.
Having denied Plaintiff's request to join Mr. Wiblyi as a party-
plaintiff, the Court need not address the merits of Defendants'
argument that his claims are time-barred and/or not ripe for
adjudication.

### III.  Motion to Amend to Add Count Regarding the Under-Funding of the 401(k) Plan[10]

Plaintiffs next seek leave to add a Count II addressed to
the initial under-funding of the 401(k) Plan when it was first
established. They allege that in 1991, Wasley Products, with the
advice and assistance of Bulakites and Winslow, froze the
Retirement Plan and converted the participants' accrued benefits
into lump sum amounts, which were then transferred into the new
401(k) Plan.  Upon information and belief, they allege that
Defendants negligently or fraudulently miscalculated the accrued
benefits and, thus, understated the beginning balances in the
401(k) Plan.  They claim that they only learned of this initial
under-funding of the 401(k) Plan through recent discovery and
that it is part of the same scheme to defraud that is the subject
of their original complaint.

Defendants argue that to allow this amendment is an exercise
in futility, since the claim is barred by the statute of

----

[10]  Since this claim predates the Bulakites Defendatns'
association with Lincoln, it does not pertain to Lincoln and
Lincoln has not addressed this aspect of the motion to amend in
its opposition papers.

limitations.  Additionally, they claim that they are prejudiced by this untimely amendment, which sets forth a new set of operative facts concerning alleged acts and omissions relating to the Retirement Plan.  Plaintiffs respond that they just discovered this breach and, because discovery is just beginning, Defendants cannot claim undue prejudice.

The Court finds that the new allegations regarding the initial under-funding of the 401(k) Plan are sufficiently related to the breach of fiduciary duty claims in the original complaint that leave to amend should be granted.  The Retirement Plan, however, need not – indeed, should not – be named as a defendant.[11]  See Steinman v. Hicks, 252 F. Supp. 2d 746, 755 (C.D. Ill.), aff'd, 352 F.3d 1101 (7th Cir. 2003).  The parties are still in the initial stages of discovery, and, although it undoubtedly would have been more cost-efficient to have these specific allegations as part of the complaint from the beginning, the Court finds that the Defendants are not unduly prejudiced by having this claim added at this point in the litigation.

**IV.  Motion for Certification as a Derivative Action Under Rule 23.1**

---

[11]  It is not at all clear to the Court why Plaintiffs have added both the Retirement Plan and 401(k) Plan as Defendants in their proposed amended complaint.  There are no claims asserted against these Plans, no relief sought from the Plans, and, if this lawsuit proceeds as a derivative action, as recommended by the Undersigned, the action would be on behalf of the 401(k) Plan, not against it.

Plaintiffs next move this Court to certify this action as a derivative action under Fed. R. Civ. P. 23.1,[12] brought on behalf of the 401(k) Plan, in order to protect the interests of all plan participants, not just those named in the instant case.

Counts I and II of Plaintiffs' proposed amended complaint seek to impose liability on Defendants under §§ 502(a)(2)[13] and

_____

[12]  This rule, entitled "Derivative Action by Shareholders," states, in pertinent part, that:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.  The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

Fed. R. Civ. P. 23.1.

[13]  Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), provides that "[a] civil action may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."  Section 1109 of Title 29, ERISA § 409, concerns the liability of fiduciaries for breach of any responsibility, obligation, or duty, and provides that they may be personally liable

> to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made

22

502(a)(3)[14] of ERISA, 29 U.S.C. §§ 1132(a)(2) & (a)(3).  The
Supreme Court has held that plaintiffs seeking individual relief
may not sue for recovery under § 502(a)(2), the enforcement
provision for ERISA § 409, 29 U.S.C. § 1109.  Massachusetts Mut.
Life Ins. Co. v. Russell, 473 U.S. 134, 141 (1985); see also Lee
v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993); Coan v. Kaufman,
333 F. Supp. 2d 14, 23 (D. Conn. 2004), adhered to after
reconsideration, 349 F. Supp. 2d 271 (D. Conn. 2004).  Rather,
any claim for breach of fiduciary duty under ERISA § 409 must be
brought on behalf of the plan, and, likewise, any recovery must
inure to the plan as a whole.  See 29 U.S.C. § 1109; Steinman v.
Hicks, 252 F. Supp. 2d at 755.  Thus, the Plan Participants
cannot recover individually under § 502(a)(2) for the alleged
breaches of fiduciary duty by Defendants.[15]  As the Second

---

      through use of assets of the plan by the fiduciary, and
      shall be subject to such other equitable or remedial
      relief as the court may deem appropriate, including
      removal of the fiduciary.

[14]  Section 503(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3),
provides that a civil action may be brought

      (3) by a participant, beneficiary, or fiduciary (A) to
      enjoin any act or practice which violates any provision
      of this subchapter or the terms of the plan, of (B) to
      obtain other appropriate equitable relief (i) to
      redress such violations or (ii) to enforce any
      provisions of this subchapter or the terms of the plan.

[15]  They may, however, obtain individualized equitable
relief under ERISA § 502(a)(3), which has been described as the
"catch-all" remedial section.  See Great-West Life & Annuity Ins.
Co. v. Knudson, 534 U.S. 204, 214 (2002).  "It is well settled

Circuit held in <u>Diduck v. Kaszycki & Sons Contractors, Inc.</u>, 974 F.2d 270, 287 (2d Cir. 1992), <u>overruled on other grounds</u>, <u>Gerosa v. Savasta & Co.</u>, 329 F.3d 317 (2d Cir. 2003), "[a] suit for unpaid contributions under [ERISA] § 502(g)(2) is brought 'for or on behalf of a plan' and may only be maintained by an individual beneficiary derivatively. . . . Rule 23.1 is therefore applicable to derivative actions under § 502(g)(2)." <u>See also</u>, <u>Coan v. Kaufman</u>, 349 F. Supp. 2d 271, 274 (D. Conn. 2004); <u>Keir v. UnumProvident Corp.</u>, No. 02 Civ. 8781, 2003 WL 2004422, at *3 (S.D.N.Y. Apr. 29, 2003); <u>but see</u> <u>Kayes v. Pacific Lumber Co.</u>, 51 F.3d 1449, 1462-63 (9th Cir.) (holding that the plaintiffs, as plan beneficiaries seeking to enforce the rights of the plan against its fiduciaries, could not bring suit under Rule 23.1, which applied only to derivative actions "brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association"), <u>cert. denied</u>, 516 U.S. 914 (1995).

In this case, use of the structure and protections afforded by Rule 23.1, is both logical and necessary to protect the interests of the Plan and absent plan participants. Rule 23.1 requires: (1) a verified complaint; (2) that plaintiff was a plan

---

that § 502(a)(3) does not authorize recovery for damages – a form of legal relief – but only relief that is traditionally equitable." <u>Coan</u>, 333 F. Supp. 2d at 25 (citing <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 255 (1993)).

participant at the time of the transaction of which he complains;
(3) the action is not a collusive one to confer jurisdiction
where it would not otherwise exist; and (4) the plaintiff must
state with particularity the efforts made by him to obtain the
action that plaintiff desires from the defendant and the reasons
for failing to obtain the action or for not making the effort.
Additionally, Rule 23.1 provides that a derivative action may not
be maintained if it appears that the plaintiff does not fairly
and adequately represent the interests of the members (the plan
participants) who are similarly situated.  Moreover, the action
may not be dismissed or compromised without the approval of the
court and with notice to the members in such a manner as the
court directs.  Fed. R. Civ. P. 23.1.

Here, the Plan Participants have filed a proposed amended
complaint that is verified.  It alleges that they were
participants in the 401(k) Plan.  It alleges that this is not a
collusive action filed to confer jurisdiction the Court would not
otherwise possess.  It also explains that on June 24 and 26,
2003, the Plan Participants unsuccessfully demanded action from
Wasley Products, Inc., the 401(k) Plan Administrator, but that
Wasley Products failed to act in response to this demand.
Additionally, having reviewed the declarations of each of the
Plan Participants, the Court finds that there is no conflict
between the interests of current named Plan Participants and the

interests of the absent plan participants.  The Court further
finds that Attorney Thomas G. Moukawsher, who represents the Plan
Participants, is qualified, experienced, and generally able to
conduct the litigation.  See In re Drexel Burnham Lambert Group,
Inc., 960 F.2d 285, 291 (2d Cir. 1992).  He has had extensive
experience in single and multi-party ERISA actions and has served
as class counsel in several class actions in federal court.
Thus, Plaintiffs' amended complaint meets the requirements of
Rule 23.1 for certification as a derivative action.

Defendants argue that there is no need for certification as
a derivative action since Wasley Products has already filed suit
and will adequately protect the interests of the absent plan
participants in the Wasley I litigation.  As the Plaintiffs point
out, that is not necessarily so.  First, the procedural
safeguards required of a Rule 23.1 derivative action are not in
place in the Wasley I litigation.  Second, Wasley Products'
interests in resolving the litigation as quickly and
inexpensively as possible may not necessarily coincide with the
interests of the plan participants.

Defendants also challenge the ability of the current
Plaintiffs to represent the interests of the absent plan
participants.  However, they offer no specific reasons as to how
or why the present Plaintiffs would not adequately represent the
interests of all plan participants.

26

Therefore, the Court recommends certifying this action, Wasley II, as a derivative action pursuant to Rule 23.1, Fed. R. Civ. P., under ERISA § 502(a)(2), brought by the Plan Participants to enforce certain rights of the Wasley Products § 401(k) Profit-Sharing Plan.[16]  To the extent that Defendants have expressed concerns about burdensome discovery and litigation costs, those are matters that can be addressed through a discovery conference.

## V.  Appointment of a Special Master

Last, the Plan Participants ask the Court to appoint a Special Master pursuant to Fed. R. Civ. P. 53,[17] to calculate the

_____

[16]  While the Plan Participants have asked the Court to certify this action on behalf of the Wasley Products Retirement Plan also, the Court deems this unnecessary.  First, the Court has denied the motion to add John Wiblyi as a plaintiff, whose claims relate solely to the Retirement Plan.  Second, although the Court has allowed leave to amend the complaint to add claims relating to the amounts that were transferred out of the Retirement Plan to fund the 401(k) Plan, these claims concern the under-funding of the 401(k) Plan.  Any recovery would belong to the 401(k) Plan, not the Retirement Plan.

[17]  Rule 53, Fed. R. Civ. P., provides in relevant part:

(a) Appointment.

(1) Unless a statute provides otherwise, a court may appoint a master only to:

(A) perform duties consented to by the parties;

(B) hold trial proceedings and make or recommend findings of fact on issues to be decided by the court without a jury if appointment is warranted by

27

amount of the individual plan participants' losses in the case and to reconstruct their 401(k) accounts using a reasonable rate of return.  They propose the appointment of Nancy Klein, President of the firm of Coty & Bruce, Inc., an employee-benefits consulting firm, based out of San Diego, California, and further suggest that Defendants bear the full costs of the special master's work.

The appointment of a special master under Rule 53 is committed to the sound discretion of the Court, particularly in situations where there is a need for an accounting or to resolve a difficult computation of damages.  New York State Assoc. of Retarded Children, Inc. v. Carey, 706 F.2d 956, 962 (2d Cir.), cert. denied, 464 U.S. 915 (1983).  On June 25, 2003, Judge Squatrito exercised that discretion in appointing Alan Mandell, C.P.A., of the firm of Blum & Shapiro, as a special master in Wasley I, and later Wasley II, to perform an accounting with

---

(i) some exceptional condition, or

(ii) the need to perform an accounting or resolve a difficult computation of damages; or

(C) address pretrial and post-trial matters that cannot be addressed effectively and timely by an available district judge or magistrate judge of the district.

. . . .

(3) In appointing a master, the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay.

respect to, <u>inter alia</u>, the Wasley Products 401(k) Plan, including an examination of all relevant records of funds paid out by Wasley Products on behalf of its employees and the subsequent disposition of those funds for the period January, 1992, to December 2002.  On July 26, 2005, the Special Master rendered his final report, which showed $715,332.44 as "total unaccounted funds" for all of the Wasley funds that he examined.[18]

The Plan Participants argue that while the Mandell Report is "strong evidence that large amounts of money are missing, the Report does nothing to recreate what individual plan participants should have in their 401(k) accounts."  (Pl.'s Mem. in Support of Mot. to Appoint Special Master at 2.)  In particular, they focus on the need to determine to what extent the individual 401(k) accounts were under-funded at the outset.  They maintain that the parties cannot constructively discuss settlement or the apportionment of liability without this information.

Defendants oppose the appointment of a second special master in part because it puts them in the position of having to fund Plaintiffs' discovery.

At this juncture, the Plan Participants have alleged only that when Plaintiff Rizzi recently compared his opening 401(k)

_____

[18]  Wasley Products points out that the largest portion of the unaccounted funds pertains to the Defined Benefit Plan, not the 401(k) Plan.  (Wasley Mem. in Opp'n at 2 n.1.)

Plan account balance to the annual annuity Wasley Products owed to John Wiblyi, a 1987 Retirement Plan retiree, Plaintiff Rizzi came to believe for the first time that the company had short-changed the employees when it converted the Retirement Plan benefits to 401(k) opening balances.

This factual allegation, standing alone, is not sufficient to warrant the appointment of a second special master to compute the amounts that should have been transferred to the 401(k) Plan without a further showing by the Plan Participants that there was an initial under-funding of the 401(k) Plan. The Court would, in essence, be asking the special master to make findings with respect to the underlying issues of liability. Despite the wide discretion afforded the Court in appointing a special master to perform an accounting or like tasks, the courts have held that it is impermissible to refer fundamental issues of liability to a special master over the objection of one or more parties. See, e.g., Stauble v. Warrob, Inc., 977 F.2d 690, 693-94 (1st Cir. 1992). However, if and when a showing of an under-funding has been made, it may then be appropriate to reconsider the appointment of a special master to determine the amount of the under-funding for each plan participant.

Additionally, the Court shares the concerns expressed by some of the Defendants as to whether the appointment of a new special master is the most expeditious way to proceed. The

30

Wasley Defendants suggest that a more appropriate choice would be Special Master Mandell, who already has much of the information in preliminary form in his records.  Moreover, they believe that the work Plaintiffs request already falls within the scope of work set forth in Judge Squatrito's Order appointing Special Master Mandell. That is an issue that does not need to be resolved at this point but is one that warrants further consideration should the appointment of a special master become necessary.

Defendants also express concern over the Plan Participants' proposed allocation of the costs of the special master exclusively to the Defendants.  Again, that is a matter that can be considered at a later time.

## Conclusion

Therefore, for the reasons discussed above, the Court DENIES Plaintiffs' Motion for Leave to Amend [Doc. # 217] to add Nationwide Life Insurance Company of America and Lincoln National Life Insurance Company as parties Defendant, but grants Plaintiffs leave to file a second amended complaint in accordance with this ruling.  The Court GRANTS Plaintiffs' Motion for Leave to Amend [Doc. # 217] to add the proposed Count II relating to the initial under-funding of the 401(k) Plan but strikes paragraphs 16 and 17 of the proposed amended complaint, which attempt to add the Retirement Plan and 401(k) Plan as named

31

defendants.  The Court DENIES the Motion for Leave to Amend [Doc. # 217] to add John Wiblyi as a party plaintiff and to add Count III, which asserts claims on his behalf.

With respect to the request for certification of this action as a derivative action under Rule 23.1, which is also part of the Motion for Leave to Amend [Doc. # 217], the Court RECOMMENDS GRANTING the motion.

The Court DENIES the Motion to Appoint a Second Special Master [Doc. # 260] without prejudice to renewal at a later date.

The parties are advised that any objections to that portion of this ruling which is a recommended ruling must be filed with the Clerk of the Court within ten (10) days of receipt of this order.  Failure to object within ten (10) days may preclude appellate review.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; D. Conn. L. Civ. R. 72 for Magistrate Judges; FDIC v. Hillcrest Assocs., 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED, this  31st  day of May, 2006, at Bridgeport, Connecticut.


                        /s/ William I. Garfinkel
                        William I. Garfinkel,
                        United States Magistrate Judge