UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WASLEY PRODUCTS, INC., | : | CIVIL ACTION NO. |
| PRECISION MOLDING CO., INC, | : | 3:03 CV 00383 (MRK)(LEAD) |
| individually and on behalf of WASLEY | : | |
| PRODUCTS, INC.-UAW LOCAL 376 | : | |
| RETIREMENT PLAN, PRECISION | : | |
| MOLDING CO., INC., 401(k) PROFIT | : | |
| SHARING PLAN, and WASLEY | : | |
| PRODUCTS, INC. 401(k) PROFIT | : | |
| SHARING PLAN, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BARRY L. BULAKITES, JAMES A. | : | |
| WINSLOW, JOSHUA ADAMS CORP. | : | |
| NATIONWIDE LIFE INSURANCE CO. | : | |
| OF AMERICA, LINCOLN NATIONAL | : | |
| LIFE INSURANCE CO., | : | |
| | : | |
| Defendants. | : | OCTOBER 9, 2007 |
| | : | |
| GREGORY T. PRENTISS, | : | CIVIL ACTION NO. |
| JOHN RIZZI, RICHARD SEICH, | : | 3:03 CV 00383 (MRK)(LEAD) |
| and DOROTHY BROWN each | : | (3:03 CV1790 (MRK)) |
| individually and on behalf of the Wasley | : | |
| Products, Inc. 401(k) Profit Sharing Plan, | : | |
| and the Wasley Products, Inc. Retirement | : | |
| Plan; DIANE CHUDZIK, individually | : | |
| and on behalf of the Precision Molding | : | |
| Company, Inc. 401(k) Profit Sharing Plan, | : | |
| and HOWARD Y. ACHILLE, individually | : | |
| and on behalf of the WASLEY PRODUCTS | : | |
| -UAW LOCAL 376 RETIREMENT PLAN, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |

|  |  |
|---|---|
| WASLEY PRODUCTS, INC., ALAN A. WASLEY, ANDREW BRADY, SANDI DUMAS-LAFERRIERE, BARRY CONNELL, BARRY L. BULAKITES, JAMES A. WINSLOW, JOSHUA ADAMS CORPORATION, PRECISION MOLDING CO.,INC., NATIONWIDE LIFE INSURANCE CO. OF AMERICA and LINCOLN NATIONAL LIFE INSURANCE CO., | |
| Defendants. | OCTOBER 9, 2007 |
| JOHN M. WIBLYI, individually and on behalf of the Wasley Products, Inc., Retirement Plan, | CIVIL ACTION NO. 3:03 CV 00383 (MRK)(LEAD) (No. 3:06cv1435 (MRK)) |
| Plaintiffs, | |
| v. | |
| WASLEY PRODUCTS, INC., ALAN A. WASLEY, SANDI DUMAS-LAFERRIERE, BARRY L. BULAKITES, JAMES A. WINSLOW, NATIONWIDE LIFE INSURANCE CO. OF AMERICA and LINCOLN NATIONAL LIFE INSURANCE CO. | |
| Defendants. | OCTOBER 9, 2007 |

# Plan Participants' Memorandum in Support of Joint Motion for Preliminary Approval of ERISA §502 (A)(2) Settlement

## *1. Introduction.*

The Parties have moved jointly under ERISA §502 (a)(2) for preliminary approval of their Settlement Agreement.[1] They ask the Court to grant the motion and to approve the notice Participants' Counsel[2] proposes to send to the participants in the plans.

The Parties attach their proposed Settlement Agreement and its exhibits to their Joint Motion for Preliminary Approval as Exhibit A.

The Court should preliminarily approve the settlement because it is fair, reasonable and adequate.

## *2. The Plaintiffs' Claims.*

This Court has certified *Prentiss v. Wasley*[3] as a representative action brought on behalf of the participants in the Wasley Products, Inc. Profit Sharing 401 (k), the Precision Molding 401(k), and the Wasley Products, Inc. U.A.W. Local 376 Retirement Plan.[4] The Participants' Representatives claimed that the Defendants were Plan Fiduciaries, and that they and their agents violated ERISA in two ways:

---

[1] The 21 Parties to the Settlement Agreement are: Wasley Products, Inc., Precision Molding Co., Inc., Barry L. Bulakites, James A. Winslow, Joshua Adams Corp., Nationwide Life Insurance Company of America, Lincoln National Life Ins. Co., Gregory T. Prentiss, John Rizzi, Richard Seich, Dorothy Brown, Wasley Products 401(k) Profit Sharing Plan, Diane Chudzik, Precision Molding Company, Inc. 401(k) Profit Sharing Plan, Howard Y. Achille, U.A.W. Local 376 Retirement Plan, Alan A. Wasley, Andrew Brady, Sandi Dumas-Laferriere, Barry Connell, and John M. Wiblyi. John M. Wiblyi is a party to the Settlement Agreement but his claims are individual only and have not been certified by the Court.
[2] Moukawsher & Walsh LLC is the court-appointed Participants' Counsel.
[3] Civil Action No. 3:03 CV 00383 (MRK)(Lead)(3:03 Cv1790 (MRK)).
[4] This brief will call these three plans the "Plans."

>    (1) By mismanaging or diverting the Plans' assets in violation of their fiduciary duties under ERISA §404 and §405(a)(2).
>
>    (2) By understating the accrued benefits of certain Wasley and Precision 401(k) Plan Participants when converting their defined benefits to 401(k) accounts. The Participants' Representatives claim this understating violated ERISA §404 and §405(a)(2) fiduciary duties.

While only *Prentiss* has been certified, the Settlement covers similar allegations in *Wasley Products, Inc. v. Bulakites*.[5] It also covers *Wiblyi v. Wasley Products, Inc.*[6] in which Wiblyi claims the Wasley Products, Inc. defined benefit Plan does not have enough funds to pay his pension's survivor benefit and that Plan Fiduciaries breached their ERISA duties by eliminating a life insurance policy that once protected this benefit.

### 3. The Defendants' Claims.

While a Special Master determined that $715,332.44 in checks Wasley Products, Inc. wrote for the Plans remain unaccounted for, all Defendants objected to aspects of the Special Master's report and even those that largely agree with it deny they are responsible in any way for the unaccounted for funds. Some Defendants claim other Defendants for whom they were not responsible diverted the missing money and are solely responsible for its loss. The Defendants accused of taking the missing money deny they took it and blame shortfalls on other Defendants' failure to adequately fund the Plans. The Lawsuit has been defended vigorously and, until now, the Parties have

---

[5] Civil Action No. 3:03 CV 00383 (MRK)(LEAD).
[6] Civil Action No. 3:03 CV 00383 (MRK)(Lead)(No. 3:06cv1435 (MRK)).

agreed on little. The Lawsuits and countersuits have been pending for over four years.

## 4. The Proposed Settlement.

The Parties participated in several days of contentious settlement negotiations over a period of nearly a year with the Court (Garfinkel, J.) mediating. At least three negotiation sessions ended in stalemates. Finally, after progress was made during an April 2007 session, Judge Garfinkel got the Parties to agree on payment amounts during follow-up phone calls. The Special Master calculated that $715,332.44 was missing from the plans.[7] Under the terms of the proposed Settlement Agreement the Defendants agreed to pay the gross amount of $1.8 million which the Parties agreed would be allocated as follows: (1) the Plans and their Participants - $1.17 million (65%); (2) Moukawsher & Walsh, LLC – $422,000 (23%); (3) Cranmore, FitzGerald & Meaney —$208,000 (12%).

## 5. The Settlement is fair, reasonable and adequate.

The Court's role in approving the settlement of this Lawsuit is similar to its task approving settlements in class actions. This Court has explained the criteria for class action settlement approval as follows:

> A settlement will be approved if the court finds it to be fair, reasonable, and adequate. *Maywalt v. Parker & Parsley Petroleum Company*, 67 F.3d 1072, 1079 (2d Cir. 1995). To determine whether a settlement is fair, the court must consider whether the settlement was the result of good-faith bargaining at arms-length by experienced counsel, and whether there is

---

[7] Excerpt of Special Master's Report, Exhibit A.

any evidence of collusion. *See In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986); *State of New York v. Reebok Int'l Ltd.* 903 F. Supp. 532, 535 (S.D.N.Y. 1995), app. dismissed, 96 F.3d 44 (2d Cir. 1996) (citations omitted). *In City of Detroit v. Grinnell Corp.*, the Second Circuit approved the following factors as relevant to the determination of the fairness of a settlement:

(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.] *Grinnell*, 495 F.2d 448, 462-463 (2d Cir. 1974); see also *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992).[8]

The proposed settlement is fair, reasonable and adequate. After all fees and expenses are paid, the 401(k) Plans' Participants will recover all of the missing checks proceeds plus the majority of the estimated total amount of money Wasley Products, Inc. underfunded its 401(k) opening account balances. At the same time, the WP-UAW Local 376 Plan will receive 70% of the money the Special Master says was diverted, reducing its unfunded liabilities. Under the Agreement, the WP-UAW Local 376 Plan will receive all of this money without releasing its and its Participants' right to sue Wasley Products, Inc. or its past, present or future officers, directors, successors and assigns regarding the WP-UAW Local 376 Plan underfunding claims. In light of the significant defenses raised by the Defendants on liability and the

---

[8] *In re State Police Litig.*, 1999 U.S. Dist. LEXIS 21491, 3-5 (D. Conn., 1999).

unsettled case law regarding relief under ERISA, the sum reflects a rational weighing of the risks of litigation against the Participants' maximum possible recovery. By settling now, the Parties save the time of additional and expensive discovery, additional expensive forensic accounting, legal motions, and a possible trial. And even if the Participants recovered against the Defendants, it is not clear whether all of them have assets or whether their affiliates or corporate parents could be liable for any judgment. Therefore, in light of all the relevant factors, the amount allocated to the Plans is fair, reasonable and adequate.

The amount allocated for attorneys' fees is also fair and reasonable. As the Second Circuit noted two years ago in *Walmart v. Visa*, in common fund lawsuits like this one, the trend in this Circuit is toward a fee calculated as a percentage of the total recovery.[9] While common fund settlements are often found in securities lawsuits, "Common fund awards are appropriate in 401(k) and other Employee Retirement Income Security Act class action litigation…."[10] They make particular sense where common issues mean counsel has earned its fee by representing just one client. This is because non-parties benefiting from counsels' work should pay something for the privilege.[11]

---

[9] 396 F.3d 96 (2d Cir. 2005).
[10] I*n re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004). *See also, County of Suffolk v. Long Island Lighting*, 907 F.2d 1295, 1327 (2d Cir. 1990).
[11] *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)(common fund approach prevents unjust enrichment).

Counsels' fee in a common fund lawsuit is a reasonable percentage of the common fund.[12]  In 2000 in *Goldberger v. Integrate Res., Inc.*, the Second Circuit held that district courts determining this reasonable percentage of the common fund should consider at least six factors:

- the time and labor expended by counsel;
- the magnitude and complexities of the litigation;
- the risk of the litigation;
- the quality of representation;
- the requested fee in relation to the settlement; and
- public policy considerations.[13]

Here Participants' Counsel has worked on this Lawsuit without pay for nearly four years.  Discovery entailed sorting through thousands of pages of documents spanning decades of plan accounting, banking, and recordkeeping documents as well as counsel's work to sort out the relative losses and settlement proceeds for the participants in four different ERISA plans.  The three docket sheets in the Lawsuits show 32 docket entrees by Participants' Counsel including 13 substantive briefs.  Participants' Counsel has worked on settlement negotiations for over a year and has already spent five months trying to implement the settlement.[14]  Cranmore, FitzGerald & Meaney has represented the plans in the three Lawsuits on a reduced

---

[12] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980) (citing cases); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *See, e.g., Gwozdzinsky v. Sandler Assoc.*, 1997 U.S. Dist. LEXIS 23710, No. 95 Civ. 1400 (SHS) (S.D.N.Y. Feb. 11, 1997) (awarding fees on a percentage basis), aff'd 159 F.3d 1346 (2d Cir. 1998) (Table); see also I*n re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 484-85 (S.D.N.Y. 1998) (collecting cases).
[13] 209 F.3d 43, 50 (2d Cir. 2000).
[14] Moukawsher Declaration at ¶17, Exhibit B.

hourly basis of $150 per hour and, because of the financial strains on the Plans, it has not been paid anything for approximately 40% of the hours it logged.[15] The three docket sheets in the Lawsuits show 15 docket entrees by Cranmore, FitzGerald & Meaney, including 7 substantive briefs. As counsel to the plans, Cranmore, FitzGerald & Meaney necessarily faced the same discovery and settlement burden as Participants' Counsel.

The Lawsuit included a number of complex legal issues including fiduciary status under ERISA, the ERISA statute of limitations, representative actions, and *respondeat superior*. The factual issues were equally complex, requiring counsel to sort through decades of plan accounting, banking, and recordkeeping documents as well as requiring counsel to sort out the relative losses and settlement proceeds for the participants in four different ERISA plans.

Participants' Counsel bore a significant risk of not being paid anything for its work. Cranmore, FitzGerald & Meaney bore a risk of being paid at a rate far below market and failing to collect even this sum from its impoverished client. But for the settlement counsel negotiated, there would be no funds for Participants or attorneys. Indeed, at the time the Lawsuits were brought, it appeared that those alleged to be the principal wrongdoers had limited financial means and insurance coverage that covered only the cost of defense. Settlement was achieved years later only after insurance

---

[15] Meaney Declaration at ¶10, Exhibit C.

issues were overcome and with the help of a special master, extensive discovery, and repeated help from the Court.

The quality of the representation is best judged by the result. This Lawsuit was inordinately difficult to settle and would have been difficult to try. Yet the Lawsuit is settled, and even after all expenses are paid, the overwhelming majority of diverted amounts are being returned to the Plans with interest. This high percentage return of the diverted amounts also means that the Court can approve 35% of the settlement going to pay the fees and expenses of the two sets of lawyers. Public policy also supports the award. ERISA is a complex field and the courts have an interest in encouraging experienced legal counsel to represent plan participants.

## 6. Orders Requested.

The Parties ask the Court to preliminarily approve the Settlement Agreement. They also ask the Court to order notice of the proposed settlement to the Plans' Participants. They propose that Participants' Counsel send a notice of the proposed settlement to the Participants in the three Plans in the form attached as Exhibit 3 to the Settlement Agreement[16] no later than 7 days after the Court preliminarily approves the Settlement Agreement. A list of all ascertainable participants in the Plans with their last known mailing address is attached as Exhibit D.

---

[16] Exhibit 1 to the Joint Motion.

        RESPECTFULLY SUBMITTED
        FOR ALL PARTIES

By   /s/ Thomas G. Moukawsher
        Thomas G. Moukawsher (ct08940)
        Ian O. Smith (ct24135)
        Moukawsher & Walsh, LLC
        21 Oak Street, Suite 209
        Hartford, CT 06106
        (860) 278-7000
        Participants' Counsel

## CERTIFICATE OF SERVICE

I certify that on October 9, 2007 a copy of this memorandum was filed electronically. Notice will be sent by e-mail to all parties by the Court's electronic filing system. Parties may access this through the Court's system.

Theodore J. Tucci
Jean Elizabeth Tomasco,
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103

Joseph V. Meaney, Jr.
Cranmore, Fitzgerald & Meaney
49 Wethersfield Ave.
Hartford, CT. 06114

Marissa A. Bellair
Steven Errante
Eric P. Smith
Nancy Fitzpatrick Myers
Lynch, Traub, Keefe, and Errante, LLP

52 Trumbull Street
P.O. Box 1612
New Haven, CT. 06506

Sara Simeonidis
Deborah S. Freeman,
Bringham McCutchen
1 State Street
Hartford, CT 06103

Thomas G. Rohback
James J. Reardon, Jr.
Dewey & LeBoeuf LLP
125 West 55th Street
New York, NY 10019

                        /s/ Thomas G. Moukawsher
Thomas G. Moukawsher
Moukawsher & Walsh, LLC
21 Oak Street, Suite 209
Hartford, CT 06106
(860) 278-7000
(860) 548-1740 (fax)