UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WASLEY PRODUCTS, INC., ET AL., | : MASTER CONSOLIDATED CASE |
| | : CIVIL NO. 3:03 CV 383 (MRK/WIG) |
| Plaintiffs, | : |
| | : |
| V. | : |
| | : |
| BARRY BULAKITES, ET AL., | : |
| | : AUGUST 8, 2008 |
| Defendants. | : |

**RESPONSE BY THE PLAN PARTIES
TO PLAINTIFFS' MOTION FOR
ENFORCEMENT OF SETTLEMENT AGREEMENT**

Wasley Products, Inc. and Precision Molding, Inc., individually and on behalf of the Wasley Products, Inc. UAW Local 376 Retirement Plan, Precision Molding Co., Inc. 401(k) Profit Sharing Plan, and Wasley Products, Inc. 401(k) Profit Sharing Plan, Alan Wasley, Andrew Brady, Sandi Dumas-Laferriere and Barry Connell (collectively, the "Plan Parties"), hereby respond to plaintiffs' Motion for Enforcement of the Settlement Agreement. For the reasons set forth herein, the plaintiffs' Motion must be denied.

The motion for enforcement pertains to issues concerning distributions from the Precision Molding Co., Inc. 401(k) Profit Sharing Plan and the Wasley Products, Inc. 401(k) Profit Sharing Plan (the "401(k) Plans" or "Plans") as well as the appointment of a new trustee for each of these plans. The plaintiffs participating in the 401(k) Plans seek distribution of the settlement proceeds and ask that the court declare any such distributions to be made from a qualified cash or deferred arrangement under Section 401(k) of the Internal Revenue Code of 1986, as amended

HART1-1479857-7

(the "Code"). Further, they also ask the court to set a timetable for the appointment of new trustees and to set a penalty for noncompliance with the timetable.

As explained in more detail below, the Plan Parties have made diligent, good faith efforts to bring the Plans into compliance with the Code and to effectuate the terms of the settlement agreement. With the assistance of counsel as well as the U.S. Department of Labor, Wasley Products, Inc. and Precision Molding, Inc., the plan sponsors of the 401(k) Plans (the "Plan Sponsors"), have sought new trustees[1] for the Plans. The Plan Sponsors have engaged the services of an independent plan service provider, Northeast Retirement Services ("NRS"), to oversee the correction of past issues with the 401(k) Plans and to administer the 401(k) Plans through their termination. Further, NRS has indicated that it is willing to take on trustee responsibilities for the 401(k) Plans, provided that certain conditions regarding their professional engagement are met. To advance the goal of bringing the 401(k) Plans into compliance, NRS, at the direction of the Plan Sponsors, has updated the plan documents and submitted a correction application to the IRS. To date, however, there has been no decision from the IRS on the application.

For the reasons set forth below, distribution of the settlement proceeds at this time would not be in the best interest of the participants in the 401(k) Plans because of the uncertainty surrounding the Plans' tax-qualified status. Further, this court cannot grant the relief that plaintiffs seek regarding distributions from the 401(k) Plans, as only the IRS or the Tax Court—not a District Court—can determine whether the 401(k) Plans (and any distributions from the Plans) will be qualified for tax purposes. Finally, forcing the Plan Sponsors to secure a new trustee for the Plans within a specific period of time, without regard for the significant challenges

---

[1] The current trustee for the 401(k) Plans is Alan Wasley. Defendants Connell, Dumas-Laferriere, and Brady no longer serve as trustees of the 401(k) Plans.

2

involved in finding a new trustee, is also not in the best interests of the participants in the 401(k) Plans. The Court therefore should deny Plaintiffs' Motion for Enforcement of the Settlement Agreement.

**I.     BACKGROUND**

As the court is already familiar with the history of this matter and the terms of the Settlement Agreement, the Plan Parties will not summarize the history but instead will focus only on developments occurring after the Settlement Agreement was finalized in December 2007. Once the appeal period ran in January 2008, the settlement funds were paid and divided among plaintiffs' counsel, the plans' counsel, and the plans in accordance with the terms of the Settlement Agreement. The amounts payable to the 401(k) Plans were deposited in the appropriate accounts owned by each Plan at Nationwide Life Insurance Company of America.

Meanwhile, on behalf of the Plan Sponsors, Attorney Joseph Meaney contacted Attorney Marjorie Butler of the Department of Labor in January 2008 to ask for the names and contact information of persons or entities that she would suggest as potential new trustees for the 401(k) Plans.[2] Attorney Butler recommended NRS, noting that NRS had much experience in the field and had successfully worked with the Department of Labor in the past in situations similar to that of the 401(k) Plans. Attorney Meaney contacted NRS and commenced discussions with NRS' President, Tom Forese, in February 2008. Over the course of the next few months, Attorney Meaney, Alan Wasley, Andrew Brady and Sandi Dumas-Laferriere met with NRS, held several telephone conferences and shared extensive information concerning the situation and condition of the Plans.

---

[2] As the plaintiffs' Motion addresses only the 401(k) Plans, this response focuses on actions taken with respect to the 401(k) Plans and does not address actions taken with respect to the Wasley Products, Inc. UAW Local 376 Retirement Plan.

3

NRS was retained to work with legal counsel to bring the 401(k) Plans into compliance with IRS qualification requirements, make distributions, and ultimately terminate the Plans. One significant issue of concern was that the 401(k) Plans had not been updated to reflect numerous changes required under Section 401(a) of the Code, and with respect to the Precision 401(k) Plan, that no plan document could be located. In April 2008, NRS provided amended and restated plan and trust documents which were adopted by the Plan Sponsors and the trustee of the 401(k) Plans. NRS also prepared and submitted a correction application for each plan under the Voluntary Correction Program of the IRS' Employee Plans Compliance Resolution System. Copies of the correction applications are attached at Ex. A. The IRS has acknowledged receipt of the submissions but has not yet made a determination. (See IRS Acknowledgement of Receipt, Ex. B). The IRS generally requests that no contact be made with respect to the submissions for a period of 120 days from the date of receipt, which in this case is August 27, 2008.

In the meantime, Attorney Moukawsher contacted Attorney Bruce B. Barth, counsel for the Plan Sponsors, to discuss the distribution of settlement proceeds from the 401(k) Plans. Attorney Barth informed Attorney Moukawsher that no partial distributions of settlement proceeds were permitted under the terms of the 401(k) Plans, and that the Plan Sponsors did not believe allowing complete distributions would be in the best interests of participants – for the reasons explained below – until the IRS correction applications were approved. On May 7, 2008, Attorney Moukawsher filed the Motion for Enforcement of the Settlement Agreement.

Following receipt of the motion, the undersigned counsel, Jean Tomasco, arranged a telephone conference with Attorney Moukawsher and Mr. Forese of NRS on May 21, 2008 to discuss the concerns of Attorney Moukawsher and his clients, explain the steps that were being

taken to bring the Plans into compliance and effectuate distributions, and to see if the issues raised in the motion could be resolved without court intervention. Following the conversation, Attorney Tomasco sent a copy of the correction applications to Attorney Moukawsher, along with a cover letter summarizing the points discussed during the teleconference. (6/3/08 Letter, Ex. C). Unfortunately, plaintiffs apparently were not satisfied and, on July 8, 2008, Attorney Moukawsher indicated that his clients had directed him to proceed with the motion. (7/8/08 email, Ex. D).

## II. ARGUMENT

### A. As the 401(k) Plans are Likely Non-Qualified, the Plans are at Risk of Disqualification and Immediate Distributions Are Not Advisable.

#### 1. *Tax Qualified Status and Impact of Disqualification*

To enjoy the tax benefits afforded to retirement plans under the Code, a plan must be tax-qualified under Section 401(a) of the Code. Code Section 402(a); Treas. Reg. Section 1.402(a)-1. Failure to meet any of the specific requirements of Section 401(a) of the Code renders the plan non-qualified and puts the plan at risk of formal disqualification by the IRS. Code Section 401(a). Plans must be drafted in a manner intended to comply with Section 401(a) of the Code and are presumed to be qualified until such time as an error likely rendering the plan non-qualified is discovered by the plan sponsor or the IRS.

A qualified plan provides three primary tax benefits to its participants. First, amounts deferred from pay by plan participants are contributed to the plan on a pretax basis. Treas. Reg. Section 1.402(a)-1. Second, amounts contributed by the employer in the form of a fixed contribution or matching contribution are not considered income to the employee in the year the contribution is made. Treas. Reg. Section 1.402(a)-1. Third, investment earnings on these employee and employer contributions are not taxed until the participant receives a distribution,

typically at retirement. Treas. Reg. Section 1.402(a)-1. For an employee at the beginning or middle of his or her career, this deferral of tax can span multiple decades. Also, the overall earnings of the trust in which plan contributions and earnings are held are not subject to tax as long as the plan is qualified.

The disqualification of a plan by the IRS has devastating tax consequences on plan participants.[3] As of the effective date of disqualification, all assets of the plan, which are held in trust on a tax-deferred basis, become taxable as of the date they were contributed to the plan (or, if later, the date they became vested and nonforfeitable). Code Section 402(b); Treas. Reg. Section 1.402(b)-1. Since the 401(k) Plans do not have current determination letters, any disqualification of the Plans would likely be made on a retroactive basis. As a result, participants are required to amend tax returns for all years affected by the disqualification, and pay interest and penalties on the additional taxes due as the result of the retroactive loss of the tax deferral. If participants have rolled over a distribution from a now disqualified plan, the plan sponsor is obligated to notify the recipient of the rollover (typically an individual retirement account or qualified plan of a subsequent employer), which triggers the distribution of such rolled over amounts. The amounts included in a participant's taxable income as the result of a plan's disqualification are not adjusted to reflect investment losses, partial distributions or other events affecting a participant's account balance. Additionally, the overall earnings of the trust become taxable in the year to which such earnings are attributed, and the taxes, interest and penalties due with respect to such earnings will be allocated amongst the beneficiaries of the trust (the plan's participants), reducing their ultimate benefit from the plan. Accordingly, a participant in a disqualified plan may owe taxes in excess of the benefit they are entitled to receive from the

---

[3] There are also adverse tax consequences to the employer sponsoring a plan that is disqualified by the IRS. However, as the plaintiffs' Motion addresses only distributions to plan participants, the impact on the plan sponsor is not discussed in this Response.

6

plan. A participant in a disqualified plan therefore is likely to face significant financial burdens as well as many hours of correcting past tax returns and calculating interest and penalties. These burdens may be compounded if the participant has rolled over the funds or received a cash distribution and does not have money readily available to pay the interest and penalties.

   2.   *Correction of Errors Jeopardizing Plan Qualification.*

The IRS recognizes the significant impact of disqualification on plan participants, and provides plan sponsors with a number of avenues to resolve problems in design or operation that could result in disqualification before adverse action is taken by the IRS. One of these avenues is the IRS' Employee Plans Compliance Resolution System, which is currently set forth in Revenue Procedure 2006-27 ("EPCRS"). EPCRS provides a mechanism by which a plan sponsor may correct errors in a plan's form or operation. Depending on the nature of the error, a formal written application to the IRS under its Voluntary Correction Program ("VCP") may be required. Once the correction has been made (and approved by the IRS if submitted under the VCP), the plan is essentially treated as if the error never occurred and the presumption of the plan's qualified status is restored. However, no formal determination is made regarding a plan's overall qualified status as part of this process—the determination is limited to the resolution of the error described in the application and the impact of that error on the plan's qualified status.

As this court is aware, the Plan Sponsors had relied on defendants Bulakites, Winslow, and Joshua Adams Corp. (the "Bulakites Defendants") to draft plan documents, recommend any necessary amendments, file required forms, and to generally be responsible for the proper administration of the Plans. The Bulakites Defendants failed to do so, and the scope of their failure—and the Plans' problems—became apparent only during the litigation and its aftermath, as the Plan Sponsors retained new service providers and counsel to sort through the chaos that

7

the Bulakites Defendants left behind. In contrast to the plaintiffs' characterization of these issues as simply a matter of "messy paperwork", the Plan Sponsors believe that the failure to timely amend the 401(k) Plans for numerous law changes required since the last revision of the Plans in the early 1990s renders the 401(k) Plans non-qualified and at risk of disqualification by the IRS.[4] In response to these concerns, as noted, the 401(k) Plans have been corrected and the correction submitted to the IRS for approval under the VCP of EPCRS. The IRS has acknowledged receipt of the applications and should be able to provide further information regarding the status later this month.

Until such time as the Plan Sponsors receive a compliance statement from the IRS for each 401(k) Plan indicating that the proposed correction has been accepted, the Plan Sponsors feel compelled to administer the two Plans as if they were non-qualified.[5] The Plan Sponsors are concerned that continuing to operate the 401(k) Plans as if they were qualified (despite the potentially disqualifying errors) subjects plan participants who receive distributions to serious financial risk if the correction applications are not approved. Although the consequences of plan disqualification will be severe regardless of whether amounts have been distributed from the 401(k) Plans, those individuals who have received distributions will be in greater financial jeopardy in meeting any tax liabilities and in reversing rollover transactions if distributions are made prematurely. The Plan Sponsors have every intention of permitting distributions in accordance with the terms of the 401(k) Plans upon receiving confirmation from the IRS that the

---

[4] The Precision 401(k) Plan became effective during the period the Bulakites Defendants were responsible for the Plans. As of this date, the Plan Sponsor has been unable to locate the documents creating this Plan. Therefore, it is possible that this Plan was never properly adopted.

[5] Although the 401(k) Plans are referred to collectively in plaintiffs' Motion and this Response, it is important to note that the two 401(k) Plans have different errors and are the subject of two separate and distinct correction applications. Specifically, as indicated in the preceding footnote, there is no evidence that the Precision 401(k) Plan was ever adopted and there is no original plan document for that plan. As the IRS will rule on each application separately, it is possible that the IRS could rule differently on each of the Plans' applications.

errors in question have been fully corrected, presuming no further disqualifying errors are discovered in the interim.

### 3. *Cash Balance Analogy is Not Appropriate in This Case.*

The plaintiffs' Motion states that "one of the largest groups of ERISA-governed defined benefit pension plans in the country—cash balance plans—almost all operate without IRS letters determining that they are qualified plans." Plaintiffs' argument confuses an application for a determination letter with a correction application and is not relevant in evaluating the risk of current distributions from the 401(k) Plans.

Plan sponsors who wish to receive greater assurance of their plan's qualified status than the general presumption of qualification may apply to the IRS for a determination letter as to their plan's tax qualified status. IRS Rev. Proc. 2008-6. After a thorough examination of a plan's written plan document, the IRS will issue a formal determination letter for the plan. This determination letter applies only as long as the plan is not changed, and if the plan is changed, has only a retroactive effect ending on the period beginning on the date of any such change. Determination letters broadly provide that a plan is qualified as of a moment in time. This is distinguishable from IRS approval of a correction application, which provides that a particular identifiable error has been corrected and has not itself rendered a plan disqualified.

The cash balance plan issue referred to in plaintiffs' Motion involved the issuance of determination letters, not correction applications. In 1999, the IRS implemented a moratorium on all requests for determination letters by cash balance plans that had been converted from traditional defined benefit plans. The IRS stated that no letters would be issued "while cash balance plan and cash balance conversion issues are under consideration by Congress." IRS Announcement 2004-57. At no time did the IRS state that cash balance plans were non-qualified

or at risk of disqualification. This is in sharp contrast to the status of the 401(k) Plans in this case, which the Plan Sponsors strongly believe are currently non-qualified and likely subject to disqualification. Plaintiffs' reliance on the cash balance plan situation therefore is misplaced.

### B. The Trustees Will Make Distributions Once the IRS Approves the Plans' Correction Applications.

Contrary to statements attributed to the Plan Sponsors' counsel in the plaintiffs' Motion, the Plan Sponsors do not intend to prohibit distributions pending IRS approval of the 401(k) Plans' terminations.[6] As previously stated, distributions will be made from each 401(k) Plan upon receipt of an IRS compliance letter for each such Plan.

These points were explained to plaintiffs' counsel during the May 21st teleconference and also in Attorney Tomasco's 6/3/08 letter. The Plan Sponsors hope that the IRS will soon approve the VCP applications so that distributions from the 401(k) Plans can begin. The next step, however, is dependent upon the IRS. Although the Plan Sponsors cannot predict when a final IRS decision on the correction applications will be issued, more information should be available within the next few weeks. If plaintiffs' counsel, or the court, has any suggestions as to alternatives or means whereby the process might be expedited, the Plan Parties and their counsel are certainly willing to consider them.

### C. The Court Cannot Grant the Relief Plaintiffs Seek Regarding Distributions from the 401(k) Plans.

In their motion, the plaintiffs ask the court to order the Plan Sponsors to amend the 401(k) Plans to permit distribution of the settlement proceeds, and to "declare any such

---

[6] The Plan Sponsors propose to attain IRS approval of the ultimate termination of the 401(k) Plans. These approvals are unlikely to be granted if identified plan errors have not been corrected. These applications are separate and distinct from the correction applications and will not be filed until IRS approval of the correction applications has been received.

distributions to be made from a qualified cash or deferred arrangement under IRC 401k." (Plaintiffs' Motion, p. 5). For the following reasons, these requests should be denied.

### 1. *The Settlement Proceeds are Plan Assets and Cannot Be Treated Differently than Other Assets of the Plan.*

In their motion, the plaintiffs make a distinction between "fixed sums paid into the 401(k) Plans as settlement proceeds" and the remaining assets of the 401(k) Plans. (Plaintiffs' Motion, p. 3). Under the Code, however, there is no distinction between these amounts, all of which constitute plan assets. These amounts are equally subject to the adverse tax consequences described above in the event of the 401(k) Plans' disqualification. Accordingly, under the terms of the 401(k) Plans and the applicable provisions of the Code, the settlement amounts cannot be earmarked for immediate distribution from the 401(k) Plans. They must be treated in the same manner as other Plan assets.

### 2. *Amendment of the 401(k) Plans to Allow Partial Distributions Will Not Resolve the Plan Qualification Issues.*

The 401(k) Plans do not permit partial distributions. This means that a participant who wishes to receive a distribution must withdraw his or her entire account. In their motion, plaintiffs request that the 401(k) Plans be amended to permit partial distributions. The Plan Sponsors do not believe that amending the Plans to allow partial distributions will address any of the concerns explained in this Response, as the underlying issues with the tax-qualified status of the 401(k) Plans would not be affected by amendments to the Plans.

Further, there is no need to allow partial distributions as the intent of the Plan Sponsors is to encourage distributions to all eligible participants as soon as IRS approval of the correction applications is received. Moreover, upon the ultimate termination of the 401(k) Plans, all

amounts will be distributed from the 401(k) Plans, regardless of whether or not a participant consents to such distribution.[7]

### 3. Whether the Plan is a Qualified Cash or Deferred Arrangement under Section 401(k) is Not the Primary Issue in this Case.

Plaintiffs' Motion also requests that the court hold that the 401(k) Plans are qualified cash or deferred arrangements under Section 401(k) of the Code. Even if the court had the authority to rule on this request, which the Plan Parties believe it does not for reasons described below, this determination would not resolve the concerns regarding the 401(k) Plans' tax qualified status. To receive the tax deferral benefits described above, a plan must be qualified under Section 401(a) of the Code. Section 401(a) of the Code sets forth general qualification requirements that are applicable to multiple types of retirement plans. Section 401(k) of the Code provides a specific exception from traditional tax law principles regarding the constructive receipt of income for certain employee contributions to retirement plans. These "cash or deferred arrangements" provide employees with an opportunity to make a choice between receiving a portion of their wages as cash or having such amounts deferred to a retirement plan on a pretax basis. Although it is important that a Section 401(k) plan meet the requirements of Section 401(k) of the Code, this qualification only applies to employee contributions and does not protect any employer contributions, rollover contributions or any other contribution other than a deferral from pay.

In this case, although the Plan Sponsors believe that some of the legally required changes that were not made to the 401(k) Plans included changes to provisions governed by Section 401(k), the bigger issue in the eyes of the Plan Sponsors (and likely the IRS) are the compliance

---

[7] The sponsors of the 401(k) Plans will be required to take numerous steps to seek consent prior to forcing distributions. Should the sponsors be unable to locate any participants at the time the 401(k) Plans are terminated, the amounts attributable to such participants shall be transferred to alternative investment vehicles in accordance with Department of Labor regulations and guidance.

problems under Section 401(a). Accordingly, even if it were binding, a ruling by this court that the 401(k) Plans are qualified under Section 401(k) would not assuage the Plan Sponsors' concerns regarding the immediate distribution of participant accounts.

        4.     *The Court Cannot Make a Binding Determination as to the Plans' Qualified Status.*

Only the IRS or the Tax Court is empowered to determine whether a particular plan is a qualified plan and to find that any past compliance problems do not impact a plan's qualified status. This court cannot do so by declaration.

The IRS has promulgated a specific, detailed procedure outlining the determination letter program. Treas. Reg. Section 601.201(o). It is through this program that the IRS provides a determination as to a plan's tax qualified status. The Code describes the circumstances under which the Tax Court may make a declaratory judgment with respect to a qualification determination under Section 401(a). Code Section 7476. Prior to any action by the Tax Court, a plan's administrative remedies with the IRS must be exhausted. Code Section 7476(b)(3). The regulations issued under this Section make it clear that a declaratory judgment from the Tax Court is only appropriate to resolve a controversy surrounding an IRS determination regarding qualification or the failure of the IRS to make such a determination. Treas. Reg. Section 1.7476-1(a)(2). Accordingly, this court cannot rule on the 401(k) Plans' tax qualified status as: (1) the 401(k) Plans have not exhausted their administrative remedies with the IRS; and (2) the court is not the Tax Court authorized by the Code to make such a ruling.

**D.    Appointment of New Trustees.**

Finally, plaintiffs request in their Motion that the court set a timetable for the appointment of new 401(k) Plan trustees and impose substantial penalties if the timetable is not met. As previously discussed, NRS has indicated that they are willing assume the role of trustee,

once the pending correction applications are approved by the IRS, provided that certain conditions regarding their professional engagement are met. The Plan Parties are hopeful that NRS will step into the role of trustee of the 401(k) Plans in the near future. In the interim, setting a timetable for issues beyond the control of the Plan Parties or otherwise penalizing the Plan Parties for failing to find a new trustee will not advance the goals of all involved—protecting the best interests of plan participants.

### III. CONCLUSION

For all of these reasons, the Plaintiffs' Motion for Enforcement of the Settlement Agreement must be denied.

DEFENDANTS
WASLEY PRODUCTS, INC., ALAN A. WASLEY, ANDREW BRADY, SANDI DUMAS-LAFERRIERE, AND BARRY CONNELL


By:   /s/ Jean E. Tomasco
    Jean E. Tomasco (ct09635)
    jtomasco@rc.com
    Theodore J. Tucci (ct05249)
    ttucci@rc.com
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT 06103-3597
    Tel. No.: (860) 275-8200
    Fax: (860) 275-8299

And also filed on behalf of

WASLEY PRODUCTS, INC.,
PRECISION MOLDING CO., INC.,
Individually and on behalf of
WASLEY PRODUCTS, INC. UAW
LOCAL 376 RETIREMENT PLAN,
PRECISION MOLDING CO., INC.,
401(k) PROFIT SHARING PLAN, and
WASLEY PRODUCTS, INC. 401(k)
PROFIT SHARING PLAN

With the consent of their counsel
Joseph V. Meaney, Jr.
jmeaney@cfmlawfirm.com
Cranmore, Fitzgerald & Meaney
49 Wethersfield Ave.
Hartford, CT  06114-1102
Phone: 860-522-9100
Fax:  860-522-3379

Case 3:03-cv-00383-WIG    Document 418    Filed 08/08/2008    Page 15 of 16

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2008, a copy of the foregoing Response was filed electronically. Notice of this filing shall be sent by E-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/    Jean E. Tomasco
Jean E. Tomasco