UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WASLEY PRODUCTS, INC., ET AL., | : MASTER CONSOLIDATED CASE |
| | : CIVIL NO. 3:03 CV 383 (MRK/WIG) |
| Plaintiffs, | : |
| V. | : |
| BARRY BULAKITES, ET AL., | : |
| | : SEPTEMBER 3, 2008 |
| Defendants. | : |

### PLAN PARTIES' SURREPLY REGARDING PLAINTIFFS' MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT

Wasley Products, Inc. and Precision Molding, Inc., individually and on behalf of the Wasley Products, Inc. UAW Local 376 Retirement Plan, Precision Molding Co., Inc. 401(k) Profit Sharing Plan, and Wasley Products, Inc. 401(k) Profit Sharing Plan, Alan Wasley, Andrew Brady, Sandi Dumas-Laferriere and Barry Connell (collectively, the "Plan Parties"), hereby respond to the Plan Participants' reply brief ("Reply") concerning the Motion for Enforcement of the Settlement Agreement.

The Plan Participants' Reply is devoid of any legal citations and completely fails to address the arguments and concerns raised by the Plan Parties in their response dated August 8, 2008 ("Response"). Plan Participants instead launch into an unwarranted and unfounded personal attack on Alan Wasley. Among other things, Plan Participants' claim that Mr. Wasley has acted solely on his own judgment in refusing to release the settlement proceeds (Reply, p. 2) and that he is "frustrating the ultimate purpose of the settlement and defying the Court's order to

speedily appoint a successor." (Reply, p. 3). These assertions are both factually and legally inaccurate.

First, Mr. Wasley has not been acting solely on his own judgment with respect to the questions concerning distribution of the settlement proceeds. As would be expected, he relied on the professional judgment of the various third-party service providers to the Plans and also sought the advice of legal counsel, who—as expressly noted in the Response brief—communicated the Plan Sponsors' position regarding the distributions directly to counsel for the plaintiffs. (Response, p. 4). For all of the reasons set forth in detail in the Response brief, as supported by legal authority, distribution of the settlement proceeds at this time would not be in the best interest of the participants in the 401(k) Plans because there still has not been a determination regarding the correction application and the Plans' tax-qualified status.

Second, as to Plan Participants' assertion that there is "nothing in any order of the Court or in the Settlement Agreement that calls for IRS approval prior to giving participants access to their money" and that there is "no good reason" for the delay (Reply, p. 2), the Plan Sponsors did offer to make distributions to participants prior to a determination by the IRS regarding qualification of the Plans, but that such distributions would be treated as being made from a nonqualified plan. The Plan Participants, however, insisted that any such distributions be made from a qualified plan, as stated in their initial motion. The unreasonableness of Plan Participants' position is apparent on its face. The Plan Participants want distribution of the settlement funds now from a qualified plan, but are not willing to wait for IRS review and approval of the correction application concerning the status of the Plans.

The Plan Parties further note that the Settlement Agreement does state that distributions will be made "subject to Plan terms, laws, and regulations regarding plan distributions."

(Settlement Agreement, p. 23). For the reasons set forth in the Plan Parties' Response, the Plan Sponsors believe that, under the applicable laws and regulations, the failure to timely amend the 401(k) Plans for numerous law changes required since the last revision of the Plans in the early 1990s renders the 401(k) Plans non-qualified and at risk of disqualification by the IRS. This is why they have taken steps to correct the errors and seek IRS approval that the Plans (and any distributions to participants) will not be disqualified for these errors. This is a reasonable, prudent course of conduct that serves the interests of all parties involved, including the Plan Participants.

The Plan Participants also are critical of Alan Wasley in that he did not interview other potential replacement trustees and has not hired NRS yet as a trustee. (Reply, p. 2). However, as explained in the Plan Parties' response, NRS was selected because the Department of Labor specifically recommended that firm. Notably, neither the Plan Participants nor their counsel has proffered any other names or suggestions as to potential trustees. Further, NRS has been retained to perform various administrative services on behalf of the 401(k) Plans, including the submission of the correction applications. NRS has not yet become a trustee of the Plans because NRS expressed reluctance to take on this role until the IRS had rendered a decision regarding the Plans' qualified status and also until an indemnification order or agreement was in place. Quite frankly, Alan Wasley has remained as the trustee of the Plans because—at least until the IRS issues its opinion on qualification—no one else was willing to serve in that capacity.

Plan Participants also contend that Wasley has ignored NRS's advice as well as the "informal" views of the DOL, and that their counsel offers to present "evidence" of NRS' opinion and the DOL's belief regarding distributions (Reply, p. 2). However, NRS—as noted—

is not a fiduciary of either of the Plans at this point and, further, has expressed unwillingness to become a trustee and make distributions absent (1) the IRS opinion on qualification and (2) appropriate releases or indemnification from the Plan Sponsors. It is easy to opine that a risk is "de minimis" when you are not the one bearing that risk, and it is unclear whether—and how—a release or indemnification agreement would adequately protect the Plan Sponsors from claims of breach of fiduciary duty or other claims stemming from the distributions. If NRS is willing to assume the role of trustee now, the Plan Sponsors will take whatever steps are reasonable to make that happen as quickly as possible, but that does not answer the question of whether distributions should be made from Plans that are at risk of being deemed not qualified.

Moreover, while Plan Participants continue to insist that the court order the Plan Sponsors and Alan Wasley to "name a successor" within 30 days and amend the Plans to permit distribution of the settlement proceeds to certain participants or to face significant penalties, neither Plan Participants, NRS nor the Department of Labor has thus far offered any legal arguments to respond to the points made by the Plan Parties in their Response. The Plan Participants also ignore the effect that an amendment could have on the correction application pending before the IRS, which included the prototype plans previously adopted by the Plan Sponsors, or how partial distributions could be limited to a specific category of funds (i.e., the settlement proceeds). The Plan Sponsors have reasonably relied on the advice of their counsel. If the Plan Participants, NRS, and/or DOL have suggestions for resolution that will adequately protect the Plan Sponsors and existing trustees from the risks and concerns articulated regarding distribution of the settlement funds in the Plans, the Plan Parties are willing to consider them. For all of the reasons set forth in the Response and in prior communications with plaintiffs' counsel, however, the best course appears to be to await the decision of the IRS regarding the

4

correction applications, which hopefully should take only a matter of weeks or months, not years. At that point, as noted in the Response, the intent of the Plan Sponsors is to make distributions, in accordance with the terms of the Plans, to all eligible participants who want them.

Finally, the Plan Participants claim—both in their reply brief and in the affidavit and brief recently submitted in conjunction with the temporary restraining order—that Mr. Wasley used money that should have funded the company pension plans for his own corporate and personal use. These accusations are not worthy of a detailed response, except to say that there is not a single shred of evidence to support them. To the contrary, it has been confirmed that the settlement monies were transferred to the Nationwide accounts and remain invested in those accounts. The only reason Mr. Wasley and the Plan Sponsors willingly agreed to the temporary restraining order proposed by Plan Participants' counsel, restricting transfer of the Nationwide funds until a new trustee is appointed, was to avoid the need for judicial intervention because the funds were already safe. There is no basis for a TRO other than to make Plan Participants feel better.

The bottom line is simple. The Plan Sponsors want to do everything possible to get a new trustee appointed as soon as possible. But the appointment of a new trustee does not answer the question of what liability will arise if distributions are made now (and, per Plan Participants' demand, treated as qualified distributions) from Plans whose qualified status is unclear. The best course is for all parties to cooperate in finding a way to expedite the IRS review process.

DEFENDANTS
WASLEY PRODUCTS, INC., ALAN A. WASLEY, ANDREW BRADY, SANDI DUMAS-LAFERRIERE, AND BARRY CONNELL


By: /s/ Jean E. Tomasco
    Jean E. Tomasco (ct09635)
    jtomasco@rc.com
    Theodore J. Tucci (ct05249)
    ttucci@rc.com
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT 06103-3597
    Tel. No.: (860) 275-8200
    Fax: (860) 275-8299


And also filed on behalf of

WASLEY PRODUCTS, INC.,
PRECISION MOLDING CO., INC.,
Individually and on behalf of
WASLEY PRODUCTS, INC. UAW
LOCAL 376 RETIREMENT PLAN,
PRECISION MOLDING CO., INC.,
401(k) PROFIT SHARING PLAN, and
WASLEY PRODUCTS, INC. 401(k)
PROFIT SHARING PLAN

With the consent of their counsel
Joseph V. Meaney, Jr.
jmeaney@cfmlawfirm.com
Cranmore, Fitzgerald & Meaney
49 Wethersfield Ave.
Hartford, CT 06114-1102
Phone: 860-522-9100
Fax: 860-522-3379

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2008, a copy of the foregoing Surreply was filed electronically. Notice of this filing shall be sent by E-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Given that a teleconference on the pending motions is scheduled for later today, a copy of this Surreply was also faxed to the chambers of Magistrate Judge Garfinkel and copies sent via email directly to counsel.

/s/    Jean E. Tomasco
Jean E. Tomasco